**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br>*Plaintiffs,*<br>v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>*Defendants.* | Case No. _______________ |

**DECLARATION OF JOANNA SOUTHARD**

I, Joanna Southard, declare as follows:

1. I am a resident of the State of California. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with staff in the Office of the California Secretary of State, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Assistant Chief of the Elections Division, employed in the Office of the California Secretary of State. I work for Secretary of State Shirley N. Weber, Ph.D., and support her in her official capacity as the Chief Officer of Elections for the State of California. In my role, I assist her in the execution and enforcement of all state and federal laws relating to elections.

3. I have served as the Assistant Chief of the Elections Division in the Office of the California Secretary of State since 2008. Before assuming my current position, I served primarily as the Voter Information Guide coordinator from December 1999 to February 2008. I am familiar with all aspects of the Elections Division's work.

4. The California Secretary of State and California's 58 counties are primarily responsible for administering federal elections in the state. This responsibility encompasses voter registration, maintaining and updating voter rolls, issuing ballots to registered voters, tabulating votes, and certifying results in all elections for federal office, among numerous other tasks.

5. The California Secretary of State is the state's Chief Officer of Elections, responsible for executing and enforcing all state and federal law relating to elections within the state. *See* Cal. Gov't Code § 12172.5(a); Cal. Elec. Code § 10. The Elections Division is responsible for implementing the Secretary of State's responsibilities with regard to elections, including enforcing laws and providing information to the public and other parties. California law charges this office with ensuring that all eligible voters who want to vote are able to do so. *See, e.g.*, Cal. Gov't Code § 12172.5; Cal. Elec. Code § 2300. However, elections are primarily administered at the county level in California.

6. In California, elections are primarily administered by the 58 counties, in collaboration with the Secretary of State. This responsibility encompasses voter registration; maintaining and updating voter rolls; designing ballots and mail ballot envelopes; issuing ballots to registered voters, including sending mail ballots to all active registered voters; tabulating votes; and certifying results in all elections for federal office, among numerous other tasks.

7. In my role as Assistant Chief of the Elections Division, I assist in overseeing the work of the Elections Division. The Elections Division oversees the administration of federal and state elections within the State of California, including by providing guidance on election laws and procedures to county elections officials, assisting National Voter Registration Act ("NVRA") agencies in California and county elections officials in ensuring compliance with the

NVRA, training county elections officials and NVRA agencies, preparing state voter information guides, printing and distributing voter registration cards, maintaining a statewide system of all registered voters ("VoteCal"), coordinating and compiling all statewide voter registration statistics, qualifying candidates for statewide and special elections, certifying the list of candidates for state and federal office, tracking and certifying state ballot initiatives, training county elections officials with regard to the requirements of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), surveying all of California's 58 counties regarding ballot transmittal statistics on military and overseas voters and reporting those statistics to the United States Department of Justice, coordinating with United States Postal Service ("USPS") representatives and county elections officials to remedy mail ballot issues, administering a Voter Assistance Hotline for the entire state, receiving Election Day complaints from the public and coordinating the resolution of those complaints with all of California's 58 counties, compiling the vote results from each county, certifying the election results, issuing nomination and election certificates to all victorious state and federal candidates, educating California citizens about their voting rights, and promoting voter registration and participation.

8. Our office and county elections officials statewide are currently preparing to administer the November 2026 General Election. Federal, state, and local races will be on the ballot.

9. In California, every active registered voter is mailed a ballot. Cal. Elec. Code §§ 3000.5; 4005(a)(8)(A), (B). California's elections officials send these ballots to voters through the USPS. Under state law, such ballots can be counted if post marked on or before Election Day and received by the county elections official no later than seven days after Election Day. *See* Cal. Elec. Code § 3020(b). California law also allows voters who cast vote-by-mail

ballots on or before Election Day to cure signature issues on their vote-by-mail ballot return envelope up to eight days before certification of election results (which occurs up to 30 days after Election Day), potentially allowing their ballots to ultimately be counted. *See* Cal. Elec. Code § 3019(d), (e), (j). Our office intends to comply with these state legal requirements in administering upcoming federal elections.

10. In California, ballots are mailed by county elections officials and/or their vendors. Mail ballot envelopes are designed by the elections officials of each of the 58 counties and must conform with state law. *See* Cal. Elec. Code § 3011 (vote-by-mail return envelope requirements). Mail ballots are not required by California law to include Intelligent Mail barcodes ("IMbs"). California law does not establish a date by which county elections officials may begin mailing ballots to active registered voters. County elections officials may begin mailing ballots to all active registered UOCAVA voters as early as 60 days before the election, or on September 4, 2026, for the November 3, 2026, General Election. *See* Cal. Elec. Code § 3105(a)-(b); *see also id.* § 3000.5. In compliance with UOCAVA, county elections officials issue ballots to active registered voters who request a mail ballot under that Act at least 45 days before an election. *See* 52 U.S.C. § 20302; Cal. Elec. Code § 3114. County elections officials must begin to mail every active registered voter a ballot no later than 29 days before the election, or on October 5, 2026, for the November 3, 2026, General Election. Cal. Elec. Code §§ 3000.5, 4005(a)(8)(A), (B).

