**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br>*Plaintiffs,*<br>v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>*Defendants.* | Case No. _______________ |

**DECLARATION OF ARIZONA SECRETARY OF STATE ADRIAN FONTES**

I, Adrian Fontes declare as follows:

1. I am a resident of the State of Arizona. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with staff at the Secretary of State's office, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

## I. The Secretary of State's Office and Responsibilities

2. I am the duly elected Secretary of State for Arizona. I am also a native Arizonan and Marine Corps veteran. After four years of active military service, I worked as a prosecutor and practicing attorney in Colorado and Arizona for fifteen years. In 2016, I was elected Maricopa County Recorder, administering elections for a county that is consistently among the top five largest voting jurisdictions in the nation, with approximately 2.5 million active registered voters.

3. I have served as the Secretary since January 2023. I hold a Certified Election and Registration Administrator credential from the National Association of Election Officials and Auburn University. I am recognized nationally as an expert on election administration, and I've

frequently been invited to speak to media and academic groups about voter registration, election security, and other election administration and policy issues. One of my award-winning programs at Maricopa County was the institution of a mail ballot tracking system that provided voters with ballot status updates via text message, so the voter knows when their ballot was sent to them, received by elections officials, and counted. Since becoming the Secretary, I have instructed my office to ensure that ballot status updates are available by text to every voter in Arizona.

4. The Secretary's office, as well as county and local government subdivisions are responsible for administering elections in Arizona. This responsibility encompasses voter registration, maintaining and updating voter rolls, issuing ballots to registered voters, tabulating votes, and certifying results in all elections for federal office, among numerous other tasks. The Secretary is responsible for maintaining and updating the voter rolls. My office receives updated voter registration information from various sources—including the USPS national change of address (NCOA) list and the federal death file—and distributes them to the counties to conduct list maintenance. My office also serves as the filing officer for federal, statewide, and state legislative candidates and canvasses final election results for federal candidates, among other things.

5. The Secretary is the state's Chief Officer of Elections, responsible for implementing and coordinating state and federal law relating to elections across the state. *See* A.R.S. § 16-142(A)(1)-(2). Arizona law charges my office with preventing disenfranchisement and ensuring that all eligible voters who want to vote are able to do so.

6. Arizona law entrusts county officials with the primary responsibility to administer elections, with certain responsibilities conducted or supported by the Secretary. For instance, the Secretary is charged with processing updated voter registration information from state and national

databases, A.R.S. §§ 16-165(D)-(G), -168(J), certain campaign finance reporting, A.R.S. § 16-938, and testing devices that will be used to tabulate votes in the election, A.R.S. § 16-449. Any voter in Arizona is entitled to vote by mail. A.R.S. § 16-541(A). Voters can request a mail ballot to vote once, or sign up for the Active Early Voter List ("AEVL"), which ensures that the voter automatically receives a ballot for every election in which they are eligible to vote. A.R.S. § 16-544(F). Changes to front line election administration affect the Secretary's office in staff time, direct costs, and training. For example, all election officials in Arizona must be certified election officials. A.R.S. § 16-532. These trainings are conducted by my office, and cost $80,000 per election cycle. The new USPS rule turns on its head the fundamental legal principles that my office spent tens of thousands of dollars last year teaching county and local election officials, including that mail ballots are a legal, valid, and important way to exercise the franchise and that ballots will be prioritized for delivery (not screened out).

7. As the Secretary, I am charged by state and federal law to oversee the administration of the National Voter Registration Act ("NVRA"), the Help American Vote Act ("HAVA"), and the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). Under these statutes, my office must coordinate voter registration list maintenance, 52 U.S.C. § 20507(c)-(g), maintain the statewide voter registration database, 52 U.S.C. § 21083(a), and ensure the men and women serving in the armed forces have the opportunity to vote, 52 U.S.C. § 20302.

8. My office and all fifteen counties statewide are currently preparing to administer the November 2026 general election. Federal, state, and local races will be on the ballot. Currently, these duties include the following work and more:

a. **List Maintenance**: My office ensures the most up-to-date voter registration data from the various databases and other mechanisms to remove voters who are deceased, moved

out of state, have been convicted of a felony that restricts their right to vote, or any other reason required by law.

**b. Ballot Measures**: Arizona law requires my office to draft the ballot language for the eleven measures that were eligible to be printed on the ballot before litigation. A.R.S. § 19-125(D). The Secretary and Arizona Attorney General were defendants in many lawsuits regarding the ballot language or other election materials beginning in July, all of which had to be resolved on or before August 20, 2026, for the November 2026 General Election. Of those cases, there were four emergency appeals directly to the Arizona Supreme Court that determined what measures were ultimately included on the ballot since the ballot language was finalized. Ultimately, eight measures (of the eleven originally eligible for the ballot) will appear on the 2026 General Election ballot.

**c. Publicity Pamphlet**: The Secretary is also responsible for creating the "publicity pamphlet" which includes instructions for voters, the actual language of each proposed ballot measure, the actual language that will be printed on the ballot describing each ballot measure, legislative council analysis, joint legislative budget committee fiscal impact, and any argument sent in by interested parties and the general public in favor or against each ballot measure, as well as information about judges. A.R.S. § 19-123(A). Each household with a registered voter receives a publicity pamphlet by mail or email, and it is published to the Secretary's website. *Id.* at (B). The entire publicity pamphlet must be translated into Spanish and many traditionally unwritten native languages, including Navajo, Apache, and Tohono O'odham.

**d. Ballot Measure Public Meetings**: In addition to preparing, publishing, translating, and distributing the publicity pamphlet, the Secretary must hold at least three public meetings in at least three different counties that provide "an opportunity for proponents, opponents

and the general public to provide testimony and request information" about each measure. *Id.* at (E). These public meetings must be coordinated with the joint legislative budget committee staff, who are required to attend and provide a brief spoken and written summary of each measure at all the meetings. *Id.*

**e. Logic and Accuracy Tests**: To ensure election accuracy, the Secretary's office also conducts pre-election and post-election logic and accuracy ("L&A") tests. A.R.S. § 16-449. This requires Secretary staff to go to each county with an established test deck of ballots, where the Secretary knows what the results should be but the counties do not. Election officials run the ballots through the tabulators and compare the results from the county machines to the known results the Secretary has to ensure the ballots were accurately counted. The L&A test for each county (and any additional tests that must be conducted if errors are found) has to be finished before early voting starts on October 7, 2026, and must be completed after the election is finished by November 19, 2026. These tests are open to the public and require the coordination of state and local officials, as well as political party representatives. A.R.S. § 16-449

9. Arizona provides a mail ballot to approximately 80% of the state's 4,306,544 currently active registered voters pursuant to the state's "no excuse" early voting laws. A.R.S. § 16-541 (providing that "[a]ny election called pursuant to the laws of this state shall provide for early voting," including elections for local and special districts, and that "[a]ny qualified elector may vote by early ballot."). In Arizona, voters can join AEVL and automatically receive a mail ballot for every election in which they are entitled to vote. A.R.S. §§ 16-541 -544. Voters can also make a one-time request to vote by mail via phone call, written request, or electronic means between ninety-three days and eleven days before the election in which the voter wishes to cast a ballot. Arizona sends these ballots to voters through the United States Postal Service ("USPS").

10. In Arizona, ballots are mailed by the county in which the voter resides. Mail ballot envelopes are designed by each of the fifteen elected county recorders, and must conform with state law. A.R.S. § 16-544(F). In Arizona, mail ballots are not required to include Intelligent Mail barcodes. Arizona counties begin mailing ballots to all generally eligible voters twenty-seven days before the election, or on October 7, 2026. Counties send ballots to UOCAVA voters even earlier, forty-five days before the election—September 19, 2026. Importantly, this is not a static list. Any eligible voter may request a ballot by mail. Voters may use phone, mail, or the state portal, to request a mail ballot up to eleven days before the election, which this year falls on October 23, 2026. There are also one-time requests and replacement requests, which are unpredictable. Counties have to be nimble to respond to the numerous legal mechanisms whereby any Arizona voter can request a ballot by mail.

11. Arizona's fifteen county recorders continue to send mail ballots as additional voters register to vote or request a ballot by mail, up to eleven days before the election, or October 23, 2026. Considering it can take ten days for USPS to transport ballots one way, especially in rural parts of Arizona, this gives voters precious little time to vote their ballot and then deliver it to the County by the end of Election Day, when ballots are required to be in the possession of the county in order for the ballot to count. During the 2026 Primary Election, 859 ballots were returned late by the United States Postal Service ("USPS") in Yavapai County alone, a substantial increase from the 104 received late in 2024.

12. I am familiar with the Notice of Proposed Rulemaking issued by USPS that was published in the Federal Register on June 2, 2026. On July 2, 2026, my office submitted a letter opposing the proposed rule, explaining that it unconstitutionally usurps Arizona's constitutional authority to regulate its own elections, commandeers Arizona's election officials to participate in

collecting information in a centralized federal database in violation of the law, and that this rule will ultimately—and unlawfully—disenfranchise eligible Arizona voters. Additionally, the Rule would force elections officials to violate numerous Arizona statutes, including the legal requirement to protect voter registration information and secured voters such as police officers, judges, and victims of sexual violence and stalking. A.R.S. §§ 16-153, 41-165. Finally, the letter explained that the proposed rule would delay or entirely prevent the transmission of mail-in ballots by increasing the demands on USPS without providing the requisite resources and introducing multiple additional points of failure applicable only to mail ballots. A true and correct copy of that comment letter is attached to this declaration as Exhibit A.

