**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br>*Plaintiffs,*<br>v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>*Defendants.* | Case No. _______________ |

**DECLARATION OF ALICE P. MILLER**

I, Alice P. Miller, declare as follows:

1. I am over the age of eighteen. I am familiar with the information in the statements set forth below through personal knowledge, consultation with staff of the District of Columbia Board of Elections ("DCBOE," or the "Board"), and from my review of relevant documents and information. If called as a witness, I could testify competently to the matters set forth below.

2. I serve as the Senior Policy Advisor for the Board. In this capacity, I support the Board's Executive Director in her capacity as the Chief Election Official in the District of Columbia. I have served as DCBOE's Senior Policy Advisor for approximately five years. I previously served as the Board's Executive Director for approximately thirty years (not including a break in continuous service during which I served as the Chief Operations Officer of the Election Assistance Commission), and as the Board's General Counsel.

3. DCBOE is responsible for administering federal and local elections in the District of Columbia. The Board's mission is to enfranchise eligible residents, conduct elections, and assure the integrity of the electoral process in the District of Columbia. District of Columbia law

charges the Board with "[t]ak[ing] whatever action is necessary and appropriate to actively locate, identify, and register qualified voters." *Id.* § 1-1001.05(a)(2).

4. DCBOE executes its mandate by operating the District of Columbia's uniform voter-registration system, administering the ballot access process for candidates and measures, delivering voter information services, maintaining technical systems to support voting and ballot tabulation, and planning, administering, and certifying elections in the District of Columbia. *See generally* D.C. Code § 1-1001.05(a).

5. DCBOE's Executive Director serves as the District of Columbia's Chief Election Official and is responsible for administering the Board's operations, including maintaining voter records, managing data processing systems, and preparing for and conducting elections. *See* D.C. Code § 1-1001.05(a), (e)(1)(A); D.C. Mun. Reg. § 3-100.5.

6. In my role as Senior Policy Advisor, I am responsible for assisting the Executive Director in her mission by generally overseeing the election operations and policy implementation across the agency and working with senior management to ensure that all programs comply with District and federal law

7. My office is currently preparing to administer the November 2026 general election. This involves preparing and proofing ballots; registering voters; updating voter lists; identifying and securing polling places, early voting sites, and ballot drop boxes; training poll workers and other elections staff; testing voting equipment; providing the public with information on where, when, and how to vote; and making preparations for mailing mail-in ballots to eligible voters, as required by District law, *see, e.g.*, D.C. Code § 1-1001.05(a)(9B)(iii), (a)(10). General elections and the months that precede them are the busiest time for my office and are a time when our staff are fully deployed at capacity.

8. Consistent with its mission to enfranchise District residents, DCBOE's practice is to mail all registered District of Columbia voters absentee ballots through the U.S. Postal Service ("USPS"). In the District of Columbia, DCBOE begins mailing ballots to eligible voters 34 days before the election. For the November 2026 election, ballot mailing will begin on September 30, 2026. DCBOE anticipates mailing ballots to approximately 448,823 registered voters.

9. I am familiar with the Notice of Proposed Rulemaking issued by the USPS that was published in the Federal Register on June 2, 2026.

10. I am also familiar with USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule"), which was made available for public preview at https://public-inspection.federalregister.gov/2026-17238.pdf prior to its scheduled publication in the Federal Register on August 26, 2026. That Rule will imminently cause significant confusion and disruption in the administration of the District of Columbia's elections and will impose unrecoverable costs on DCBOE.

11. For the reasons discussed throughout this declaration, DCBOE must act now to align the District of Columbia's administration of mail voting with the requirements of the Rule. Given the very short time available and the untested technology that the Rule relies on, I have significant concerns that the Rule will prevent eligible voters from voting, including in the November 2026 general election. DCBOE must work to ensure that all eligible voters have an opportunity to vote, and the Rule imposes significant new costs on DCBOE's ability to do so.

12. It is my understanding that the Rule requires that every voter who will receive an absentee or mail-in ballot must be enrolled with USPS. Election officials will be required to enroll voters by providing voters' name, address, and Intelligent Mail barcodes to USPS, and they should do so at least thirty days before the date of the federal election or by the date by

which ballots may begin to be mailed to voters under relevant state law, although supplemental submissions can be made until the last day that ballots may be mailed out to voters under state law.

