**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br>*Plaintiffs,*<br>v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>*Defendants.* | Case No. ______________ |

**DECLARATION OF SCOTT T. NAGO**

I, Scott T. Nago, declare as follows:

1. I am a resident of the State of Hawaiʻi. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with the Hawaiʻi Office of Election staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

**Personal/Agency Background**

2. I am the Chief Election Officer for the State of Hawaiʻi. The Chief Election Officer is the administrator of the Hawaiʻi Office of Elections and supervises elections in Hawaiʻi. *See* Haw. Rev. Stat. §§ 11-1.5(a), 11-2(a). The Chief Election Officer is responsible for the maximization of registration of eligible voters in Hawaiʻi, and for public education with respect to voter registration and information. *See* Haw. Rev. Stat. § 11-2(b), (d).

3. I have served as the Chief Election Officer since January 1, 2010.

4. Hawai'i and its subdivisions are responsible for administering federal elections in Hawai'i. This responsibility encompasses voter registration, maintaining and updating voter rolls, issuing ballots to registered voters, tabulating votes, and certifying results in all elections for federal office, among numerous other tasks. The Hawai'i Office of Elections is responsible for printing and counting ballots, tabulating votes, and certifying election results. The main election officials are the Chief Election Officer, who is a state official that operates the Office of Elections, and the four county clerks.

5. Hawai'i is an elections by mail state that is composed of four counties for election purposes. In essence, all active registered voters who do not have a questionable address are mailed a ballot. Additionally, there are a limited number of voter service centers for those who choose to vote in person. The number of voters who vote in person is less than 5 percent of turnout.

6. The division of duties and responsibilities between the state and counties is set by statute. Specifically, "[t]he counties shall be responsible for voter registration, absentee voting, voter service centers, places of deposit, and the mailing and receipt of ballots[,] and "[t]he State shall be responsible for the printing and counting of ballots." Haw. Rev. Stat. § 11-110(b)(1).

7. While the mailing of the ballots is the responsibility of the county clerks, it should be noted that Haw. Rev. Stat. § 11-119 provides that we are required to attempt to consolidate the ballot printing and mailing contracts, which occurred for purposes of the 2026 election cycles. Additionally, the Help America Vote Act requires that my office operates the statewide voter registration system that the county clerks use to register voters and to track voting. 52 U.S.C. § 21083. Further, under the National Voter Registration Act, I am the "chief State election official responsible for coordination of State responsibilities under [the] Act." 52 U.S.C.

§ 20509. The result of all of this is that my office is the main point person for ensuring the ballot packages are prepared and mailed out to voters (i.e. we work with the ballot printing vendor to print the ballots, we work with the statewide voter registration system to generate the universe of active registered voters that are to receive ballots, and we work with the mailing house vendor to ensure the ballot packages containing the ballots are mailed to those active registered voters). With that in mind, my office can speak directly to the impact of the new United States Postal Service rules.

8. Please note that a small number of ballot packages are mailed directly by the county clerks without the use of the mailing house, but those are usually in close proximity to election day. Additionally, the county clerks have the ability to email ballots to voters in special circumstances, such as military and overseas voters and voters with disabilities, that request for their ballots to be transmitted in that manner.

9. Mail ballot envelopes are designed by the Office of Elections and must conform with state law, including a requirement that the exterior envelope include instructions on how to obtain language translation services in Hawaiian, and, at a minimum, the five most utilized foreign languages by limited English proficient persons in the State. *See* Haw. Rev. Stat. § 11-102 (c). Mail ballots are not required by Hawai'i law to include Intelligent Mail barcodes, but we do use them.

10. As it relates to the 2026 general election, we plan to begin mailing ballots to eligible voters so as to enable voters to receive the ballot approximately eighteen days before the election, or by October 16. Federal, state, and local races will be on the ballot.

11. Our office, on behalf of the county clerks, or the county clerks themselves shall continue mailing ballot packages to voters who register to vote no later than 10 days before the

date of the election and to voters who update their voter registration address no later than 7 days before the date of the election and who have not yet voted. The county clerk may continue mailing ballot packages beyond those deadlines if the clerk determines that there is reasonable time for a voter to receive and submit the ballot package before the election. *See* Haw. Rev. Stat. § 11-102.

12. I am familiar with the Notice of Proposed Rulemaking issued by the United States Postal Service (USPS) that was published in the Federal Register on June 2, 2026.