11. County elections officials continue to send mail ballots as additional voters register to vote or request a replacement ballot. Under California law, a voter may register on or before 15 days before an election and all active registered voters will subsequently be sent a ballot via mail. Cal. Elec. Code §§ 2102(a), 3000.5. County elections officials have 5 days to

mail a ballot to each person who registers to vote on the 29th day before the election, and 5 days to mail a ballot to each person who is subsequently registered to vote. *See id.* §§ 3005.5(a); 4005(a)(8)(A), (B). Even after the 15th day before an election, county elections officials must provide voters a replacement mail ballot upon request. *See id.* § 3014. More than 80% of the approximately 16.1 million ballots cast in California in the November 2024 General Election, more than 88% of the approximately 11.5 million ballots cast in the November 2025 Statewide Special Election, and more than 89% of the approximately 9.4 million ballots cast in the June 2026 Primary Election were mail ballots. *See* Cal. Sec'y of State, *Historical Vote-By-Mail (Absentee) Ballot Use in California*, https://www.sos.ca.gov/elections/historical-absentee.

12. California mails ballots to eligible, active registered voters who, due to being in college, traveling, or other reasons, will be out of California on Election Day. As of August 24, 2026, California has 72,893 active, non-UOCAVA voters with mailing addresses in the 49 other states, the District of Columbia, and U.S. territories, as described below.

| **State** | **Total** |
|---|---|
| Alabama | 484 |
| Alaska | 245 |
| Arizona | 6183 |
| Arkansas | 611 |
| Colorado | 2514 |
| Connecticut | 703 |
| Delaware | 128 |
| Florida | 2691 |
| Georgia | 1680 |
| Hawaii | 1630 |
| Idaho | 2251 |
| Illinois | 1813 |
| Indiana | 774 |

| | |
|---|---|
| Iowa | 339 |
| Kansas | 437 |
| Kentucky | 404 |
| Louisiana | 596 |
| Maine | 290 |
| Maryland | 1229 |
| Massachusetts | 2312 |
| Michigan | 946 |
| Minnesota | 576 |
| Mississippi | 264 |
| Missouri | 920 |
| Montana | 704 |
| Nebraska | 292 |
| Nevada | 5450 |
| New Hampshire | 225 |
| New Jersey | 848 |
| New Mexico | 692 |
| New York | 6155 |
| North Carolina | 1834 |
| North Dakota | 153 |
| Ohio | 993 |
| Oklahoma | 824 |
| Oregon | 3821 |
| Pennsylvania | 1072 |
| Rhode Island | 363 |
| South Carolina | 676 |
| South Dakota | 283 |
| Tennessee | 1482 |
| Texas | 6562 |
| Utah | 1990 |
| Vermont | 221 |

| | |
|---|---|
| Virginia | 1826 |
| Washington | 4163 |
| West Virginia | 124 |
| Wisconsin | 481 |
| Wyoming | 433 |
| District of Columbia | 902 |
| American Samoa | 16 |
| Micronesia, Federated States of | 3 |
| Guam | 75 |
| Northern Mariana Islands | 18 |
| Palau | 1 |
| Puerto Rico | 151 |
| Virgin Islands U.S. | 40 |
| **Total** | **72893** |

13. I am familiar with the Notice of Proposed Rulemaking issued by USPS that was published in the Federal Register on June 2, 2026. The Office of the California Secretary of State submitted a comment on the Proposed Rule expressing opposition and identifying specific concerns, including that the Proposed Rule is unconstitutional; directly conflicts with California state law and federal election laws; would cause significant financial and administrative burdens for California's elections officials; raises significant privacy concerns; will result in undue delays in the delivery of ballots to voters; and will result in the disenfranchisement of many eligible California voters, including confidential, rural, and disabled voters. A true and correct copy of that comment letter is attached to this declaration as **Exhibit A**.

14. I am also familiar with USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule"), which was made available for public preview at https://public-inspection.federalregister.gov/2026-17238.pdf prior to its scheduled publication in the Federal Register on August 26, 2026. That Rule is causing and will imminently cause significant harm,

confusion, and disruption in California's election administration, and will impose unrecoverable costs on California.