13. I am also familiar with USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule"), which was made available for public preview at https://public-inspection.federalregister.gov/2026-17238.pdf prior to its scheduled publication in the Federal Register on August 26, 2026. That Rule has already caused harm, and will continue to sow significant harm, confusion, and disruption to the state's election administration, and will impose unrecoverable costs on Arizona. I have experienced in real time the voter confusion and reduced confidence in the availability, timeliness, and security of mail voting that just the announcement of this rule and the media surrounding it has caused voters in Arizona. Because nearly 80% of Arizona voters cast an early ballot, many of our voters are concerned whether they will get their ballot in the mail and whether it will get back to their local election officials in time.

14. For the reasons discussed throughout this declaration, I must act now to align Arizona's administration of mail voting with the requirements of the Rule. Given the very short time available and the untested technology that the Rule relies on, I have profound concerns that the Rule will prevent eligible voters from voting, including in the November 2026 General

Election. My office will strive to ensure that voters have an opportunity to vote, and the Rule imposes significant costs on doing so.

15. Since the Executive Order was first signed, my office has been engaged in near daily discussions with county election officials[1] as informal and more formal advice. On August 25, 2026, my office sent a communication to the counties to clarify the status of the Rule and provide guidance on how to proceed since the 2026 General Election is imminent. Ballots have already gone to print, polling locations have already been secured, and poll workers have already been budgeted for, hired, and trained. Creating distrust and disruption in this system represents a pocketbook injury twice over—first for the postage and ballot package that voters may not receive or use due to concerns and disruptions caused by the Rule, and second due to any additional polling places, in person voting materials, and staff that need emergency sourcing if Arizona voters turn away from mail in votes as a result of the uncertainty and administrative burdens imposed by the Rule.

## II. The Requirement to Provide and Update Voter Lists Harms Election Administration in Arizona.

16. It is my understanding that the Rule requires that every voter who will receive an absentee or mail-in ballot must be enrolled with USPS. To enroll voters, elections officials or other authorized personnel must access the USPS Ballot Portal to enter each voter's name, address, unique Intelligent Mail barcode from the outbound ballot envelope, unique Intelligent Mail barcode from the return ballot envelope, and the originating election office. The information would have to be provided at least thirty days before the date of the federal election or by the date by which ballots may begin to be mailed to voters under state law, although supplemental submissions

[1] In Arizona, county election officials include an elected county recorder, elected county boards of supervisors, election directors, and their designees.

can be made until the last day that ballots may be mailed out to voters under state law. And *before* election officials can even begin enrolling voters in the process above, they must certify that they have submitted outbound/return envelopes for Mailpiece Design Analyst review and received feedback from USPS. This sequencing provides additional time pressure, especially given how many jurisdictions will be simultaneously submitting for review. According to the Rule, Arizona would have to provide that information by October 4, 2026 (thirty days before the election) or October 7, 2026, and we would thereafter have to update the information on a near-daily basis to include eligible voters who registered after that date or requested a mail ballot after that date. The Rule requires "[a] separate submission . . . in connection with each Outbound Federal Ballot mailing." The Rule provides that USPS "will provide a state-specific Mail-In and Absentee Participant List" ("US Mail Ballot List") to States' chief election officials "[o]n or about the date of the federal election." I further understand that if a voter is not enrolled on the US Mail Ballot List, USPS will not accept the outbound mail ballot envelope for mailing.

17. These requirements impose significant financial costs on my office and threaten to disenfranchise voters in Arizona.

18. I have grave concerns about USPS's ability to implement this system in an accurate fashion, particularly given the limited time remaining before the November 2026 General Election. As demonstrated by our office's letter opposing the proposed rule change, the Secretary's office was concerned about the feasibility of this program before the 2026 Primary Election. After various USPS failures in the 2026 Primary Election, these concerns are more acute because they demonstrate that USPS is already failing its duties regarding mail ballots, even before the new burdens imposed by the new rules. The following USPS failures occurred in the 2026 Primary Election:

**a. Navajo County**: A rural county in the four-corners area of Arizona, with only 72,918 registered voters as of the 2026 Primary Election, had 1,300 mail ballots (3.9% of ballots mailed in that county) returned to the county recorder as undeliverable. Initially, the USPS reported that the ballots were not delivered because the county did not have the requisite funds in their account to mail those ballots. This was wrong. While further investigation has so far demonstrated that these ballots were properly returned as undeliverable, USPS's initial failure to understand, identify, or explain the issue is indicative of why new restrictions on how ballots are mailed is very concerning.

**b. Santa Cruz County**: A rural county near the Arizona-Mexico border, with only 32,699 active registered voters as of the 2026 Primary Election. Of the 6,099 early votes cast in this election, 217 mail ballots (3.55% of all ballots mailed) were sent roughly 180 miles (from Nogales, the county seat for Santa Cruz county to Phoenix, the county seat for Maricopa county) to be processed at the central USPS processing facility. These ballots were improperly routed to an Amazon Return center in Avondale, a Phoenix suburb, and never made it to those Santa Cruz county voters. USPS failed to identify this issue until July 21, 2026, which was election day for the 2026 Primary Election and therefore too late for those voters to cast those ballots.[2]

**c. Yavapai County**: A rural county in the center of the state, with 172,971 active registered voters, 61,957 of these voters voted early in the 2026 Primary Election. As of July 30, USPS delivered 859 ballots after the Primary Election so they could not be counted. While USPS previously worked to ensure that ballots received priority, this is a significant uptick in late returns because USPS did not prioritize ballots for the primary election. As a result, 859 Arizona

---

[2] Santa Cruz County, Recorder's Office Provides Update on Undelivered 2026 Primary Election Ballots (July 28, 2026) *available at* https://www.santacruzcountyaz.gov/m/newsflash/home/detail/277 (last visited Aug. 24, 2026).

voters were disenfranchised as a result of delays created by USPS. This delay was caused, in part, by USPS sending ballots out of Yavapai county to Phoenix for processing before sending them to voters, many of which choose to vote by mail from their homes in Yavapai County.[3]

These failures indicate that USPS is already having a difficult time meeting its obligations to ensure ballots are properly processed and timely delivered to voters and returned to elections officials. Adding new burdensome regulations that apply only to ballots, shortly before ballots begin to be mailed, introduces multiple new points of potential failure. Failures at any one of these new bottlenecks, for example the improper exclusion of a valid Arizona voter from the USPS list, could make it impossible for Arizona to deliver mail ballots to voters who are lawfully entitled to vote by mail.

19. As a result of the Rule, my office must immediately prepare and update guidance for local elections offices to ensure a consistent approach across Arizona's fifteen counties. This guidance would have to address topics such as using the USPS portal, ensuring timely enrollment of mail voters as voter rolls change leading up to the election, cybersecurity protection and how to process voter registration information for voters whose information is protected by statute because they are police officers, judges, or victims of sexual violence or stalking. These preparations and updates will require significant time, personnel, and money, and will inject uncertainty into the system right before the election. For example, it is a crime for election officials to distribute information about secured voters outside of specific exceptions provided by law. Arizona law does not currently provide for the new USPS Rule, so it is unclear whether or how elections officials could comply with Arizona law regarding secured voters and the new USPS Rule.

---

[3] Carrie White, Voting irregularities and voter misunderstandings dog 2026 primary, Patagonia Regional Times, (Aug. 4, 2026) *available at* https://patagoniaregionaltimes.org/voting-irregularities-and-voter-misunderstandings-dog-2026-primary/ (last visited Aug. 24, 2026).

20. Arizona counties anticipate mailing ballots to approximately 3,200,000 voters during the 2026 General Election during the period from September 19, 2026 (for UOCAVA voters) to October 23, 2026, with the vast majority being mailed on or around October 7, 2026.

21. In my experience, implementing new election technology is highly complicated and takes time to get right. But even if USPS's untested Ballot Portal works as intended and does not experience technical problems—which seems unlikely given the short development and implementation window—enrolling all 4,300,000 active voters (all of whom are eligible to vote by mail under Arizona law, even if they choose not to receive a ballot in the mail) with USPS will be a massive undertaking. This task will be significantly complicated by the influx of registration updates and changes that elections officials typically receive in the months, weeks, and days before any election. Given Arizona's extensive experience in ensuring smaller databases with voter registration information are both accurate and compatible, I understand how difficult it can be to maintain data integrity while ensuring compatibility. My experience with these processes, which usually take years, lead me to believe that it is impossible to establish the contemplated system for data exchange with the USPS that works, does not disenfranchise voters who are legally eligible to vote by mail, and is ready before ballots are mailed for the 2026 General Election.

22. Before election officials can even become authorized to use the Ballot Portal, they must be approved by the Secretary, which itself requires advance coordination among state and county election offices to determine which staff throughout the state will become authorized and trained to use the Ballot Portal. *See* 39 CFR Part 111, Supplementary Information at 14.[4] Once election officials become authorized users—a process that may also create delay and

[4] Page citations to the Rule use the numbering from the preview document. *See* https://public-inspection.federalregister.gov/2026-17238.pdf.

administrative burden—the officials cannot enroll voters with USPS in bulk. Instead, elections officials must enroll voters separately for each mailing. Sometimes, a mailing contains only a single piece of ballot mail, such as when elections officials mail a replacement ballot. Elections officials will not only be required to process these registration updates within their own systems, but they will bear the added burden of processing registration updates in an entirely new system operated by USPS—about which officials currently have no concrete operational information.