13. In accordance with the guidance, in the District of Columbia, DCBOE should provide that information by September 30, 2026, and we would thereafter have to update the information on a near-daily basis to include eligible voters who registered after that date or requested a mail ballot after that date.

14. The Rule requires "[a] separate submission . . . in connection with each Outbound Federal Ballot mailing." The Rule provides that USPS "will provide a state-specific Mail-In and Absentee Participant List" ("USPS Mail Ballot List") to States' chief election officials "[o]n or about the date of the federal election." I further understand that if a voter is not enrolled with USPS, USPS will not accept the ballot mailing package for that voter.

15. These requirements impose significant operational, financial, and opportunity costs on my office. And based on my more than three decades of experience in the field of election administration, I have serious concerns that it will not be feasible or practicable for USPS to implement this system in a timely and accurate fashion in the limited time remaining before the November 2026 general election.

16. The stakes are serious. Technological or implementation failure may lead to the inability of DCBOE to deliver mail ballots to voters and conduct the election in accordance with District of Columbia and federal law. This would ultimately lead to the disenfranchisement of District voters, which is unacceptable for DCBOE given its statutory mandate and its critical role in ensuring that individuals can exercise their constitutional right to vote.

17. In my experience, implementing new election technology is highly complicated and takes time to get right. But even if USPS's untested Ballot Portal works as intended and does not experience technical problems, enrolling approximately 448,823 voters with USPS will be a significant undertaking for DCBOE.

18. This task will be significantly complicated by the influx of registration updates and changes that DCBOE typically receives in the months, weeks, and days before any election, as well as election officials' unfamiliarity with USPS's new system: Elections officials will have to bear the added burden of processing registration updates in an entirely new system operated by USPS—about which election officials currently have no concrete operational information.

19. Based on what information is available, I expect that it will take a considerable amount of time for elections staff to become authorized users of the USPS Ballot Portal and enroll all voters, assuming there are no delays caused by technical or processing difficulties. But technical and processing delays are common, especially with implementing a new, untested technology and process. Given the scale of the effort, any unexpected technological and processing difficulties could substantially increase the practical and financial burden on DCBOE. And if the system fails, DCBOE may be unable to mail ballots to voters at all.

20. In the District of Columbia, USPS is the only way in which most voters receive a ballot. Access to mail-in voting is especially important for low-income and vulnerable populations, including voters with disabilities, who may lack access to transportation to either vote in person or receive and return their ballot through some other means.

21. I am concerned that USPS may not have prepared adequate contingency plans if the Ballot Portal does not work as intended or if other errors impede the process. For example, USPS has not provided any information about how it will help election administrators facing

technical difficulties in uploading information to the Ballot Portal. Nor has it provided any information about how errors by USPS will be corrected. USPS states only that it will inform Authorized Ballot Mailers of "escalation procedures" if they decide to challenge USPS's rejection of ballot mail. *See* 39 CFR Part 111, Supplementary Information at 58.[1] USPS also says it will not develop any new appeal process for election mail, but USPS's standard processes will not suffice in the election context, where time is of the essence, and where any errors must be resolved quickly to prevent voters from losing the fundamental right to vote.

22. The risks of error are heightened because USPS has not committed to providing training to election administrators regarding the Ballot Portal or any other aspect of the process changes. While the Rule contemplates that State election offices will soon begin registering tens of millions of voters into the Ballot Portal, USPS has provided virtually no information on what the Ballot Portal will look like, how it will operate, how users become authorized to use it, or how long it will take to upload voter information into the Ballot Portal. USPS has "decline[d] to conduct, publish, or otherwise disclose any additional analysis or information concerning the rule or Portal." 39 CFR Part 111, Supplementary Information at 81. Nor does USPS indicate when the Ballot Portal will become accessible for authorized users so that they can begin learning the system before they are required to start adding registered voters into the Ballot Portal under the pressure of election deadlines.

23. The Rule imposes dramatic changes with sweeping impacts. For instance, USPS has never required the Chief Election Officer of each State to authorize individual election workers to register each voter into a Ballot Portal before the voter can be mailed a ballot.