13. I am also familiar with USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule"), which was made available for public preview at https://public-inspection.federalregister.gov/2026-17238.pdf prior to its scheduled publication in the Federal Register on August 26, 2026. That Rule will imminently cause significant harm, confusion, and disruption in Hawai'i election administration.

14. For the reasons discussed throughout this declaration, I must act now to align Hawai'i's administration of mail voting with the requirements of the Rule. Given the very short time available and the untested technology that the Rule relies on, I have profound concerns that the Rule will prevent eligible voters from voting, including in the November 2026 general election. My office will strive to ensure that voters have an opportunity to vote, and the Rule imposes significant burdens on doing so.

**The Impacts and Harms Caused by the Requirement to Provide and Update Voter Lists**

15. It is my understanding that the Rule requires that every voter who will receive an absentee or mail-in ballot must be enrolled with USPS. To enroll voters, elections officials or other authorized personnel must access the USPS Ballot Portal to enter each voter's name, address, unique Intelligent Mail barcode from the outbound ballot envelope, unique Intelligent

Mail barcode from the return ballot envelope, and the originating election office state. The information would have to be provided at least 30 days before the date of the federal election or by the date by which ballots may begin to be mailed to voters under state law, although supplemental submissions can be made until the last day that ballots may be mailed out to voters under state law. And *before* election officials can even begin enrolling voters in the process above, they must certify that they have submitted outbound/return envelopes for Mailpiece Design Analyst review and received feedback from USPS. This sequencing provides additional time pressure, especially given how many jurisdictions will be simultaneously submitting for review. In Hawai'i, we would have to provide that information by October 4, 2026 (30 days before the election), and we would thereafter have to update the information on a near-daily basis to include eligible voters who registered after that date or requested a mail ballot after that date. The Rule requires "[a] separate submission . . . in connection with each Outbound Federal Ballot mailing." The Rule provides that USPS "will provide a state-specific Mail-In and Absentee Participant List" ("USPS Mail Ballot List") to States' chief election officials "[o]n or about the date of the federal election." I further understand that if a voter is not enrolled with USPS, USPS will not accept the outbound mail ballot envelope for mailing.

16. These requirements impose significant financial costs on my office and threaten to disenfranchise voters in Hawai'i.

17. I have concerns about the feasibility of USPS implementing this system in a timely and accurate fashion in the limited time remaining before the November 2026 general election. Technological or implementation failure may lead to the inability of Hawai'i to deliver mail ballots to voters and conduct the election in accordance with state and federal law. Something of this scope and scale reasonably requires testing.

18. As a result of the Rule, my office must immediately coordinate with the four county clerks to ensure a consistent approach across Hawai'i. This coordination would have to address topics such as using the USPS portal, ensuring timely enrollment of mail voters as voter rolls change leading up to the election, and cybersecurity protection. These preparations may require significant time, personnel, and money.

19. Hawai'i anticipates mailing ballots to over 700,000 voters during the 2026 general election.

20. In my experience, implementing new election technology is highly complicated and takes time to get right. But even if USPS's untested Ballot Portal works as intended and does not experience technical problems—which seems unlikely given the short development and implementation window—enrolling all of our voters with USPS will be a massive undertaking. This task will be significantly complicated by the influx of registration updates and changes that elections officials typically receive in the months, weeks, and days before any election.

21. Before election officials can even become authorized to use the Ballot Portal, they must be approved by the Chief Election Official of the State, which itself requires advance coordination among state and county election offices to determine which staff throughout the state will become authorized and trained to use the Ballot Portal. *See* 39 CFR Part 111, Supplementary Information at 14.[1] Once election officials become authorized users—a process that may also create delay and administrative burden—the officials cannot enroll voters with USPS in bulk. Instead, elections officials must enroll voters separately for each mailing. Elections officials will not only be required to process these registration updates within their own

[1] Page citations to the Rule use the numbering from the preview document. *See* https://public-inspection.federalregister.gov/2026-17238.pdf.

systems, but they will bear the added burden of processing registration updates in an entirely new system operated by USPS—about which officials currently have no concrete operational information.

22. State law allows a voter to spoil an unvoted mail ballot and request a new ballot before an election. Haw. Rev. Stat. § 11-105. To ensure that voters receive these ballots to which they are entitled under state law, the information associated with these new ballots also would need to be provided to USPS.