15. For the reasons discussed throughout this declaration, the Office of the California Secretary of State and county elections officials must act now to align California's administration of mail voting with the requirements of the Rule. Given the very short time available and the untested technology that the Rule relies on, I have profound concerns that the Rule will prevent eligible voters from voting, including in the November 2026 General Election. Our office has an obligation to ensure that voters have an opportunity to vote, and the Rule imposes significant costs on doing so.

16. It is my understanding that the Rule requires that every voter who will receive a mail-in ballot must be enrolled with USPS. To enroll voters, elections officials or other authorized personnel must access the USPS Ballot Portal to enter each voter's name, address, unique IMb from the outbound ballot envelope, unique IMb from the return ballot envelope, and the originating election office state. The information would have to be provided at least 30 days before the date of the federal election or by the date by which ballots may begin to be mailed to voters under state law, although supplemental submissions can be made until the last day that ballots may be mailed out to voters under state law. And *before* elections officials can even begin enrolling voters in the process above, they must certify that they have submitted outbound/return envelopes for Mailpiece Design Analyst review and received feedback from USPS. This sequencing provides additional time pressure, especially given how many jurisdictions will be simultaneously submitting for review. In California, we would have to provide that information as early as 60 days before an election (September 4, 2026, for the November 3, 2026, General Election), *see* Cal. Elec. Code § 3105(a)-(b); *see also id.* §§ 3000.5,

4005, and we would thereafter have to update the information on a near-daily basis to include eligible voters who registered after that date or requested a mail ballot after that date. The Rule requires "[a] separate submission . . . in connection with each Outbound Federal Ballot mailing." The Rule provides that USPS "will provide a state-specific Mail-In and Absentee Participant List" ("USPS Mail Ballot List") to States' chief elections officials "[o]n or about the date of the federal election." I further understand that if a voter is not enrolled with USPS, USPS will not accept the outbound mail ballot envelope for mailing.

17. These requirements impose significant financial and administrative costs on our office and threaten to disenfranchise voters in California en masse.

18. We have concerns about the feasibility of USPS implementing this system in a timely and accurate fashion in the limited time remaining before the November 2026 General Election. Technological or implementation failure may lead to the inability of California to deliver mail ballots to voters and conduct the election in accordance with state and federal law.

19. In addition, I am concerned about the ability of state and local elections officials to implement the necessary technological and administrative changes to comply with this Rule in the limited time remaining before the November 2026 General Election. California's statewide voter registration system, VoteCal, is not currently equipped to receive IMb information for individual voters from county election management systems ("EMSs"). The EMSs in each of California's 58 counties will also need to be updated to store and transmit this information to VoteCal. These types of modifications to our VoteCal system historically have been extremely costly and can take more than a year to develop, test, ensure the new functionality's security, and deploy. Under California law, mail ballots can begin to be mailed as early as September 4, 2026 (60 days before the November 3, 2026, General Election) and must be mailed to all active registered voters beginning no later than October 5, 2026. Even on the most expedited schedule, we will not

be able to make the required updates to VoteCal in order to securely and accurately enroll all 23 million active registered voters with USPS before mail ballots must be sent pursuant to state law. The Rule provides no funding, so the significant financial costs to update VoteCal and the election management systems in all 58 counties would have to be diverted from our office's and the counties' other pressing election-related responsibilities.

20. As a result of the Rule, the Elections Division must also immediately prepare and update guidance for county elections offices to ensure a consistent approach across California's 58 counties. This guidance would have to address topics such as using the USPS Ballot Portal, ensuring timely enrollment of voters as voter rolls change leading up to the election, correction of voters' enrollment information, the handling of mail ballots rejected by USPS under this Rule, cybersecurity protection, confidential voters, and 100% vote-by-mail counites. These preparations and updates will require significant time, personnel, and money.

21. Pursuant to California law, California elections officials are required to mail ballots to all of California's more than 23 million active registered voters during the November 2026 General Election. *See* Cal. Sec'y of State, *15-Day Report of Registration* (May 18, 2026), https://elections.cdn.sos.ca.gov/ror/15day-primary-2026/complete-ror.pdf.

22. California law allows voters that meet certain qualifications to register as "confidential voters" for a variety of reasons, including personal safety, life threatening circumstances as determined by a California court, and a person's role as a public safety officer, election worker, and candidate or elected official. *See* Cal. Elec. Code §§ 2166, 2166.5, 2166.7, 2166.8, 2166.9. State law prohibits California from including confidential voters' information on any roster or list. *See id.* §§ 2166(b)(2), 2166.5(b)(2), 2166.7(d)(2), 2166.8(d)(1), 2166.9(d)(1). This would include USPS's Mail Ballot List. California elections officials

therefore cannot both comply with the requirements to submit the names and addresses of every California voter for enrollment on USPS's Mail Ballot List and also comply with privacy requirements outlined in state law regarding confidential voters. Under this Rule, California's confidential voters will be prohibited from casting a mail ballot unless they voluntarily withdraw their confidentiality, which could put these voters in a position of choosing their personal safety over their right to vote.