23. State law allows a voter to spoil an unvoted mail ballot and request a new ballot up to eleven days before an election. To ensure that voters receive these ballots to which they are entitled under state law, the information associated with these new ballots also would need to be provided to USPS.

24. Because this Rule and new process is being rushed and pushed out before it is ready, and before election officials have had the opportunity to test it, I am very concerned about the burden it places on Arizona and our voters. Given what I do know, I foresee the following problems, and it will be too late to address them if the 2026 General Election is already underway.

a. **USPS Ballot Portal System:** Based on what information is available, I estimate that it will take approximately 1,280 hours to learn the new USPS Ballot Porta system and upload the data. That does not include the time needed to oversee this process or conduct quality control. After the initial upload, it will likely take an additional 15-80 hours per week per county (with larger counties requiring more staff time) to upload one-time requests and ballot replacement requests to the portal through October. I estimate my staff will also need to dedicate as much time or more to address correspondence, data issues, and support issues from election officials and voters. This all assumes that there are no delays caused by technical or processing difficulties, which is an unreasonable assumption in my experience. For example, Maricopa

County has so many voters, more than 2.5 million, that any single bulk upload of voter data poses significant burdens to the entire system. When the United States Citizenship and Immigration Services created a bulk upload tool, Maricopa County had to be scheduled so it was the only county using the tool to prevent the entire system from crashing. Given that experience, I am deeply concerned that any upload of Arizona's largest voting jurisdiction (and currently the country's second largest) could crash the entire system or require significant additional time to split up into more manageable pieces, and cross-check to ensure completeness. Either way, this will result in delays for Arizona voters, and possibly voters across the country.

**b. Mail Piece Requirements:** Arizona's voter registration database does not include IMb information, and they are generated and added to the outgoing ballot envelops by vendors that mail out the ballot. Approximately half of Arizona's counties cannot use USPS's free IMb tool, because they have more than 50,000 active registered voters and the tool can only be used to generate 50,000 or fewer IMbs. Because IMbs are not required by Arizona law, not all Arizona counties use them for outgoing ballot envelopes. Furthermore, there is *not one* Arizona county that prints IMbs on return ballot envelopes. Based on the information I currently have, those envelopes have already been printed. This requirement will increase costs, delays, and the potential to disenfranchise voters who should receive a return ballot envelope that complies with this new Rule, but don't due to the rushed roll out.

**c. Compounding Issues:** As I have explained, given my experience administering elections in one of the country's largest voting jurisdictions, technical and processing delays are common, especially with implementing a new, untested technology and process. Given the scale of the effort, any unexpected technological and processing difficulties

could increase the practical and financial burden on Arizona exponentially. And if the system fails, Arizona may be unable to mail ballots to voters at all.

25. Arizona law assigns primary responsibility for processing requests for mail ballots, including requests to be on the AEVL and maintaining their voter registration records and updates to the statewide voter registration database for new voters in their county largely to the voter's county of domicile. The voter registration information is updated up through when books close for voter registration on October 5, 2026. While updates made through the Motor Vehicle Division's voter registration platform can be processed quickly, thousands of paper registrations are dropped off at the County Recorders' offices right before the deadline that must be processed. This will affect the State's ability to provide up-to-date information to USPS by their deadline, as many of these registration forms will contain requests to by voters to join AEVL and therefore receive their ballot delivered by mail

26. In Arizona, USPS is the only way in which the vast majority of voters receive a ballot. In 1991, Arizona adopted no-excuse early voting, which is largely carried out through voting by mail. In 2007, the state instituted the Permanent Early Voting List ("PEVL"), which allowed a voter to join a list to automatically receive a ballot in the mail for all future elections in which the voter is eligible to vote. The list has been modified and is now called the Active Early Voting List, but it operates the same way—participants receive a ballot in the mail for every election in which they are eligible to vote unless the request not to receive a mail ballot or fail to vote by mail for two federal election cycles. Since the advent of PEVL, the percentage of Arizona voters who vote by mail has steadily increased and now sits at around eighty percent for each election. Mail voting has worked extremely well in Arizona and enjoys widespread support by Arizona voters.

27. If the USPS is unable or unwilling to send Arizona's ballots, it costs $11 per letter to ship through UPS and $12.75 per letter to ship it through FedEx. This is the minimum cost to ship a letter, and given the length of our ballots and the materials that must be included in each outgoing packet, it is unlikely that our counties will pay the minimum rate. Even using the minimum rate, this represents an increase in cost over *twenty times* what election officials currently pay USPS because the private companies do not offer bulk rates. This is not feasible for Arizona election officials, and may not be feasible for UPS and FedEx, which are not accustomed to the volume nor well placed to service all of Arizona, especially rural and tribal areas. Due to costs, facility limits, and hiring demands, it is also impossible for counties to open additional unplanned in-person voting locations to account for additional in person voting demand when this capacity has been unnecessary in Arizona due to our accurate and robust vote by mail system. Access to mail-in voting is especially important for low-income, rural, and vulnerable populations, including voters with disabilities, who may lack access to transportation to either vote in-person or to receive and return their ballot through some other means. Indeed, it is particularly important for the many Arizona citizens who live outside the metro areas of Phoenix, Tucson, and Flagstaff, where voters must drive twenty or thirty miles to reach their polling place. This problem is particularly acute on the large swaths of tribal land within Arizona where roads are underdeveloped or nonexistent, including on the vast Navajo Nation and the Havasupai Reservation at the bottom of the Grand Canyon.

28. I am particularly concerned that USPS is only preparing for a seamless transition and that it has not prepared contingency plans if the Ballot Portal does not work as intended or other errors impede the process. For example, USPS has not provided any information about how it will help election administrators facing technical difficulties in uploading information to the

Ballot Portal. Nor has it provided any information about how errors by USPS will be corrected. USPS states only that it will inform Authorized Ballot Mailers of "escalation procedures" if they decide to challenge USPS's rejection of ballot mail. *See* 39 CFR Part 111, Supplementary Information at 58. USPS also says it will not develop any new appeal procedures for election mail, but USPS's standard processes won't work in the election context, where time is of the essence, and any errors must be resolved quickly to prevent voters from losing the fundamental right to vote.

29. The risks of error are heightened here because USPS has not committed to providing any training to election administrators regarding the Ballot Portal or any other aspect of the process changes. While the Rule contemplates that States and local election offices will soon begin registering tens of millions of voters into the Ballot Portal, USPS has provided virtually no information on what the Ballot Portal will look like, how it will operate, how users become authorized to use it, or how long it will take to upload voter information into the Ballot Portal. In fact, USPS explicitly "declines to conduct, publish, or otherwise disclose any additional analysis or information concerning the rule or Portal." *See* 39 CFR Part 111, Supplementary Information at 81. And while USPS indicates that it is still developing training for internal Postal Service employees on such topics as mail ballot design and verification of ballot mail, it has not committed to providing any training to state and local election officials. Nor does USPS indicate when the Ballot Portal will become accessible for authorized users so that they can begin learning the system before they are required to start adding registered voters into the Ballot Portal under the pressure of election deadlines.

30. USPS claims that the changes imposed by the Rule are modest and have been issued as "best practices" guidance in the past. But that is wrong. The Rule imposes dramatic changes

with sweeping impacts. USPS has never required the Chief Election Officer of each state to authorize individual election workers to handle election mail, to require ballot design review before election mail can be sent, or to register each voter into a Ballot Portal before the voter can be mailed a ballot. Nor has it ever transmitted information about every mail-in voter in the country to unspecified law enforcement officials for vague and unsubstantiated reasons. The threat of disclosing such information to law enforcement officials itself could suppress voter participation. And each of the process changes create delay and administrative burden at each step, creating dangerous bottlenecks in the short time before elections that increase the risks of cascading impacts and disenfranchisement at an alarming scale. USPS claims it will make further guidance documents available to explain in detail how to use the Portal "shortly," 39 CFR Part 111, Supplementary Information at 55, but election officials must begin work now.

31. It is far too late in the election cycle to introduce such dramatic changes. USPS itself encourages the Chief Election Official in each State to provide USPS ninety days advance notice if the State plans to send federal election ballots, claiming such notice is "logistically beneficial" so that USPS can "conduct outreach on mail preparation, provide resources related to IMbs, and offer guidance on how [to] access and use the Federal Mail Ballot Portal." *See* 39 CFR Part 111, Supplementary Information at 45. But that ninety-day window has already passed, and there is virtually no time for either USPS or States to prepare for such a dramatic change in election mailing. And USPS has done no advance work with States to begin educating election officials about any of these changes.

32. These risks are compounded by USPS's lack of prior experience in the type of election administration duties it will assume under the Rule, and uncertainty over whether USPS will devote sufficient resources to process the massive amount of data it will receive from all fifty

states in a condensed timeframe. USPS has confirmed that it does not expect "to require additional staff" or for implementation of the Rule to impose "a significant burden on employees." *See* 39 CFR Part 111, Supplementary Information at 74. This does not inspire confidence. It suggests that USPS is not adequately preparing contingency plans for problems that may arise, and will not have adequate staffing to address technical failures in the Ballot Portal or to timely address appeals related to rejected election mail. The stakes are incredibly high, with any systemic errors, technological difficulties, or improper staffing threatening to disenfranchise voters at a massive scale.