[1] Page citations to the Rule use the numbering from the preview document. *See* https://public-inspection.federalregister.gov/2026-17238.pdf.

24. I am concerned that it is too late in the election cycle to introduce such dramatic changes. USPS itself encourages the Chief Election Official in each State to provide USPS with ninety days advance notice if the State plans to send federal election ballots, claiming such notice is "logistically beneficial" so that USPS can "conduct outreach on mail preparation, provide resources related to IMbs, and offer guidance on how [to] access and use the Federal Mail Ballot Portal." 39 CFR Part 111, Supplementary Information at 45. But that 90-day window has already passed, and there is virtually no time for either USPS or election officials to prepare for such a dramatic change in election mailing.

25. Even with the best efforts of my office and local elections officials, the challenges of completing a complex data-matching program in a short timeframe and while preparing to administer an election poses a high risk of errors and omissions. These risks are compounded by USPS's lack of prior experience in the type of election administration duties it will assume under the Rule, and uncertainty over whether USPS will devote sufficient resources to process the massive amount of data it will receive from all fifty States and the District of Columbia in a condensed timeframe. The stakes are incredibly high, with any systemic errors, technological difficulties, or improper staffing threatening to disenfranchise voters at a massive scale.

26. As a result of the Rule, and to mitigate the impact of the uncertainty the Rule creates, DCBOE will have to devote significant time, personnel, and money to update training materials for elections officials. Elections staff would need to be trained on the USPS processes and technology. Training materials would have to specifically detail what steps they must take to access the USPS Ballot Portal, enroll voters in the Portal, and process election mail.

27. I am particularly concerned about the Rule's statement that ballot mailings that do not comply with the Rule "will not be accepted and will be returned." This means that USPS will

refuse to deliver ballots to citizens who are properly registered to vote and entitled to vote by absentee or mail-in ballot under District of Columbia and federal law.

28. Sending mail ballots in a timely fashion is not only required by District and federal law, but is also critical to ensuring that as many eligible District voters as possible can exercise their right to vote. In the 2024 general election, 51.5% of District of Columbia voters voted by mail.

29. The Rule creates a very substantial risk that at least some ballot mailings will be delayed or not be transmitted at all. For example, the USPS Ballot Portal does not currently exist and has not faced the test of elections officials across the country attempting to concurrently enter tens of millions of voters' names and other information in a short window of time. If the Ballot Portal fails, the Rule would prevent any voters from receiving ballots. Moreover, if there are typographical or inadvertent administrative errors by USPS or elections officials, eligible voters will not timely receive mail ballots to which they are entitled under District law.

30. Even if the USPS Ballot Portal and enrollment system works as intended, the Rule still risks voter confusion and disenfranchisement. In my experience administering elections, changes to election procedures in the time immediately preceding an election can cause significant voter confusion. The Rule's complicated requirements will likely lead some eligible voters to misunderstand whether they are able to use a mail ballot. Some eligible voters will determine that the added requirements make voting too confusing to be worthwhile. The result of this confusion will be that fewer eligible voters decide to cast a ballot.

31. The Rule also requires the expenditure of considerable staff time to address voter concerns and proactively engage in public education about the Rule's changes. I anticipate

inquiries from voters as a result of the Rule. Fielding these questions requires staff time that would otherwise be spent preparing for the 2026 general election.

32. In addition, the Rule will require a comprehensive public education campaign to ensure that eligible voters understand the Rule's requirements, and how they may impact a citizen's ability to vote by mail. This would be particularly important in the District of Columbia, where voters are accustomed to automatically receiving mail ballots.

33. The harms that stem from the Rule are particularly acute because the requirements take effect while my office is busy taking other steps to prepare for the 2026 general election.

34. In compliance with the NVRA "quiet period" for voter registration, DCBOE does not systematically remove voters from the rolls during the ninety days prior to a federal election unless a statutory exception applies. *See* 52 U.S.C. §§ 20507(c)(2)(A), 3(A)–(B), 4(A). DCBOE does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests that his or her registration be canceled.

35. In sum, staff in our office must continue to process voter registration list changes up to and on Election Day. Registrants are constantly being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the 2026 election.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2026, at Washington, DC.

Alice P. Miller
Senior Policy Advisor
District of Columbia Board of Elections