23. Based on what information is available, I believe it will take many hours for elections staff to become authorized users of the USPS Ballot Portal and enroll all voters, assuming there are no delays caused by technical or processing difficulties. But technical and processing delays are common, especially with implementing a new, untested technology and process. Given the scale of the effort, any unexpected technological and processing difficulties could increase the practical and financial burden on Hawai'i exponentially. And if the system fails, Hawai'i may be unable to mail ballots to voters at all.

24. In Hawai'i, USPS is the only way in which the vast majority of voters receive a ballot. Access to mail-in voting is especially important for low-income, rural, and vulnerable populations, including voters with disabilities, who may lack access to transportation to either vote in-person at the limited voters service centers that are available or to receive and return their ballot through some other means. Additionally, there is simply insufficient time to coordinate the necessary polling places, volunteers, and logistical framework that would be necessary to emulate the prior polling place model that existed prior to the advent of elections by mail.

25. It is particularly concerning that USPS is only preparing for a seamless transition and that it has not prepared contingency plans if the Ballot Portal does not work as intended or

other errors impede the process. For example, USPS has not provided any information about how it will help election administrators facing technical difficulties in uploading information to the Ballot Portal. Nor has it provided any information about how errors by USPS will be corrected. USPS states only that it will inform Authorized Ballot Mailers of "escalation procedures" if they decide to challenge USPS's rejection of ballot mail. *See* 39 CFR Part 111, Supplementary Information at 58. USPS also says it will not develop any new appeal procedures for election mail, but USPS's standard processes will not work in the election context, where time is of the essence, and any errors must be resolved quickly to prevent voters from losing the fundamental right to vote.

26. USPS claims that the changes imposed by the Rule are modest and have been issued as "best practices" guidance in the past. But that is wrong. The Rule imposes dramatic changes with sweeping impacts. USPS has never required the Chief Election Officer of each state to authorize individual election workers to handle election mail, to require ballot design review before election mail can be sent, or to register each voter into a Ballot Portal before the voter can be mailed a ballot. Nor has it ever transmitted information about every mail-in voter in the country to unspecified law enforcement officials for vague and unsubstantiated reasons. The threat of disclosing such information to law enforcement officials itself could suppress voter participation. And each of the process changes create delay and administrative burden at each step, creating dangerous bottlenecks in the short time before elections that increase the risks of cascading impacts and disenfranchisement at an alarming scale. USPS claims it will make further guidance documents available to explain in detail how to use the Portal "shortly," 39 CFR Part 111, Supplementary Information at 55, but election officials must begin work now.

27. It is far too late in the election cycle to introduce such dramatic changes. USPS itself encourages the Chief Election Official in each State to provide USPS 90 days advance notice if the State plans to send federal election ballots, claiming such notice is "logistically beneficial" so that USPS can "conduct outreach on mail preparation, provide resources related to IMbs, and offer guidance on how [to] access and use the Federal Mail Ballot Portal." *See* 39 CFR Part 111, Supplementary Information at 45. But that 90-day window has already passed, and there is virtually no time for either USPS or States to prepare for such a dramatic change in election mailing. And USPS has done no advance work with States to begin educating election officials about any of these changes.

28. These risks are compounded by USPS's lack of prior experience in the type of election administration duties it will assume under the Rule, and uncertainty over whether USPS will devote sufficient resources to process the massive amount of data it will receive from all 50 states in a condensed timeframe.

29. USPS has confirmed that it does not expect "to require additional staff" or for implementation of the Rule to impose "a significant burden on employees." *See* 39 CFR Part 111, Supplementary Information at 74. This suggests that USPS is not adequately preparing for all possible contingencies and will not have adequate staffing to address technical failures in the Ballot Portal or to timely address appeals related to rejected election mail. The stakes are incredibly high, with any systemic errors, technological difficulties, or improper staffing threatening to disenfranchise voters at a massive scale.

30. As a result of the Rule and to mitigate the impact of all this uncertainty, Hawai'i will also have to devote significant time, personnel, and money to coordinate with the county clerks and their staff on the USPS processes and technology. This would include what steps must

be taken to access the USPS Ballot Portal, enroll voters in the Portal, and process election mail. This is yet another aspect of the Rule that will necessarily divert resources and time from other important election administration tasks.

**The Impacts and Harms Caused by Envelope Standards**

31. It is my understanding that the Rule requires that any mail containing a mail-in or absentee ballot for a federal election sent to or from voters must include the official Election Mail logo, be automation compatible, bear a unique Intelligent Mail barcode with the Delivery Point ZIP Code embedded and a Federal Ballot Mail Service Type Identifier, and have undergone USPS review.