23. In my experience, implementing new election technology is highly complicated and takes time to get right. But even if USPS's untested Ballot Portal works as intended and does not experience technical problems—which seems unlikely given the short development and implementation window—enrolling all 23 million voters with USPS will be a massive undertaking. This task will be significantly complicated by the influx of registration updates and changes that elections officials typically receive in the months, weeks, and days before any election. California's voter rolls are continuously updated to account for new voter registrations and address changes within or without the voter's county of residence. These activities occur after counties have begun issuing mail ballots to their voters, which can begin up to 60 days before an election. *See* Cal. Elec. Code § 3105(a)-(b); *see also id.* §§ 3000.5, 4005. Californians may register to vote up to 15 days before the election, *id.* § 2102(a), and elections officials must send a mail ballot to new registrants or voters who have updated their registration within 5 days of their registration, *id.* §§ 3005.5(a), 4005. For these reasons, we will likely need to upload supplemental submissions on a daily basis leading up to Election Day.

24. Before elections officials can even become authorized to use the Ballot Portal, they must be approved by the Chief Elections Official of the State, which itself requires advance coordination among state and county elections officials to determine which staff throughout the

state will become authorized and trained to use the Ballot Portal. *See* 39 CFR Part 111, Supplementary Information at 14.[1] Once elections officials become authorized users—a process that may also create delay and administrative burden—the Rule does not seem to allow officials to enroll voters with USPS in bulk. Instead, as required by the Rule, elections officials must enroll voters separately for each mailing, "regardless of the number of mailpieces in the mailing." Sometimes a mailing contains only a single piece of ballot mail, such as when elections officials mail a replacement ballot.

25. State law allows a voter to request a replacement mail ballot if, for example, their mail ballot has been damaged or the voter made a mistake. *See* Cal. Elec. Code § 3014. California law sets no deadline by which a voter may request a replacement mail ballot. To ensure that voters receive these ballots to which they are entitled under state law, the information associated with these new ballots also would need to be provided to USPS.

26. Based on what information is available, I estimate that it could take several hours for elections staff to become authorized users of the USPS Ballot Portal and receive training on how to use the Portal. Because the Rule does not contain specific information about the Ballot Portal, it is not possible at this time to know how long it would take elections staff to enroll all active registered voters. For example, for California's counties that do not currently utilize IMb information, the county EMS systems will need to be updated to store and transmit IMb information, or else elections officials will need to input IMb information for each active registered voter in the county manually. Enrolling all active registered voters in California could take each county several hours if not days, even assuming there are no delays caused by

[1] Page citations to the Rule use the numbering from the preview document. *See* https://public-inspection.federalregister.gov/2026-17238.pdf.

technical or processing difficulties, depending on the number of registered voters in the county, the number of staff available to assist with this task, and whether voters would have to be individually entered or could be uploaded in batches. But technical and processing delays are common, especially with implementing new, untested technology and processes. Given the scale of the effort, any unexpected technological and processing difficulties could increase the practical and financial burden on California exponentially. And if the system fails, California may be unable to mail ballots to voters at all under this Rule.

27. In California, every active registered voter in the state receives a mail ballot via USPS. For more than 100 years, California and USPS (and its predecessor, the United States Post Office Department) have ensured that mail ballots were successfully cast by Californians across the state, country, and world. *See* Cal. Stats. 1923, ch. 283, § 1, pp. 586-592. Access to mail-in voting is especially important for low-income, rural, and vulnerable populations, including voters with disabilities, who may lack access to transportation to either vote in-person or to receive and return their ballot through some other means, as well as for voters who are out of town, incarcerated for a misdemeanor, or hospitalized.

28. I am particularly concerned that USPS is only preparing for a seamless transition and that it has not prepared contingency plans if the Ballot Portal does not work as intended or other errors impede the process. For example, USPS has not provided any information about how it will help election administrators facing technical difficulties in uploading information to the Ballot Portal. Nor has it provided any information about how errors by USPS will be corrected. USPS states only that it will inform Authorized Ballot Mailers of "escalation procedures" if they decide to challenge USPS's rejection of ballot mail. *See* 39 CFR Part 111, Supplementary Information at 58. USPS also says it will not develop any new appeal procedures

for election mail, but USPS's standard processes will not work in the election context, where time is of the essence, and any errors must be resolved quickly to prevent voters from losing the fundamental right to vote.