33. As a result of the Rule and to mitigate the impact of all this uncertainty and turmoil, Arizona will have to devote significant time, personnel, and money to update training materials for local elections officials and their staff. Elections staff would need to be trained on the USPS processes and technology. Training materials would have to specifically detail what steps they must take to access the USPS Ballot Portal, enroll voters in the Portal, and to process election mail. This is yet another aspect of the Rule that will necessarily divert the State's five voter registration staff from other important election administration tasks.

### III. The New Envelope Standards Will Cause Imminent Harm to Election Administration in Concrete Ways.

34. It is my understanding that the Rule requires that any mail containing a mail-in or absentee ballot for a federal election sent to or from voters must include the official Election Mail logo, be automation compatible, bear a unique Intelligent Mail barcode with the Delivery Point ZIP Code embedded and a Federal Ballot Mail Service Type Identifier, and have undergone USPS review.

35. These requirements of the Rule necessitate immediate action from me and my team in the Arizona Secretary of State's Office.

36. Arizona local elections officials have consistently relied upon election mail guidance from USPS to design and mail ballots, and relied on that guidance in preparations that have already been taken for the November 2026 General Election.

37. I am informed and believe that all of Arizona's fifteen counties have already purchased and designed envelopes for the more than three million Arizona voters who have requested and under state law are required to be mailed ballots for the November 2026 General Election. USPS confirms that States or localities that have already printed envelopes that do not comply with its new Rule cannot use them. Instead, they will need to order new envelopes and submit them for design review. *See* 39 CFR Part 111, Supplementary Information at 71.

38. My understanding is that three Arizona counties do not currently use Intelligent Mail barcodes on outgoing ballot mail, and *not one county* uses IMbs for incoming ballot mail. In order to apply Intelligent Mail barcodes, those counties would need to purchase new equipment or pay more to outside vendors to print their ballot envelopes. These are costs that are not in counties' budgets, which have already been set for the current year by their governing bodies. The Secretary's Office does not have funds that it can provide to counties for this purpose. Moreover, given Arizona's use of a ballot tracking system—BallotTrax—which allows voters to track, view, and receive messages about the status of their mail ballots, the cost of using Intelligent Mail barcodes outweighs the benefit to Arizona voters and election officials. USPS suggests that small businesses can create Intelligent Mail barcodes free on USPS's website, but that tool is only available for mailings with fewer than 50,000 pieces of mail.[5] All but six of Arizona's fifteen counties would not be able to use that tool for election mail because there are more—and in some cases *far more*—than 50,000 people who vote by mail. And USPS itself acknowledges that the

*See* Intelligent Mail® for Small Business (IMsb) Fact Sheet (June 1, 2023).

current tool has technical impediments that would prevent creation of Intelligent Mail barcodes for certain voters, such as when the voter's address cannot be verified using Delivery Point Verification. *See* 39 CFR Part 111, Supplementary Information at 48. This is a particularly important issue in counties where large portions of their population live in rural parts of our state, including on some parts of Native American reservations, where residents do not have standard addresses that can be confirmed with Delivery Point Verification. While USPS says it anticipates modifying this tool, it has not committed to doing so before the November 2026 General Election, or at any specific time. Thus, election officials' concern about the feasibility of applying IMbs to all outbound and return envelopes, most of which have already been ordered, do not simply reflect "confus[ion]" as USPS asserts. *See* 39 CFR Part 111, Supplementary Information at 47. I am informed and believe that some Arizona counties do not currently submit ballot envelopes to USPS for design review.

39. In Arizona, as in much of the country, ballot envelopes vary by county. I am deeply concerned about the length of time it would take for USPS to conduct ballot design review for thousands of jurisdictions. While USPS indicates that Mail Design Analysts generally aim to provide feedback to mailers within two business days, this estimate was before implementation of the Rule, and USPS does not indicate that final approval of all election mail envelope designs will occur in similar timeframes. In fact, USPS has disclaimed the need for additional staffing, even though thousands of jurisdictions nationwide are newly required to submit their outbound and return mail ballot envelopes for USPS inspection and approval. Nor does USPS specify how disputes regarding the design review process will be resolved. All of this creates a potential chokepoint in the entire mailing process because the ballot envelope design must be approved by USPS before any information can even begin to be uploaded into the Ballot Portal. *See* 39 CFR

Part 111, Supplementary Information at 47, 49-51, 74. Waiting on USPS to approve ballot design has the potential to seriously disrupt and delay carefully timed steps necessary to deliver mail ballots to Arizona voters. Indeed, delays in the approval process will literally prevent enrollment of voters on the USPS Mail Ballot List, foreclosing delivery of any ballots from a county until its ballot has passed USPS review. Managing the fallout from such a delay would force my office and local elections officials to divert critical time and money from other elections administration duties to expedite other steps in the mail ballot process, educate the public about the status of mail ballots, and otherwise mitigate the harm from delays to the process.

### IV. Ballot Rejection by USPS Will Harm Arizona's Ability to Administer Elections and, More Importantly, Risks Disenfranchising Arizona Voters.

40. I am particularly concerned about the Rule's statement that ballot mailings that do not comply with the Rule "will not be accepted and will be returned." This means that USPS will refuse to deliver ballots to citizens who are properly registered to vote and entitled to vote by mail ballot under state law. USPS has been unclear about who (if anyone) will be notified if those ballots are not delivered by USPS and whether that notification, if made, will be made in time to allow those disenfranchised voters to cast a ballot in a different manner, to the extent voting in a different manner is even possible. For example, a person who is temporarily out of state may be unable to return to Arizona to cast a ballot if the USPS refuses to deliver or accept it.

41. Sending mail ballots in a timely fashion is not only required by state and federal law, but is critical to ensuring that as many eligible Arizona citizens as possible can exercise their right to vote. In the 2024 General Election, 2,597,974 Arizona citizens (more than 75% of voters) voted by mail. Many Arizona citizens who live outside the metro areas of Phoenix, Tucson, and Flagstaff prefer voting by mail rather than twenty or thirty miles to reach their polling location. The problems created by USPS's new Rule is particularly acute on the large swaths of tribal land

within Arizona where roads are underdeveloped or nonexistent, including on the vast Navajo Nation and the Havasupai Reservation at the bottom of the Grand Canyon.

42. The Rule creates a very substantial risk that at least some ballot mailings will be delayed or not be transmitted at all. For example, the USPS Ballot Portal does not currently exist and has not faced the test of elections officials across the country attempting to concurrently enter tens of millions of voters' names and other information in a short window of time. If the Ballot Portal fails, the Rule would prevent *any* voters from receiving ballots. Moreover, if there are typographical or inadvertent administrative errors by USPS or elections officials, eligible voters will not timely receive mail ballots to which they are entitled under state law. And if USPS does not complete the review of ballot mail envelopes required by the Rule, that would also prevent voters from receiving absentee or mail-in ballots.

43. Even if the USPS Ballot Portal and enrollment system works as intended, the Rule still risks voter confusion and disenfranchisement. In my experience administering elections, changes to election procedures in the time immediately preceding an election can cause significant voter confusion. The Rule's complicated requirements will likely lead some eligible voters to misunderstand whether they are able to use a mail ballot. Some eligible voters will determine that the added requirements make voting too confusing to be worthwhile. The result of this confusion will be that fewer eligible voters decide to cast a ballot.

44. The Rule also requires the expenditure of considerable staff time to address voter concerns and proactively engage in public education about the Rule's changes. Voter and media inquiries to my office have dramatically increased over the past several months since the executive order was issued, including many about how it will impact mail voting. Responding to these inquiries has required substantial staff time and we have invested office resources in providing

voter education and responding media about this issue. For the last few months, my office has media questions nearly every day about something related to the Rule and voting by mail. Besides taking up staff time and resources and taking those resources away from other election preparation and voter education activities and issues, all of this confusion and concern has led to voter confusion and a lack of confidence in USPS. I anticipate more inquiries from voters as a result of the Rule. Fielding these questions requires staff time that would otherwise be spent preparing for the 2026 General Election.

45. In addition, the Rule will require a wide-ranging public education campaign to ensure that eligible voters understand the Rule's requirements, and how they may impact a citizen's ability to vote by mail. This is particularly the case for Arizona residents, who have signed up to AEVL and are used to automatically receiving mail ballots and being able to vote by mail under existing state law with no impediments.

46. I estimate that such a public education effort would likely require a significant financial investment, which only gets more expensive as the 2026 General Election draws closer because advertising time and space is purchased in all media types by candidate and issue campaigns. Unfortunately, my office does not have spare funds to explain this shifting legal landscape to voters. The legislature controls our budget, and it provided the funds it deemed necessary to run my office before the legislative session ended in June. There is no extra funding allocated or available for voter education, increased staffing demands, or costs associated with increased training, data management, printing, postage, or informational materials. Indeed, while costs have risen due to inflation, my office's operating budget has been slashed the last two years.

47. Finally, confusion stemming from the Rule and any issues with its implementation that compromise the timely delivery of mail ballots are likely to severely harm the reputation of

my office. In my experience, voters tend to blame state and local elections officials for administrative issues, even if fault may belong to a third party like USPS. This can reduce trust in our electoral system and cause reputational harms that are difficult to reverse.

**V. The Late Date of this Change Magnifies the Harm.**

48. The harms that stem from the Rule are particularly acute because the requirements take effect while my office is busy taking other steps to prepare for the 2026 General Election.