32. These requirements of the Rule necessitate immediate action from me and my team in the Office of Elections.

33. Our agency anticipates mailing over 700,000 ballots to voters during the 2026 general election.

34. In order to provide context for understanding the impact, I will outline what is involved in the ballot package that is mailed to voters, that provides the voter the ability to mark their ballot and to return it to their county clerk. After that, I will discuss the impact of the Rule.

35. The ballot package is composed of four main parts (i.e. the outer envelope, ballot, secrecy sleeve, and return envelope).

36. The outer envelope is a size 11 envelope with a plastic window. The plastic window permits the name and address of the voter that will be printed on a size 10 envelope to be seen through the window. The back side of the size 11 envelope contains voter information, such as how to obtain language assistance, sign up for ballot tracking notifications, and to view the voter guide for the contest on the ballot.

37. The size 10 envelope is the envelope used by the voters to return their ballots. On one side of the envelope are the mailing address of the applicable county clerk, the first-class permit number indicating that postage will be paid by the county clerk, and an election logo indicating it is official election mail authorized by the U.S. Postal Service. As there are four county clerks, this side of the envelope contains one of four static Intelligent Mail Barcodes preprinted by the envelope vendor that the envelopes were purchased from (i.e. each county has a single barcode printed on their return envelopes).

38. On the other side of the size 10 envelope is an affirmation statement where the voter signs their name and a blank area where the voter's name and address, along with a barcode and associated information, will be printed at the mailing house.

39. The secrecy sleeve is uniform in that it contains instructions on how to return the ballot and information on election fraud and voter fraud. All ballot packages contain the same secrecy sleeve.

40. The ballot sent to each voter can reflect one of over 200 different ballot types that differ based on the unique combination of contests that a voter is eligible to vote on depending on where they live in relation to the boundaries of the congressional, state senatorial, state representative, and council districts associated with the offices that are up for election.

41. For purposes of the mailing house, the ballot package begins with the previously mentioned size 10 envelope. As the side with the address of the county clerk and their Intelligent Mail Barcode is static, the mailing house only ink jets the side with the affirmation statement. The ink jet adds the voter's name and address, along with a barcode containing information that will be used by the county clerks to receive the ballot and record its receipt in the statewide voter registration system.

42. The size 10 envelope will then be combined with the ballot type associated with the voter and the secrecy sleeve. These items will be placed in the size 11 envelope with the side of the size 10 envelope with the name and address of the voter, along with the barcode, displayed through the plastic window. The mailing house will inkjet a dynamic, individualized Intelligent Mail Barcode for each voter's mailing address on the front side of the size 11 envelope to the left of the plastic window.

43. The new USPS rule would require us to throw out the previously ordered size 10 envelopes, at a cost of over $79,000.00, as they were already printed with a static Intelligent Mail Barcode for each county clerk. It may not be possible to get new orders of size 10 envelopes delivered to Hawaii from the continent on such short notice. Assuming we could get new orders of envelopes, the next administrative issue is to get the mailing house to change its operations to inkjet both sides of the size 10 envelope. Specifically, one side with the name and address, along with the barcode and associated information, and then the dynamic Intelligent Mail Barcode on the other side of the envelope.

44. We have had preliminary discussions with the mailing house vendor, and the vendor has raised a variety of issues. The vendor is uncertain whether they have time to meet these new requirements and whether the new requirements can be realistically met. The vendor has other contractual obligations and this change in requirements would significantly increase the time to produce the ballot packages. If these new requirements are instituted, we would miss our initial statutorily-required mailing windows for mailing ballots—assuming we could even get the necessary envelopes delivered to us in time.

45. As for the county clerks, it is not clear if they have the capability, without a mailing house, to assign and print dynamic Intelligent Mail Barcodes on the envelopes they

would normally be expected to mail out in close proximity to the General Election. USPS suggests that small businesses can create Intelligent Mail barcodes free on USPS's website, but that tool is only available for mailings with fewer than 50,000 pieces of mail.[2] The largest counties in the State would not be able to use that tool for election mail. And USPS itself acknowledges that the current tool has technical impediments that would prevent creation of Intelligent Mail barcodes for certain voters, such as when the voter's address cannot be verified using Delivery Point Verification. *See* 39 CFR Part 111, Supplementary Information at 48. While USPS says it anticipates modifying this tool, it has not committed to doing so before the November 2026 general election, or at any specific time. Thus, election officials' concern about the feasibility of applying IMbs to all outbound and return envelopes [that may have already been ordered], do not simply reflect "confus[ion]" as USPS asserts. *See* 39 CFR Part 111, Supplementary Information at 47.