29. The risks of error are heightened here because USPS has not committed to providing any training to election administrators regarding the Ballot Portal or any other aspect of the process changes. While the Rule contemplates that States and local election offices will soon begin registering tens of millions of voters into the Ballot Portal, USPS has provided virtually no information on what the Ballot Portal will look like, how it will operate, how users become authorized to use it, or how long it will take to upload voter information into the Ballot Portal. In fact, USPS explicitly "declines to conduct, publish, or otherwise disclose any additional analysis or information concerning the rule or Portal." *See* 39 CFR Part 111, Supplementary Information at 81. And while USPS indicates that it is still developing training for internal Postal Service employees on such topics as mail ballot design and verification of ballot mail, it has not committed to providing any training to state and local elections officials. Nor does USPS indicate when the Ballot Portal will become accessible for authorized users so that they can begin learning the system before they are required to start adding registered voters into the Ballot Portal under the pressure of election deadlines.

30. USPS claims that the changes imposed by the Rule are modest and have been issued as "best practices" guidance in the past. But the Rule imposes dramatic changes with sweeping impacts. USPS has never required the Chief Elections Officer of each state to authorize individual election workers to handle election mail, to require ballot design review before election mail can be sent, or to register each voter into a Ballot Portal before the voter can be mailed a ballot. Nor has it ever transmitted information about every mail voter in the country

to unspecified law enforcement officials for vague and unsubstantiated reasons. The threat of disclosing such information to law enforcement officials itself could suppress voter participation. And each of the process changes create delay and administrative burden at each step, creating dangerous bottlenecks in the short time before elections that increase the risks of cascading impacts and disenfranchisement at an alarming scale. USPS claims it will make further guidance documents available to explain in detail how to use the Portal "shortly," 39 CFR Part 111, Supplementary Information at 55, but elections officials must begin work now.

31. It is far too late in the election cycle to introduce such dramatic changes. USPS itself encourages the Chief Elections Official in each State to provide USPS 90 days advance notice if the State plans to send federal election ballots, claiming such notice is "logistically beneficial" so that USPS can "conduct outreach on mail preparation, provide resources related to IMbs, and offer guidance on how [to] access and use the Federal Mail Ballot Portal." *See* 39 CFR Part 111, Supplementary Information at 45. But that 90-day window has already passed, and there is virtually no time for either USPS or States to prepare for such a dramatic change in election mailing. And USPS has done no advance work with States to begin educating elections officials about any of these changes.

32. Even with the best efforts of the Office of the California Secretary of State and local elections officials, the challenges of completing a complex data-matching program in a short timeframe and while preparing to administer an election pose a high risk of errors and omissions. These risks are compounded by uncertainty over whether USPS will devote sufficient resources to processing the massive amount of data it will receive from all 50 states in a condensed timeframe. USPS has confirmed that it does not expect "to require additional staff" or for implementation of the Rule to impose "a significant burden on employees." *See* 39 CFR

Part 111, Supplementary Information at 74. It suggests that USPS is not adequately preparing for all possible contingencies and will not have adequate staffing to address technical failures in the Ballot Portal or to timely address appeals related to rejected election mail. The stakes are incredibly high, with any systemic errors, technological difficulties, or improper staffing threatening to disenfranchise voters at a massive scale.

33. Several categories of voters may be wholly denied the opportunity to vote if they are affected by errors or omissions on the USPS Mail Ballot List or if their mail ballot is rejected by USPS. This includes California's numerous confidential voters, who by law cannot be included on the USPS Mail Ballot List, and voters who are disabled, hospitalized, in jail, in nursing homes, or out of town and unable to vote in person. In addition, several of California's rural counties, including Alpine, Colusa, Plumas, and Sierra counties, conduct their elections using all-mail voting. Although these counties maintain Help America Vote Act ("HAVA")-compliant accessible voting machines at their central elections offices, they do not otherwise have physical polling places that are open on Election Day. If any voter who falls under these categories is denied a mail ballot under the operation of this Rule, these voters may be deprived of the opportunity to vote altogether.

34. As a result of the Rule, and to mitigate the uncertainty and confusion caused by the Rule, California will also have to devote significant time, personnel, and money to updating training materials for local elections officials and their staff. Elections staff would need to be trained on the USPS processes and technology. Training materials would have to specifically detail what steps they must take to access the USPS Ballot Portal, enroll voters in the Portal, and to process election mail. This is yet another aspect of the Rule that will necessarily divert staff

and resources, including up to half of our Elections Division's resources, from other important election administration tasks.