49. Arizona counties must begin mailing ballots for the 2026 General Election in the coming weeks. Consistent with federal law, counties must mail ballots to military and overseas voters by September 19, 2026, forty-five days before the general election. 52 U.S.C. §§ 20302(a)(1)-(3), (8)(A). In addition, state law requires that counties begin mailing ballots to AEVL participants and any voter who has made a one-time request to receive an early ballot by mail no later than October 7, 2026. A.R.S. §§ 16-542(C), -544(F). Counties will continue mailing ballots through October 23, 2026, consistent with state law. A.R.S. § 16-542(E).

50. Additionally, counties will need to continue to register those who are eligible to vote in Arizona. Arizona allows qualified individuals to register up to twenty-nine days before Election Day. A.R.S. § 16-120(A); 52 U.S.C. § 20507(a)(1) (requiring states to permit registration up to 30 days before a federal election). Arizona citizens can register to vote online, at their county recorder's office, at various state social service agencies, and through Arizona's Motor Vehicle Division when they submit sufficient information of their voter qualifications (including citizenship) through their transaction or by paper form available at various locations including local libraries and voter registration drives sponsored by various groups. During the weeks and months leading up to an election, we see a high volume of voters registering or updating their registration, resulting in flux in voter rolls and requiring time from election officials.

51. In compliance with the NVRA "quiet period" for voter registration, Arizona does not systematically remove voters from the rolls during the 90 days prior to a federal election unless a statutory exception applies. *See* 52 U.S.C. §§ 20507(c)(2)(A), 3(A)-(B), 4(A). Arizona does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests that his or her registration be canceled, has informed a jury commissioner that he or she no longer lives in the jurisdiction, has been convicted of a felony or has been adjudicated incapacitated. A.R.S. § 16-165(A)(1), (4), (9)(b).

52. In sum, staff in county recorder's offices must continue to process voter registration list changes up to and on Election Day. Registrants are constantly being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the 2026 General Election.

53. The steps necessary to comply with the Rule will divert time and attention from these other critical election preparations. For example, just depositing the election mail at the post office will become an exorbitantly time-consuming task. Before election mail is even brought to the post office, election staff "must segregate Outbound Federal Ballot Mail from other types of ballot mail, such as primary ballots, UOCAVA ballots, or ballots for state or local elections only." *See* 39 CFR Part 111, Supplementary Information at 56. And once at the post office, each piece of election mail will need to be individually scanned and processed by a postal service agent to "confirm the presence of scanned barcodes in the Federal Mail Ballot Portal." USPS estimates that such scanning alone could take a minute per piece of mail and that election staff will have to "remain at the postal retail location during the verification process." The amount of staff time spent processing election mail will increase exponentially. *See* 39 CFR Part 111, Supplementary Information at 57-58. If these preparations are delayed or not completed, that can have significant

impacts on the conduct of the election and opportunities for voters. This is particularly burdensome for Arizona's large counties. Maricopa County is one of the largest voting jurisdictions in the United States, with approximately 2,500,000 active registered voters. If it takes a minute per ballot to process Maricopa County's ballots, Maricopa County staff will need to stay at the postal facility for more than 41,000 hours—which amounts to nearly five years. Obviously, that would be impossible when state law requires ballots to be mailed to voters within five days after their request or within three days after the beginning of early voting if the voter is on the AEVL, A.R.S. § 16-542 (C), and during a sixteen-day window in the month before an election.

### VI. Elections Officials Are Harmed by the Federal Government's Threats of Prosecution.

54. I am also deeply concerned about harms to the morale of election officials in my office and statewide resulting from the implementation of the Rule. USPS waves away serious concerns about implementation and compliance with state law by stating, "States can easily avoid any effects on their state elections by either complying with the rule's requirements or by separating their federal ballots to exclude any non-federal elections." 39 C.F.R. Part 111, Supp. Info. at 78. This ignores both the serious concerns with the practical ability for USPS to carry out the requirements of the rule, and the fact that separating federal and non-federal elections, which are printed on the same ballot, is functionally impossible. USPS then asserts, despite the extensive evidence of compliance challenges provided in comments on the Proposed Rule, that implementation and compliance are completely feasible so long as states "make a good faith effort to comply with the rule." 39 C.F.R. Part 111, Supp. Info. at 70. As demonstrated above, this is not the case at all. My colleagues and I are acutely aware that the Rule's requirements to enable tracking of mail ballots sent to and returned by voters comes in the context of an Executive Order that directed federal agencies to prioritize the investigation and prosecution "of State and local

officials . . . who issue Federal ballots to individuals not eligible to vote in a Federal election." Ex. Order 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17125, EO § 2(b) (March 31, 2026). USPS made clear the primary purpose of the Portal Data and the Lists is "to provide valuable insight" to law enforcement, specifically though disclosing "a list of individuals to whom states planned to mail a ballot (and who may potentially use the mail to vote), along with the associated barcode data," which in turn can purportedly "identify potentially anomalous incidents that may merit further investigation." *See* 39 C.F.R. Part 111, Supp. Info. at 60, 61. In a letter to Secretary of State Fontes dated July 7, 2026, U.S. DOJ specifically threatened to prosecute election officials if noncitizens cast any ballots.

55. My colleagues and I are also acutely aware that President Trump has repeatedly claimed that there is widespread fraud allowing noncitizens to vote, even though in our experience as election officials noncitizen registration and voting are both extraordinarily rare. Indeed, Arizona has required its citizens to provide satisfactory evidence of citizenship when registering to vote for more than a quarter century. A.R.S. § 16-166(F).

56. I am worried that I and other election officials could be targeted for federal investigation and even prosecution as a result of the Rule's mail ballot tracking system if the federal government believes, even incorrectly, that any of Arizona registered voters are not citizens.

**VII. Conclusion**

57. In conclusion, I estimate that the requirements of the Rule will require a significant increase to the Secretary's budget (that is not available) to educate elections officials and the public, make changes to our statewide registration database, and hire additional staff to ensure compliance with the Rule. Given recent economic pressures across the state and country, I have

been trying to keep the Secretary of State's office's budgetary needs as low as possible. Indeed, our operating funds are limited and we have had to delay hiring needed staff for non-election-related positions due to budget constraints. The Rule will increase financial strain on my office and necessitate a higher budget. I will either need to go back to the Legislature and ask for additional funds, which I am far from assured to receive, or will need to identify equivalent cuts elsewhere in my office, a very difficult and maybe impossible task. Indeed, the Arizona Legislature is not scheduled to be back in session until January 2027, which makes it extraordinarily unlikely that we could obtain additional funding before the November 2026 General Election.

58. Any time spent by current staff on implementing the Rule would divert time and attention from other critical election preparation in the days leading up to the election, my office's busiest time. Our staff is already at capacity and dedicated to routine tasks and special projects that ensure Arizona's elections run smoothly and every eligible Arizona citizen can exercise their right to vote. This work becomes more voluminous, significant, and urgent in the months and weeks leading up to the election, when we must answer an increasing volume of questions and handle tasks related to, for example, campaign finance reporting, logic and accuracy testing, and voter challenges.

59. Each of these tasks and costs will divert scarce resources from other important election administration needs, is currently sowing chaos in Arizona, and threatens to disenfranchise voters across Arizona

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2026, at Phoenix, Arizona.

________________________________
Adrian Fontes
Arizona Secretary of State

# Exhibit A

July 2, 2026

*Submitted via E-Mail*
Director, Product Classification
United States Postal Service
475 L'Enfant Plaza SW, Room 4446
Washington, DC 20260-5015
PCFederalRegister@usps.gov

ADRIAN FONTES
SECRETARY OF STATE

Re: Proposed Rule 39 CFR Part 111, *Ballot Mail for Federal Elections*

Dear Director:

As Arizona's chief election official, I write to strongly oppose the United States Postal Service's ("USPS") proposed amendment, *Ballot Mail for Federal Elections* ("Proposed Rule").[1]

The Proposed Rule is a transparent attempt to force states to enact the executive branch's regulatory agenda and disclose private voter information to the federal government. It threatens to disenfranchise eligible voters and abridge their statutory right to vote by mail as punishment for state election officials' and their agents' noncompliance with its scheme; usurps states' rights to regulate their own elections; forces state election officials to violate Arizona law; is impossible to implement; puts at risk the timely transmission of election mail; and discriminates against protected voters who must choose between having their confidential information disclosed or forsaking their right to vote. Further, USPS lacks authority to promulgate the Proposed Rule, and its failure to follow the required rulemaking procedures deprives states of their procedural rights.

Because no amendment or revision can make the Proposed Rule comply with state and federal law, I oppose its promulgation and implementation without reservation.

## I. The Proposed Rule unconstitutionally usurps states' authority to regulate their own elections.

As an initial and fundamental matter, the Proposed Rule is unconstitutional because it usurps states' authority to regulate their own elections. The United States Constitution expressly reserves regulation of "the times, places, and manner of holding elections" to state legislatures and authorizes congressional oversight, but it does not allocate any authority to the executive branch.[2] And Congress has not passed any legislation in which it "unmistakably" altered the usual constitutional balance between the states and the federal government.[3] Consequently, the executive

---

[1] *See* 39 CFR Part 111; *see also Ballot Mail for Federal Elections,* Federal Register, https://www.federalregister.gov/documents/2026/06/02/2026-10968/ballot-mail-for-federal-elections (last visited July 2, 2026).

[2] *See* U.S. Const. Art. I, § 4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.").