**<u>The Impacts and Harms Caused by Ballot Rejection</u>**

46. I am particularly concerned about the Rule's statement that ballot mailings that do not comply with the Rule "will not be accepted and will be returned." This means that USPS will refuse to deliver ballots to citizens who are properly registered to vote and entitled to vote by absentee or mail-in ballot under state law.

47. Sending mail ballots in a timely fashion is not only required by state and federal law, but it is critical to ensuring that as many eligible Hawaiʻi citizens as possible can exercise their right to vote.

48. The Rule creates a very substantial risk that at least some ballot mailings will be delayed or not be transmitted at all. For example, the USPS Ballot Portal does not currently exist

---

*See Intelligent Mail® for Small Business (IMsb) Fact Sheet* (June 1, 2023).

and has not faced the test of elections officials across the country attempting to concurrently enter tens of millions of voters' names and other information in a short window of time. If the Ballot Portal fails, the Rule would prevent **any** voters from receiving ballots. Moreover, if there are typographical or inadvertent administrative errors by USPS or elections officials, eligible voters will not timely receive mail ballots to which they are entitled under state law. And if USPS does not complete the review of ballot mail envelopes required by the Rule, that would also prevent voters from receiving absentee or mail-in ballots.

49. Even if the USPS Ballot Portal and enrollment system works as intended, the Rule still risks voter confusion and disenfranchisement. In my experience administering elections, changes to election procedures in the time immediately preceding an election can cause significant voter confusion. The Rule's complicated requirements will likely lead some eligible voters to misunderstand whether they are able to use a mail ballot. Some eligible voters will determine that the added requirements make voting too confusing to be worthwhile. The result of this confusion will be that fewer eligible voters decide to cast a ballot.

50. The Rule also requires the expenditure of considerable staff time to address voter concerns and proactively engage in public education about the Rule's changes. I anticipate inquiries from voters as a result of the Rule. Fielding these questions requires staff time that would otherwise be spent preparing for the 2026 general election.

51. In addition, the Rule will require a wide-ranging public education campaign to ensure that eligible voters understand the Rule's requirements, and how they may impact a citizen's ability to vote by mail. This is particularly the case for Hawai'i residents, who are used to automatically receiving mail ballots and being able to vote by mail under existing state law with no impediments.

52. Finally, confusion stemming from the Rule and any issues with its implementation that compromise the timely delivery of mail ballots are likely to severely harm the reputation of my office. In my experience, voters tend to blame state and local elections officials for administrative issues, even if fault may belong to a third party like USPS. This can reduce trust in our electoral system and cause reputational harms that are difficult to reverse.

**The Magnification of the Harm as a Result of the Timing**

53. The harms that stem from the Rule are particularly acute because the requirements take effect while my office is busy taking other steps to prepare for the 2026 general election.

54. Additionally, we are currently in the middle of our work related to the August 8, 2026, primary election, which provides us very little time to make changes in relation to our preparations for the 2026 general election.

55. County clerks must begin mailing ballots for the 2026 general election in the coming weeks. Consistent with federal law, agencies mail ballots to military and overseas voters by September 19, 2026, 45 days before the general election. 52 USC § 20302(a)(1)-(3), (8)(A). In addition, state law requires that county clerks begin mailing ballots to eligible voters so as to enable voters to receive the ballot approximately eighteen days before the election, or by October 16. The clerk shall continue mailing ballot packages to voters who register to vote no later than 10 days before the date of the election and to voters who update their voter registration address no later than 7 days before the date of the election and who have not yet voted. The clerk may continue mailing ballot packages beyond those deadlines if the clerk determines that there is reasonable time for a voter to receive and submit the ballot package before the election. *See* Haw. Rev. Stat. § 11-102.