35. It is my understanding that the Rule requires that any mail containing a mail-in ballot for a federal election sent to or from voters must include the official Election Mail logo, be automation compatible, bear a unique IMb with the Delivery Point ZIP Code embedded and a Federal Ballot Mail Service Type Identifier, and have undergone USPS review.

36. These requirements of the Rule necessitate immediate action from California's elections officials.

37. Pursuant to California law, California elections officials must ensure that mail ballots are sent to all active registered voters in the state. Therefore, we anticipate that county elections officials will mail more than 23 million ballots to voters during the November 2026 General Election. *See* Cal. Sec'y of State, *15-Day Report of Registration* (May 18, 2026), https://elections.cdn.sos.ca.gov/ror/15day-primary-2026/complete-ror.pdf.

38. Our county elections officials have consistently relied upon election mail guidance from USPS to design and mail ballots and relied on that guidance in preparations that have already been taken for the November 2026 General Election.

39. I am aware that most, if not all, California counties have already ordered mail ballot envelopes for the November 2026 General Election. The Rule would require those counties to bear the expensive and time-consuming burden of canceling these orders, potentially re-designing their ballot envelopes, submitting their ballot envelopes to USPS for approval, then re-submitting their envelope designs to print vendors. Indeed, most counties' mail ballots have already been received from vendors. Moreover, the Rule requires all other counties to delay their ballot envelope printing until their envelopes go through this Rule's mandatory design

review. USPS confirms that States or localities that have already printed their ballot envelopes cannot use those envelopes under the Rule and will need to order new envelopes and submit them for design review. *See* 39 CFR Part 111, Supplementary Information at 71.

40. Out of 58 counties in California, 55 counties currently use Intelligent Mail barcodes on ballot mail. Three counties do not currently use Intelligent Mail barcodes for outbound or inbound tracking. USPS suggests that small businesses can create Intelligent Mail barcodes free on USPS's website, but that tool is only available for mailings with fewer than 50,000 pieces of mail.[2] The largest counties in the State would not be able to use that tool for election mail. And USPS itself acknowledges that the current tool has technical impediments that would prevent creation of Intelligent Mail barcodes for certain voters, such as when the voter's address cannot be verified using Delivery Point Verification. *See* 39 CFR Part 111, Supplementary Information at 48. While USPS says it anticipates modifying this tool, it has not committed to doing so before the November 2026 general election, or at any specific time. Thus, elections officials' concern about the feasibility of applying IMbs to all outbound and return envelopes, which have already been ordered, do not simply reflect "confus[ion]" as USPS asserts. *See* 39 CFR Part 111, Supplementary Information at 47.

41. In California, as in much of the country, ballot envelopes vary by county. I am concerned about the length of time it would take for USPS to conduct ballot design review for thousands of jurisdictions. While USPS indicates that Mail Design Analysts generally aim to provide feedback to mailers within two business days, this estimate was before implementation of the Rule, and USPS does not indicate that final approval of all election mail envelope designs

---

[2] *See Intelligent Mail® for Small Business (IMsb) Fact Sheet* (June 1, 2023), https://postalpro.usps.com/mailing/imsb/fact_sheet.

will occur in similar timeframes. In fact, USPS has disclaimed the need for additional staffing, even though thousands of jurisdictions nationwide are newly required to submit their outbound and return mail ballot envelopes for USPS inspection and approval. Nor does USPS specify how disputes regarding the design review process will be resolved. All of this creates a potential chokepoint in the entire mailing process because the ballot envelope design must be approved by USPS before any information can even begin to be uploaded into the Ballot Portal. *See* 39 CFR Part 111, Supplementary Information at 47, 49-51, 74. Waiting on USPS to approve ballot design has the potential to seriously disrupt and delay carefully timed steps necessary to deliver mail ballots to California voters. Indeed, delays in the approval process will literally prevent enrollment of voters on the USPS Mail Ballot List, foreclosing delivery of ballots. Managing the fallout from such a delay would force my office and local elections officials to divert critical time and money from other elections administration duties to expedite other steps in the mail ballot process, educate the public about the status of mail ballots, and otherwise mitigate the harm from delays to the process.

42. I am particularly concerned about the Rule's statement that ballot mailings that do not comply with the Rule "will not be accepted and will be returned." This means that USPS will refuse to deliver ballots to citizens who are properly registered to vote and entitled to vote by mail-in ballot under state law.

43. California elections officials are required by state law to issue mail ballots to every active registered voter in the state. *See* Cal. Elec. Code §§ 3000.5, 3003, 4005. Sending mail ballots in a timely fashion is not only required by state and federal law but is critical to ensuring that as many eligible California citizens as possible can exercise their right to vote. In the November 2024 General Election, more than 80% of the approximately 15.1 million ballots

cast were mail ballots. This method of voting is particularly important for the many California citizens who live in rural areas of the state, as well as voters who reside in all mail ballot counties in extremely remote areas where their in-person polling place at the office of their county elections official may be a great distance away or difficult to reach during inclement weather in November. Some voters may not have the ability to travel to their county elections official's office at all.