[3] *See United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) ("[I]f Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute."); *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979) (refusing to impute binding effect to

branch—including USPS—lacks any authority to regulate within this area, and the Proposed Rule unconstitutionally infringes upon states' power to regulate their own elections.

## II. The Proposed Rule unconstitutionally forces state election officials to enact the executive branch's regulatory agenda and threatens to disenfranchise eligible voters if state officials do not comply.

The Proposed Rule also unconstitutionally: (1) forces state election officials and their agents to participate in a federal scheme to collect information about mail-in voters in a central database; and (2) threatens to disenfranchise eligible voters and deprive them of their statutory right to vote by mail if state election officials do not comply.[4]

### A. The Proposed Rule forces state election officials and their agents to participate in a federal scheme to collect information about mail-in voters in a central database.

The Proposed Rule violates separation of powers because it forces state election officials to participate in a regulatory scheme that serves purely federal aims, with no apparent benefit to states whatsoever.

The Proposed Rule requires state election officials and their agents (including private entities like mail carriers)[5] to:

1. Create unique barcodes for each voter who requests a mail-in ballot;[6]
2. Upload the name, address, and unique barcode of every voter who intends to vote by mail to a USPS database with unknown privacy protections;[7]
3. Design envelopes for Outbound and Return Federal Ballot Mail that conform to the Proposed Rule's new formatting requirements;[8]

---

regulations promulgated pursuant to executive order, explaining "the exercise of quasi-legislative authority by governmental departments and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes").

[4] *See Printz v. U.S.*, 521 U.S. 898, 925 (1997) (stating "the Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs"); *see also* Proposed Rule 24.4.2, 24.5.3 (imposing new obligations upon state election officials to, in part, "facilitate enforcement of federal law").

[5] The Proposed Rule defines both "Authorized Ballot Mailer" and "Ballot Portal User" to include not only "an election official of a state or political subdivision thereof" but also their agents, including "individual[s] or entit[ies], *such as a mail service provider*." *See* Proposed Rule 24.1(a) – (b) (emphasis added).

[6] *See* Proposed Rule 24.3.3.

[7] *See* Proposed Rule 24.4.1 -24.4.2; *see* also Proposed Rule Introduction (admitting the Proposed Rule does not contain a system of records notice ("SORN") explaining the nature of USPS's new database or how the database will protect the private voter information within it).

[8] *See id.*

4. Obtain USPS approval of the new envelopes before printing and mailing any Outbound or Return Federal Ballot Mail;[9]
5. Certify to USPS that all Outbound Ballot Mail and Return Ballot Mail complies with the new envelope formatting standards;[10] and
6. Address any errors if USPS determines that any Outbound and Return Federal Ballot Mail does not comply with the Proposed Rule's new envelope formatting standards, or that the intended recipient does not appear in USPS's database.[11]

These requirements are not only complex, burdensome, and resource-intensive, but they serve only federal aims. The Proposed Rule's introduction expressly says the Proposed Rule "will facilitate enforcement of federal law, reduce the risk of fraud, and help protect the integrity of federal elections."[12] It later similarly says the Proposed Rule "can provide information regarding the sending of ballots through the mails that would be available for use by law enforcement." Only federal law enforcement may investigate and prosecute election offenses provided in the United States Code,[13] therefore these provisions clearly serve only federal aims.

The Proposed Rule also provides no apparent benefit to the states. No funding is appropriated to the states to implement the Proposed Rule, and the only potential benefit—the final State-Specific Mail-In and Absentee Participation List—does not arrive in time to help states administer their mail-in or absentee voting programs. The Proposed Rule says USPS does not mail the Lists to the states until on or around Election Day—*after* the last day states may send voters their mail-in or absentee ballots.[14] It is therefore clear that the State-Specific Mail-In and Absentee Participation lists are not intended to help states mail the mail-in or absentee ballots; instead, the lists exist purely to further the federal aims discussed above.

Because the Proposed Rule's express purpose is enforcement of federal law, and because it imposes obligations without providing any benefits to the states, the Proposed Rule unconstitutionally commandeers state election officials to work in furtherance of federal aims and violates principles of federalism.

### B. The Proposed Rule threatens to disenfranchise eligible voters and deprive them of their statutory right to vote by mail if states do not comply.

The Proposed Rule not only forces state election officials to further the federal government's regulatory aims, it also: (1) threatens to disenfranchise and deprive eligible voters of their right to

---

[9] *See* Proposed Rule 24.3.1 – 24.3.2.

[10] *See* Proposed Rule 24.4.2.f.

[11] *See* Proposed Rule 24.5.1, 24.5.3.

[12] *See* Proposed Rule at "Background."

[13] *See Trump v. United States*, 603 U.S. 593, 620 (2024) ("The Executive Branch has exclusive authority and absolute discretion to decide which crimes to investigate and prosecute, including with respect to allegations of election crime.").

[14] *See* Proposed Rule 24.4.2., 24.4.3.

vote by mail[15] if states do not comply; and (2) fails to provide voters with notice or recourse if USPS rejects their mail-in or absentee ballot.

The Proposed Rule says that USPS will return Outbound Federal Ballot Mail to sender if: (1) the mailing does not meet the new envelope formatting standards; (2) the mailing is being sent to an individual who has not been enrolled with USPS for inclusion on the state's Mail-In and Absentee Participation List; or (3) the election official fails to make the required certification.[16] The Proposed Rule does not state how, or whether, voters will be notified if USPS rejects their mail-in ballot, or provide voters with recourse for any rejections. Consequently, eligible voters could be disenfranchised or deprived of their statutory right to vote by mail if an election official fails, or chooses not to, comply with the Proposed Rule; if USPS determines that Outbound Federal Ballot Mail fails to comply with the Proposed Rule's envelope formatting requirements; or if USPS determines that a voter was not on a state's Mail-In and Absentee Participation List.[17] This introduces multiple points of failure and forces states to comply with the Proposed Rule's scheme or risk disenfranchising the voters in their state who intend to vote by mail.

## III. The Proposed Rule forces election officials to violate Arizona law.

The Proposed Rule also forces elected officials to violate Arizona state statutes: (1) prohibiting disclosure of voter registration information; and (2) protecting eligible persons under threat because of their profession or other conditions and participants in Arizona's Address Confidentiality Program ("ACP"), including judges, peace officers, and victims of domestic violence.

### 1. The Proposed Rule forces election officials to violate statutes protecting Arizonans' voter registration information.

Arizona law directs that "[a]ll data relating to early voters, including ballot requests and ballot returns" be included in precinct lists, and it prohibits "[a]ny person in possession of a precinct register or list, in whole or in part, or any reproduction of a precinct register or list [from] permit[ting] the register or list to be used, bought, sold or otherwise transferred for any purpose" other than narrow purposes set forth in statute.[18] Additionally, any "person in possession of information derived from voter registration forms or precinct registers [cannot] distribute, post, or otherwise provide access to any portion of that information through the internet" except for narrow purposes set forth in statute.[19] This information may only be used for "purposes relating to a political or political party activity, a political campaign or an election, for revising election district

---

[15] *See* A.R.S. § 16-541(A) ("Any qualified elector may vote by early ballot.").

[16] *See* Proposed Rule 24.4.2, 24.5.1, 24.5.3.

[17] Indeed, by stating USPS will refuse to transmit Outbound Federal Ballot Mail if a state election official fails to comply with the Proposed Rule's requirements, the Proposed Rule gives election officials the unilateral authority to nullify state laws guaranteeing voters' right to vote by mail-in or absentee ballot.

[18] *See* A.R.S. § 16-168(C), (F).

[19] *See id.* at (F).

boundaries or for any other purpose specifically authorized by law and may not be used for a commercial purpose."[20] Violation of these statutes constitutes a felony under Arizona law.[21]

The federal government's and USPS's stated purposes for demanding information about mail-in voters does not fall within the permissible uses above. The Proposed Rule expressly says that its purpose is enabling enforcement of federal law, which is not "purposes relating to a political or political party activity, a political campaign or an election, for revising election district boundaries or for any other purpose specifically authorized by law." Consequently, the Proposed Rule requires election officials to illegally disclose voter information in violation of Arizona law and face criminal penalties, or to refuse to do so and disenfranchise and deprive eligible voters of their statutory right to vote by mail.

**2. The Proposed Rule forces election officials to violate state statutes protecting eligible persons—including elected officials, judges, police officers, and election workers, and victims of domestic violence.**

The Proposed Rule also forces election officials to violate state statutes protecting eligible persons and victims of domestic violence because it requires them to disclose confidential information that is sealed pursuant to court order.

In Arizona, eligible persons such as judges, police officers, and election workers can apply to have their address and phone number removed from the public voter roll and protected from disclosure.[22] Similarly, victims of domestic violence, sexual violence, or stalking may have their address and phone number protected as part of Arizona's ACP.[23] Knowing disclosure of protected voters' address or phone number is a felony,[24] and intentional or knowing disclosure of an ACP participant's protected information is the most serious level of misdemeanor under Arizona law.[25]

The Proposed Rule requires election officials to "enroll" each voter who intends to vote by mail by entering the voter's name, address, unique Intelligent Mail barcode ("IMb"), and originating election office state into USPS's new database.[26] It also requires Outbound Federal Ballot Mail and Return Ballot Mail envelopes to display the voter's unique IMb with the delivery point ZIP Code embedded and a Federal Ballot Mail Service Type Identifier ("STID").[27] If the

---

[20] *See id.* at (E).

[21] *See id.*

[22] *See* A.R.S. §§ 39-123 through -125.