56. Additionally, my office will need to continue to register those who are eligible to vote in Hawai'i. Hawai'i allows qualified individuals to register in person on Election Day. Haw. Rev. Stat. § 11-15.2; 52 USC § 20507(a)(1) (requiring states to permit registration not less than 30 days before a federal election). Hawai'i residents can register to vote online, at their county clerk's office, at various state social service agencies, and when applying for a driver's license card or state identification card through which they submit sufficient information of their voter qualifications through their transaction. During the weeks and months leading up to an election, we see a high volume of voters registering or updating their registration, resulting in flux in voter rolls and requiring time from election officials.

57. In compliance with the NVRA "quiet period" for voter registration, Hawai'i does not systematically remove voters from the rolls during the 90 days prior to a federal election unless a statutory exception applies. *See* 52 USC §§ 20507(c)(2)(A), 3(A)-(B), 4(A). Hawai'i does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests that his or her registration be canceled. Haw. Rev. Stat. § 11-17(d).

58. In sum, staff in our office must continue to process voter registration list changes up to and on Election Day. Registrants are constantly being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the 2026 election.

59. The steps necessary to comply with the Rule will divert time and attention from these other critical election preparations. For example, just depositing the election mail at the post office will become an exorbitantly time-consuming task. Before election mail is even brought to the post office, election staff "must segregate Outbound Federal Ballot Mail from other types of ballot mail, such as primary ballots, UOCAVA ballots, or ballots for state or local elections only." *See* 39 CFR Part 111, Supplementary Information at 56. And once at the post

office, each piece of election mail will need to be individually scanned and processed by a postal service agent to "confirm the presence of scanned barcodes in the Federal Mail Ballot Portal." USPS estimates that such scanning alone could take a minute per piece of mail and that election staff will have to "remain at the postal retail location during the verification process." The amount of staff time spent processing election mail will increase exponentially. *See* 39 CFR Part 111, Supplementary Information at 57-58. If these preparations are delayed or not completed, that can have significant impacts on the conduct of the election and opportunities for voters.

**<u>Morale and threats of prosecution</u>**

60. I am also deeply concerned about harms to the morale of election officials in my office and statewide resulting from the implementation of the Rule. USPS waves away serious concerns about implementation and compliance with state law by stating, "States can easily avoid any effects on their state elections by either complying with the rule's requirements or by separating their federal ballots to exclude any non-federal elections." 39 C.F.R. Part 111, Supp. Info. at 78. This ignores both the serious concerns with the practical ability of USPS to carry out the requirements of the rule, and the fact that separating federal and non-federal elections, which are printed on the same ballot, is functionally impossible. USPS then asserts, despite the extensive evidence of compliance challenges provided in comments on the Proposed Rule, that implementation and compliance are completely feasible so long as states "make a good faith effort to comply with the rule." 39 C.F.R. Part 111, Supp. Info. at 70. As demonstrated above, this is not the case at all. My colleagues and I are acutely aware that the Rule's requirements to enable tracking of mail ballots sent to and returned by voters comes in the context of an Executive Order that directed federal agencies to prioritize the investigation and prosecution "of State and local officials . . . who issue Federal ballots to individuals not eligible to vote in a

Federal election." Ex. Order 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17125, § 2(b) (March 31, 2026). USPS made clear the primary purpose of the Portal Data and the Lists is "to provide valuable insight" to law enforcement, specifically though disclosing "a list of individuals to whom states planned to mail a ballot (and who may potentially use the mail to vote), along with the associated barcode data," which in turn can purportedly "identify potentially anomalous incidents that may merit further investigation." *See* 39 C.F.R. Part 111, Supp. Info. at 60, 61. In a letter to me dated July 7, 2026, U.S. DOJ specifically threatened to prosecute election officials if noncitizens cast any ballots.

61. My colleagues and I are also acutely aware that President Trump has repeatedly claimed that there is widespread fraud allowing noncitizens to vote, even though in our experience as election officials noncitizen registration and voting are both extraordinarily rare.

62. I am worried that myself and other election officials could be targeted for federal investigation and even prosecution as a result of the Rule's mail ballot tracking system if the federal government believes, even incorrectly, that any of Hawai'i's registered voters are not citizens.

## Conclusion

63. In conclusion, I estimate that the requirements of the Rule will require diverting time and resources from other critical election preparation in the days leading up to the election, my office's busiest time. Our staff is already at capacity and dedicated to routine tasks and special projects that ensure Hawai'i's elections run smoothly and every eligible Hawai'i resident can exercise their right to vote.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 24, 2026, at Honolulu, Hawaii.

Scott T. Nago
Chief Election Officer
Hawai'i Office of Elections