44. The Rule creates a very substantial risk that at least some ballot mailings will be delayed or not be transmitted at all. For example, the USPS Ballot Portal does not currently exist and has not faced the test of elections officials across the country attempting to concurrently enter tens of millions of voters' names and other information in a short window of time. If the Ballot Portal fails, the Rule would prevent **any** voters from receiving ballots. Moreover, if there are technical, typographical, or inadvertent administrative errors by USPS or elections officials, eligible voters will not timely receive mail ballots to which they are entitled under state law. And if USPS does not complete the review of ballot mail envelopes required by the Rule, that would also prevent voters from receiving mail-in ballots.

45. Even if the USPS Ballot Portal and enrollment system works as intended, the Rule still risks voter confusion and disenfranchisement. In my experience administering elections, changes to election procedures in the time immediately preceding an election can cause significant voter confusion. The Rule's complicated requirements will likely lead some eligible voters to misunderstand whether they are able to use a mail ballot. Some eligible voters will determine that the added requirements make voting too confusing to be worthwhile. The result of this confusion will be that fewer eligible voters decide to cast a ballot.

46. The Rule also requires the expenditure of considerable staff time to address voter concerns and proactively engage in public education about the Rule's changes. I anticipate a significant number of inquiries from voters as a result of the Rule. Fielding these questions requires staff time that would otherwise be spent preparing for the November 2026 General Election.

47. In addition, the Rule will require a wide-ranging public education campaign to ensure that eligible voters understand the Rule's requirements, and how they may impact a citizen's ability to vote by mail. This is particularly the case for California residents, who are used to automatically receiving mail ballots and being able to vote by mail under existing state law with no impediments.

48. I estimate that such a public education effort would be expensive and require funds not allocated for in the current budget. An analogous statewide education campaign in 2020 educating Californians about statewide vote by mail cost more than $15 million. Based on my experience, and the even shorter timeframe for implementation of the Rule, a similar statewide voter information campaign would be considerably more expensive in 2026.

49. Finally, confusion stemming from the Rule and any issues with its implementation that compromise the timely delivery of mail ballots are likely to severely harm the reputation of the California Secretary of State's Office. In my experience, voters tend to blame state and local elections officials for administrative issues, even if fault may belong to a third party like USPS. This can reduce trust in our electoral system and harm our office's reputation in a way that is difficult to reverse.

50. The harms that stem from the Rule are particularly acute because the requirements take effect while my office is busy taking other steps to prepare for the November 2026 General

Election.

51. Elections officials in California's 58 counties must begin mailing ballots for the General Election in the coming weeks. County elections officials may begin mailing ballots to eligible voters as early as 60 days before the election, or on September 4, 2026, for the November 3, 2026, General Election. *See* Cal. Elec. Code § 3105(a)-(b). Consistent with federal law, county elections officials mail ballots to military and overseas voters by September 19, 2026, 45 days before the General Election. 52 U.S.C. §§ 20302(a)(1)-(3), (8)(A). In addition, state law requires that county elections officials must begin to mail ballots to all active registered voters no later than October 5, 2026, 29 days before the General Election. *See* Cal. Elec. Code §§ 3000.5; 4005(a)(8)(A), (B).

52. Additionally, California's elections officials will need to continue to register those who are eligible to vote in California after mail ballots are sent to all active registered voters. California allows qualified individuals to register up to 15 days before Election Day and in person during early voting and on Election Day. *See* Cal. Elec. Code §§ 2170-2171, 3005.5(a); 52 U.S.C. § 20507(a)(1) (requiring states to permit registration up to 30 days before a federal election). California citizens can register to vote online, at their county elections official's office, at various state social service agencies, and through California's Department of Motor Vehicles when they submit sufficient information of their voter qualifications (including citizenship) through their transaction. During the weeks and months leading up to an election, we see a high volume of voters registering or updating their registration, resulting in changes to voter rolls and requiring considerable time from elections officials.

53. In compliance with the NVRA "quiet period" or "black out period" for voter registration, California does not systematically remove voters from the rolls during the 90 days

prior to a federal election unless a statutory exception applies. *See* 52 U.S.C. §§ 20507(c)(2)(A), 3(A)-(B), 4(A). California does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests that their registration be canceled, when a voter has been found mentally incompetent to vote by a court, and upon proof that the voter is presently imprisoned for the conviction of a felony. *See* Cal. Elec. Code § 2201.