[23] *See* A.R.S. §§ 41-161 through -169.

[24] *See* A.R.S. § 39-124(A).

[25] *See* A.R.S. § 41-165(F).

[26] *See* Proposed Rule 24.4.2.

[27] *See* Proposed Rule 24.3.

election official fails to do either of these things, USPS must refuse to send the ballot mail to the intended recipient.[28]

Because the Proposed Rule requires election officials to disclose protected voters' and ACP participants' information into USPS's database, and to include information regarding the voter's location on the Outbound Federal Ballot Mail and Return Ballot Mail envelopes, the Proposed Rule requires election officials to either violate A.R.S. §§ 39-124(A) and 41-165(F) and criminally disclose protected information, or disenfranchise the voter by depriving them of their statutory right to vote by mail-in or absentee ballot. This puts election officials in an impossible position and exposes them to unavoidable liability for either violating state law or abridging their constituents' rights.

## IV. The Proposed Rule discriminates against and disenfranchises protected voters, including judges, peace officers, and victims of domestic violence.

The Proposed Rule not only threatens to deprive eligible voters of their statutory right to vote by mail, it also discriminates against them in violation of 39 U.S.C. § 403[29] because, in contrast to other voters who vote by mail-in ballot, they must choose between having their confidential information disclosed, and therefore having their safety jeopardized, or being disenfranchised.

As noted above, the Proposed Rule forces election officials to either disclose these voters' protected information or deprive them of their right to vote by mail-in ballot. However, in addition to this, the Proposed Rule disenfranchises these voters by preventing them from voting in person because poll books do not include eligible persons or ACP participants, as required by law and for their safety.[30] Consequently, these voters can neither vote by mail-in ballot because doing so would require disclosure of their protected information and potentially their location to their abuser, nor vote a non-provisional ballot in person because they will not appear in poll books. The Proposed Rule therefore discriminates against these voters because it disenfranchises them by depriving them—and not other voters—of their statutory right to vote by mail-in ballot.

## V. The Proposed Rule puts timely transmission of election mail nationwide at risk.

The Proposed Rule also puts at risk timely transmission of election mail, contrary to USPS's duty to "maintain an efficient system of collection, sorting, and delivery of mail nationwide,"[31] by:

---

[28] *See* Proposed Rule 24.5.3.

[29] *See* 39 U.S.C. § 403(c) ("In providing services and in establishing classifications, rates, and fees under this title, the Postal Service shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preferences to any such user.").

[30] *See* A.R.S. § 16-153(A) (stating "[e]ligible persons, and any other registered voter who resides at the same residence address as the eligible person, may request that the general public be prohibited from accessing the eligible person's identifying information, including any of the following . . . That person's documents and voting precinct number contained in that person's voter registration record."

[31] *See* 39 U.S.C. § 403(b)(1).

(1) increasing the scope of the services USPS is required to provide without increasing the resources available to it; and (2) introducing points of potential failure.

The Proposed Rule vastly increases the scope of the services USPS is required to provide without increasing the resources available to it. It not only requires USPS to establish a new database—the "Postal Service Federal Ballot Mail Portal"—and create state-specific Mail-In and Absentee Participant Lists to all forty-eight jurisdictions that use mail-in or -absentee voting,[32] but also to "review all mailings identified as Outbound Federal Ballot Mail prior to acceptance to evaluate whether the mailing meets the [Proposed Rule's new envelope formatting standards] and is being sent to individuals who have been enrolled with the [USPS] for inclusion on the state's Mail-In and Absentee Participation List."[33] This would require not just processing, but analyzing, vast quantities ballot mail.[34] It will also require a database that constantly refreshes to ensure USPS does not reject Outbound Federal Ballot Mail because its system has not updated quickly enough. However, despite this increase in USPS's responsibilities, and the ongoing financial strain upon USPS,[35] the Proposed Rule mentions no additional funding or other resources to allow USPS to meet these new responsibilities or design the database. USPS already warns that ballot mail may take 7 – 10 days to reach its intended recipient in many rural areas of Arizona, including the Navajo and Tohono O'odham Nations, and the Proposed Rule's new requirements would further exacerbate this delay.

Further, if implemented, the Proposed Rule will put the timely delivery of election mail at risk because it introduces points of potential failure into the process for transmitting election mail. If USPS determines an Outbound Federal Ballot Mail mailing does not comply with the new envelope formatting rules in 24.5.1 or 24.5.2, or that the Authorized Ballot Mailer for that state has not submitted the newly required certification pursuant to 24.4.2.f, USPS *must* return the mailing to the sender.[36] Then, the authorized ballot mailer or Ballot Portal User must address the error before resubmitting the mailing, and may request further review by USPS if the mailing is

---

[32] *See How Many States Will Have Options to Vote Before Election Day in the 2026 General Election?*, The Center for Election Innovation and Research, https://electioninnovation.org/research/expansion-voting-before-election-day-2000-2026/ (stating forty-seven states and Washington DC allow voters to vote my mail-in or absentee ballot) (last visited July 2, 2026).

[33] *See* Proposed Rule 24.4.1, 24.4.3, 24.5.1.

[34] *See 2024 Post-Election Analysis Report*, United States Postal Service, https://about.usps.com/newsroom/national-releases/2024/1202-usps-releases-2024-post-election-analysis-report.htm (stating USPS processed 99.22 million ballots in the 2024 General Election) (last visited July 2, 2026).

[35] *See, e.g., USPS Cutting Delivery Days 'On the Table,' as Agency Runs Out of Cash, Postmaster General Tells Lawmakers*, Federal News Network, https://federalnewsnetwork.com/agency-oversight/2026/05/usps-restricts-nonessential-spending-to-delay-running-out-of-cash/ (summarizing March 2026 testimony of Postmaster General David Steiner to members of the House Oversight and Government Reform Committee that USPS will run out of cash in early 2027) (last visited July 2, 2026); *see US Postal Service halts non-essential spending as cash crisis deepens,* Reuters, https://www.reuters.com/world/us/us-postal-service-suspends-non-essential-spending-amid-cash-crunch-2026-05-28/ (noting USPS has reported net losses of approximately $120 billion since 2007, and has recently frozen discretionary purchases "to protect core operations and ensure [it] can continue meeting all essential obligations") (last visited July 2, 2026).

[36] *See* Proposed Rule 24.5.3.

not accepted. The Proposed Rule itself recognizes that this new process may cause service delays.[37] Consequently, some voters may be disenfranchised or deprived of their right to vote by mail due to USPS incorrectly rejecting mail, delays in processing time, or the inability to correct alleged envelope deficiencies in the final days before an election.

## VI. The Proposed Rule is unworkable in practice.

### A. The Proposed Rule imposes immense costs upon election officials and will overwhelm Arizona's election infrastructure.

The Proposed Rule is impossible to implement because it imposes immense costs upon election officials that their current resources and capacities cannot absorb.

The Proposed Rule not only requires election officials to provide barcodes, design new envelopes, and obtain USPS approval of those envelopes within just a few months, but it will also require them to redesign their tools, such as Arizona's Arizona Voter Information Database ("AVID"), and absorb higher numbers of in-person voters who have been deprived of their right to vote by mail-in ballot. These new requirements arrive at a time when strained state budgets, disrupted supply chains, dwindling workforces, and shortages of raw materials, finished products (i.e. paper, envelopes, etc.), and transportation have affected every aspect of the election process.[38] They are also impossible to implement.

For example, Arizona statute requires election officers to prepare proofs of sample ballots forty-five days before the November 2026 general election.[39] For this year's general election, the deadline falls on September 19, 2026—fewer than three months from now.[40]According to the Proposed Rule, election officials must provide barcodes, design new envelopes, *and* obtain USPS approval of these envelopes before then, but it provides no funding or resources to help assist states in these obligations. Additionally, if USPS determines Outgoing Ballot Mail does not comply with the Proposed Rule's requirements, election officials will have to remedy whatever issues USPS identifies weeks, or mere days, before an election. Finally, election officials must continuously supplement enrollment of mail-in votes for each Outbound Federal Ballot Mailing, "regardless of

---

[37] *See* Proposed Rule 24.5.3.d (disclaiming responsibility for service delays when USPS determines a mailing is noncompliant).

[38] *See Election Official Alert: Paper Supply Chain Risk Management*, U.S. Election Assistance Commission, https://www.eac.gov/election-officials/clearinghouse-resources-planning-logistics (last visited July 2, 2026); *Election Officials Grapple with Brain Drain as Threats Rise*, Politico, https://www.politico.com/news/2026/02/03/election-officials-threat-midterms-00761210 (last accessed June 15, 2026) (noting "[i]n the years since the 2020 election, roughly 50 percent of top local election officials across 11 western states have left their jobs since November 2020") (last visited July 2, 2026).

[39] *See* A.R.S. § 16-461(A).

[40] *See 2025-2026 Master Election Calendar*, Arizona Secretary of State, https://azsos.gov/elections/calendar-dates (last accessed July 2, 2026).

the number of mailpieces in the mailing."[41] Given resource, capacity, and time constraints, this is not possible under current conditions.