54. In sum, California's elections officials must continue to process voter registration list changes up to and on Election Day. Registrants are constantly being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the November 2026 General Election.

55. The steps necessary to comply with the Rule will divert time and attention from these other critical election preparations. For example, just depositing the election mail at the post office will become an exorbitantly time-consuming task. Before election mail is even brought to the post office, the Rule will require elections staff to "segregate Outbound Federal Ballot Mail from other types of ballot mail, such as primary ballots, UOCAVA ballots, or ballots for state or local elections only." *See* 39 CFR Part 111, Supplementary Information at 56. And once at the post office, each piece of election mail will need to be individually scanned and processed by a postal service agent to "confirm the presence of scanned barcodes in the Federal Mail Ballot Portal." USPS estimates that such scanning alone could take a minute per piece of mail and that elections staff will have to "remain at the postal retail location during the verification process." The amount of staff time spent processing election mail will increase exponentially. *See* 39 CFR Part 111, Supplementary Information at 57-58. This would constitute an immense amount of time for USPS to process ballots for California, which will by law be mailing more than 23 million ballots in November. If these preparations are delayed or

not completed, it can have significant impacts on the conduct of the election and opportunities for voters.

56. I am also deeply concerned about harms to elections officials in my office and statewide due to increased workload and undue stress resulting from the implementation of the Rule. USPS waves away serious concerns about implementation and compliance with state law by stating, "States can easily avoid any effects on their state elections by either complying with the rule's requirements or by separating their federal ballots to exclude any non-federal elections." 39 C.F.R. Part 111, Supp. Info. at 78. This ignores both the serious concerns with the practical ability for USPS to carry out the requirements of the rule, and the fact that separating federal and non-federal elections, which are printed on the same ballot, is functionally impossible. USPS then asserts, despite the extensive evidence of compliance challenges that elections officials provided in comments on the Proposed Rule, that implementation and compliance are completely feasible so long as states "make a good faith effort to comply with the rule." 39 C.F.R. Part 111, Supp. Info. at 70. As demonstrated above, this is not the case at all.

57. My colleagues and I are aware that the Rule's requirements to enable tracking of mail ballots sent to and returned by voters comes in the context of an Executive Order that directed federal agencies to prioritize the investigation and prosecution "of State and local officials . . . who issue Federal ballots to individuals not eligible to vote in a Federal election." Exec. Order No. 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17125, § 2(b) (March 31, 2026); *see also id.* § 5 (providing that "State or local election officials . . . [and] individuals involved in the administration of Federal elections; or public [] entities engaged in the printing, production, shipment, or distribution of ballots may be referred to the Department of Justice for consideration of investigation or charges under" various federal

criminal laws). USPS made clear the primary purpose of the Portal Data and the Lists is "to provide valuable insight" to law enforcement, specifically through disclosing "a list of individuals to whom states planned to mail a ballot (and who may potentially use the mail to vote), along with the associated barcode data," which in turn can purportedly "identify potentially anomalous incidents that may merit further investigation." *See* 39 C.F.R. Part 111, Supp. Info. at 60, 61. In a letter to California Secretary of State Shirely N. Weber, Ph.D., dated July 7, 2026, U.S. DOJ specifically threatened to prosecute elections officials if noncitizens cast any ballots. That letter is attached to this declaration as **Exhibit B.**

58. My colleagues and I are also aware that the President has repeatedly claimed that there is widespread fraud allowing noncitizens to vote, even though in our experience as elections officials noncitizen registration and voting are both extraordinarily rare.

59. I am concerned that I and other elections officials could be targeted for federal investigation and even prosecution as a result of the Rule's mail ballot tracking system if the federal government believes, even incorrectly, that any of California's registered voters are not citizens.

60. In conclusion, based on my experience, I believe that the requirements of the Rule will increase financial strain on our office and necessitate a higher budget. Our office will need to request additional funds from the Legislature, which we are far from assured to receive. We will be unable to pull funds or cut expenses from elsewhere in our budget.

61. Any time spent by current staff on implementing the Rule would divert time and attention from other critical election preparation in the days leading up to the election, our office's busiest time. Our staff is already at capacity and dedicated to routine tasks and special

projects that ensure California's elections run smoothly and every eligible California resident can exercise their right to vote. This work increases and becomes more significant and urgent in the months leading up to the election, when we must answer an increasing volume of voter questions and handle tasks related to, for example, election material translation, candidate certification, reports of registration, the statewide Voter Information Guide, logic and accuracy testing, election night reporting preparations, and emergency planning.

62. Each of these tasks and costs will divert scarce resources from other important election administration needs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2026, in Sacramento, California.

Joanna Southard
Assistant Chief, Elections Division
California Secretary of State's Office