Further, the Proposed Rule is impossible to implement because it will force election officials and election workers to absorb more in-person voters than currently contemplated. Because the Proposed Rule risks the timely transmission of election mail by overwhelming USPS and giving USPS discretion to return Outgoing Ballot Mail to its sender, *see above,* many voters who would otherwise vote by mail may be forced to vote in person. Arizona law has permitted no-excuse voting by mail since 1991. In the intervening thirty-five years, the percentage of Arizona voters voting by mail has steadily increased, and the resources Arizona counties have dedicated to in-person voting have correspondingly decreased. Indeed, nearly eighty-five percent of Arizona voters voted by mail in 2024 and we anticipate a similar percentage will vote by mail in this November's general election. If many of these voters are forced to vote in person, the number of voters at polling places will exceed Arizona's election infrastructure's current capacities. Arizona simply does not have the resources to adjust to an influx of previously unexpected in-person voters.

Additionally, as discussed above, the Proposed Rule imposes unavoidable legal liability upon election officials and their agents, including private actors like mail providers and ballots printers. It puts election officials and their agents in the impossible position of complying with the Proposed Rule's scheme and breaking Arizona law, or refusing to comply and disenfranchising voters. This impossible choice will not only expose the current generation of election officials, vendors, workers, and volunteers to liability, it will also discourage future generations from working in elections. The future of our elections depends on a strong workforce and supply chain, and the Proposed Rule threatens that future.

### B. The Proposed Rule's timelines are unworkable.

The Proposed Rule is also impossible to implement because its timelines are unworkable and conflict with Arizona law.

First, as noted above, it is impossible to design, gain USPS approval, and print new ballot envelopes in time to meet the statutory deadlines for mailing mail-in ballots to voters.[42] Second, it is impossible to correct any alleged defects identified by USPS without disenfranchising some voters in violation of A.R.S. § 16-542(E), which allows any Arizona voter to request a ballot, or a replacement ballot, by mail up to eleven days before the election. If a voter timely requests a mail-in ballot or replacement ballot eleven days before the election and Arizona election officials timely mail one within five days,[43] USPS may still identify alleged noncompliance and return the Outgoing Ballot Mail to sender. At that point, with only days before the election, it will be impossible to remedy the error and submit a compliant envelope to the voter on time. Thus, the

---

[41] *See* Proposed Rule 24.4.2.d.

[42] *See* A.R.S. §§ 16-461(A) (requiring election officials to prepare a proof of sample ballots forty-five days before an election), -542(C) (requiring election officers to mail early ballots to voters twenty-seven days before an election).

[43] *See* A.R.S. § 16-542(C) (requiring election officials to send a mail-in ballot within five days of receiving a request from a voter).

voter who requested the ballot will be deprived of their statutory right to vote by mail or receive a replacement ballot.

### C. USPS cannot comply with the Proposed Rule's new requirements.

As discussed above, USPS will not be able to comply with the Proposed Rule because the Proposed Rule vastly increases the scope of the services USPS is required to provide without providing USPS with any new funding or resources. Additionally, USPS will not be able to comply with its obligation to evaluate mailings identified as Outbound Federal Ballot Mail because it will not be able to identify non-compliant mailings. If Outbound Federal Ballot Mail lacks a unique barcode, USPS's automated system will not be able to identify the mailing and therefore USPS will not be able to evaluate its compliance consistent with the Proposed Rule.

## VII. USPS lacks authority to promulgate the Proposed Rule.

### A. USPS failed to submit a proposal to the Postal Regulatory Commission, depriving states and the public of their procedural rights.

The Proposed Rule is depriving states and the public of their procedural rights because USPS is promulgating it without submitting a proposal to the Postal Regulatory Commission ("PRC"). Although the Proposed Rule incorrectly claims USPS is exempt from Administrative Procedure Act ("APA") rulemaking, USPS must submit a proposal to the PRC and follow an APA process because the Proposed Rule "change[s] . . . the nature of postal services" and "will generally affect service on a nationwide or substantially nationwide basis."[44]

When USPS makes "change[s] in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," it must first "submit a proposal, within a reasonable time prior to the effective date of such proposal, to the [PRC] requesting an advisory opinion on the change."[45] Users of the mail then have an opportunity to participate in a public hearing subject to APA requirements before the PRC issues an advisory opinion.[46] When USPS fails to follow this procedure, it acts outside of its authority and deprives users of the mail of their procedural rights.[47]

The Proposed Rule "change[s] . . . the nature of postal services" and "will generally affect service on a nationwide or substantially nationwide basis" because as noted above, it significantly increases USPS's responsibilities with respect to Outbound Federal Ballot Mail and Return Ballot Mail—including reviewing ballot mail from all forty-eight jurisdictions that allow mail-in voting—and threatens the timely transmission of election mail. This vast increase in responsibilities, new database, and heightened risk of delays will meaningfully change the manner

---

[44] *See* 39 U.S.C. § 3661(b).

[45] *See* 39 U.S.C. § 3661(b); *New York v. Trump*, 490 F. Supp. 3d 225, 243 (D.C. Cir. 2020) ("Congress clearly intended Section 3661 to require an opportunity for public participation and for independent review before the USPS implements service changes that will have a broad effect.").

[46] *See* 39 U.S.C. § 3661(c).

[47] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 572 (1992); *New York*, 490 F. Supp. 3d at 238.

in which postal services available to the user, and a broad geographical area is involved, therefore USPS must submit a proposal to the PRC and follow an APA process—including comment and a hearing under the APA rules.[48] Failure to do so, as USPS is attempting to do here, deprives the states and the public of their procedural rights.

### B. The Proposed Rule falls outside of USPS's statutory authority.

The Proposed Rule falls outside of USPS's statutory authority because its stated purpose is enforcement of federal election law, not execution of USPS's legal duties.

The Proposed Rule claims USPS is acting pursuant to its rulemaking authority under 39 U.S.C. §§ 401 and 406. However, the Proposed Rule—which expressly states that its purpose is enabling federal law enforcement to investigate election-related offenses—does not fall within this statutory authority. Section 401 allows USPS to regulate "as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." However, the Proposed Rule is not necessary in the execution of USPS's functions under Title 39 or any functions assigned to it by law.

First, the Proposed Rule is not necessary in the execution of USPS's functions under Title 39. Title 39 explains that USPS's duties are "maintain[ing] an efficient system of collection, sorting, and delivery of the mail nationwide," "provid[ing] types of mail service to meet the needs of different categories of mail and mail users," and "establish[ing] and maintain[ing] postal facilities of such character and in such locations, that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services."[49] The Proposed Rule does not identify any existing issues with transmission of ballot mail that it seeks to remedy. Further, as discussed above, the express purpose of the Proposed Rule is enabling enforcement of federal election law, and the Proposed Rule does not benefit the states at all. Because the Proposed Rule's only apparent purpose is furthering federal investigations of election-related offenses, and because no "clear congressional authorization" for USPS's claimed regulatory power exists,[50] the Proposed Rule is not "necessary in the execution" of USPS's functions under Title 39.

Second, the Proposed Rule is not necessary in the execution of "any functions assigned to [USPS] by law" because no statutes outside of Title 39 assign "facilitat[ion of] enforcement of federal law, reduc[tion of] the risk of fraud, [or] help protect[ing] the integrity of federal elections" to USPS. Additionally, although the Proposed Rule purports to be implementing the President's

---

[48] 39 U.S.C. § 3661(c); *New York*, 490 F. Supp. 3d at 232.

[49] *See* 39 U.S.C. § 403.

[50] *See W. Virginia v. Env. Protection Agency*, 597 U.S. 697, 723 (2022) ("[B]oth separation of powers principles and a practical understanding of legislative intent make us reluctant to read into ambiguous statutory text the delegation claimed to be lurking there. To convince us otherwise, something more than a merely plausible textual basis for the agency action is necessary. The agency instead must point to clear congressional authorization for the power it claims.")

Executive Order, the Executive Order does not have the force of law because no nexus between the Executive Order and a congressional delegation of authority exists.[51]

Consequently, the Proposed Rule is not "necessary in the execution of [USPS's] functions under [Title 39] and such other functions as may be assigned to [USPS] under any provisions of law outside of [Title 39]" and falls outside of USPS's regulatory authority.

**Conclusion**

The Proposed Rule is a transparent attempt to force states to enact the executive branch's regulatory agenda and force disclosure of private voter information to the federal government. It is an unconstitutional usurpation of states' authority to regulate elections that threatens to disenfranchise and deprive eligible voters of their statutory rights; puts the timely transmission of election mail at risk and discriminates against certain voters contrary to USPS's express statutory duties; will inevitably disenfranchise eligible Arizona voters; and exposes election officials to heightened burdens and legal liability despite providing them no assistance. Arizona is a "no excuse" state,[52] and Arizonans overwhelmingly choose to vote by mail and have done so safely and securely for thirty-five years. The Proposed Rule will severely burden their exercise of the franchise. Accordingly, because the Proposed Rule is unconstitutional, invalid, impossible to implement, and a threat to Arizona voters, I strongly oppose it without reservation.

Sincerely,

Adrian Fontes
Arizona Secretary of State

Enclosures
Cc:

---

[51] *See Chrysler Corp. v. Brown*, 441 U.S. 281, 304 (1979) (stating "for the regulation to have the force and effect of law, it is necessary to establish a nexus between the regulations and some delegation of the requisite legislative authority by Congress") (internal quotation marks omitted).

[52] "No excuse" mail-in or absentee voting "means that any voter can request and cast an absentee/mail-in ballot, no excuse or reason necessary." *See No-Excuse Absentee Voting*, Nat'l Conf. of State Legislators, https://www.ncsl.org/elections-and-campaigns/table-1-states-with-no-excuse-absentee-voting (last visited July 2, 2026).