**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br>*Plaintiffs,*<br>v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>*Defendants.* | Case No. _______________ |

**DECLARATION OF DONNA BARBER**

I, Donna Barber, declare as follows:

1. I am a resident of the State of New Jersey. I am over the age of 18 and have personal knowledge of all facts stated herein, except those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Executive Director of the Division of Elections (NJDOE) in the New Jersey Department of State (NJDOS) and support the Honorable Dr. Dale G. Caldwell, Lieutenant Governor and Secretary of State of New Jersey, in his official capacity as the Chief Election Official for the State of New Jersey.

3. I have most recently served as the Executive Director of the NJDOE for two years following a forty-year career working in the NJDOE, including serving as the Elections Manager.

4. NJDOS and the Secretary of State are responsible for overseeing various state functions, including elections, business and economic development, tourism, and cultural and historical programs.

5. New Jersey and its subdivisions (including various state agencies and all of its twenty-one counties) are responsible for administering elections in New Jersey. This responsibility encompasses voter registration, maintaining and updating voter rolls, issuing ballots to registered voters, tabulating votes, and certifying results in all elections for federal office, among numerous other tasks.

6. The Secretary of State is New Jersey's Chief Election Official. NJDOE is responsible for administering and applying any applicable state and federal laws relating to elections within the state. *See* N.J. Stat. Ann. § 19:31-6a; N.J. Stat. Ann. § 52:16A-98. NJDOE is responsible for assisting with implementing the Secretary of State's responsibilities with regard to elections, including enforcing laws and providing technical information to the public and other parties. New Jersey law charges NJDOE with promoting and facilitating the right to enfranchisement and ensuring that all eligible voters who want to vote are able to do so. *See* N.J. Stat. Ann. Title 19. NJDOE is committed to enhancing voter access, improving the overall voting experience for New Jersey residents, and working with local election officials to coordinate the implementation of applicable federal and New Jersey elections laws.

7. NJDOE works with twenty-one County Boards of Elections, nine Superintendents of Elections, and twenty-one County Clerks to administer federal, state, and local elections in New Jersey. These County Boards of Elections' various responsibilities working in conjunction with NJDOE include, but are not limited to: polling place selection; election district designation; recruitment, appointment, and training of poll workers; canvassing the vote and counting mail-in and provisional ballots; issuing credentials and overseeing poll challengers; issuing post-election ballot reports; and serving as Commissioner of Registration in counties that lack a Superintendent of Elections. Additionally, the nine Superintendents of Elections are responsible for receiving

voter registration applications, verifying voter eligibility, maintaining voter records, and providing lists of eligible voters.

8. In my role as Executive Director, I am responsible for the oversight and supervision of activities and programs within NJDOE, including creation and maintenance of the Statewide Voter Registration System (SVRS), certification of voting equipment, acting as the filing officer for federal and state public offices, compilation and certification of election results, oversight of polling place accessibility, printing and distribution of voter registration forms, organization of the Board of State Canvassers post-election and Electoral College post-Presidential Elections, acting as clearinghouse for all election information and responding to public inquiries, and serving as grant manager for HAVA funding awards.

9. NJDOE and the twenty-one New Jersey counties statewide are currently preparing to administer the November 2026 general election. Federal, county, and local races will be on the ballot. County Clerks are already beginning the process of laying out hundreds of ballot styles while anticipating the possibility that some candidates could be removed from the ballot and in some cases, could be replaced. NJDOE has already reviewed guidance documents and updated them where necessary, and has authored new guidance documents required by recent changes to statutes; acquired and distributed a supply of security seals and labels for voting equipment to the counties; and is providing supplies of voter education posters of the Voter Bill of Rights, Mail-In Ballots, and the No Electioneering poster for posting in polling locations. NJDOE has received County Boards certifications of accessible polling locations and is ready to implement any changes as needed to ensure the accessibility of all locations, and has provided exit polling guidance to Boards of Elections. Finally, instruction has been provided to County Clerks for the production of

county election results as NJDOE is preparing for the post-election meeting of the Board of State Canvassers, and voter education campaign messaging is being prepared for Vote.NJ.gov.

10. New Jersey provides a mail-in ballot to all voters who timely request mail-in ballots. N.J. Stat. Ann. § 19:63-3. New Jersey sends these ballots to voters through the United States Postal Service ("USPS"). N.J. Stat. Ann. § 19:63-9.

11. In New Jersey, ballots are mailed by County Clerks. N.J. Stat. Ann. § 19:63-9(a). Mail ballot envelopes are designed by County Clerks and must conform with state law. N.J. Stat. Ann. § 19:63-11(a). Counties that use commercial mailers use Intelligent Mail barcodes ("IMbs") for return envelopes. County Clerks begin mailing ballots to eligible voters starting on or before the forty-fifth day before elections are held (N.J. Stat. Ann. § 19:63-11(a)), which for this coming November 2026 general election, is on Saturday, September 19, 2026.

12. County Clerks continue to send mail-in ballots as additional voters registered to vote before the 21-day pre-election deadline request an absentee ballot, up to seven days before the election. For this coming November 2026 general election, this deadline is on Tuesday, October 27, 2026. N.J. Stat. Ann. § 19:63-3(b)(1). In 2024, 1,114,175 New Jersey voters requested mail-in ballots. As of August 12, 2026, there were 869,389 mail-in ballots requested for the General Election, and that number has risen since then.

13. I am familiar with the Notice of Proposed Rulemaking issued by USPS that was published in the Federal Register on June 2, 2026.

14. I am also familiar with USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule"), which was made available for public preview at https://public-inspection.federalregister.gov/2026-17238.pdf prior to its scheduled publication in the Federal Register on August 26, 2026. That Rule will imminently cause significant delays, harm, confusion,

and disruption in New Jersey election administration, and will impose unrecoverable costs on New Jersey.

15. For the reasons discussed throughout this declaration, NJDOE must act now to align New Jersey's administration of mail voting with the requirements of the Rule. Given the very short time available and the untested technology that the Rule relies on, there are profound concerns that the Rule will prevent eligible voters from voting, including in the November 2026 general election. NJDOE will strive to ensure that voters have an opportunity to vote, and the Rule imposes significant costs on doing so.

16. It is my understanding that the Rule requires that every voter who will receive an absentee or mail-in ballot to be enrolled with USPS. To enroll voters, election officials or other authorized personnel must access the USPS Ballot Portal to enter each voter's name, address, unique IMbs from the outbound ballot envelope, unique IMb from the return ballot envelope, and the originating election office state. The information would have to be provided at least 30 days before the date of the federal election or by the date by which ballots may begin to be mailed to voters under state law, although supplemental submissions can be made until the last day that ballots may be mailed out to voters under state law. *Before* election officials can even begin enrolling voters in the process above, election officials must certify that they have submitted outbound/return envelopes for Mailpiece Design Analyst review and received feedback from USPS. This sequencing provides additional time pressure, especially given the number of jurisdictions simultaneously submitting for review. In New Jersey, NJDOE would have to provide that information by October 4, 2026 (30 days before the election) or September 19, 2026 (45 days before the election, when New Jersey begins mailing out mail-in ballots), and would thereafter have to update the information on a near-daily basis to include eligible voters who registered after

that date or requested a mail-in ballot after that date. The Rule requires "[a] separate submission . . . in connection with each Outbound Federal Ballot mailing." The Rule provides that USPS "will provide a state-specific Mail-In and Absentee Participant List" ("US Mail Ballot List") to States' Chief Election Officials "[o]n or about the date of the federal election." I further understand that if a voter is not enrolled with USPS, USPS will not accept the outbound mail ballot envelope for mailing.

17. These requirements impose significant financial costs on NJDOE and threaten to disenfranchise voters in New Jersey.

18. There are concerns about the feasibility of USPS implementing this system in a timely and accurate fashion on the expedited timeline required before the November 2026 general election. Technological or implementation failure may harm New Jersey's ability to deliver mail ballots to voters and conduct the election in accordance with state and federal law.

19. As a result of the Rule, NJDOE must immediately prepare and update guidance for local election offices to ensure a consistent approach across New Jersey's twenty-one counties. This guidance would have to address topics such as using the USPS portal, ensuring timely enrollment of mail voters as voter rolls change leading up to the election, cybersecurity protection and how to protect voters in the Address Confidentiality Program (a statewide program that provides a legal substitute address for victims and survivors of domestic violence, stalking, sexual violence, and reproductive health patients and providers), voters protected by Daniel's Law, N.J. Stat. Ann. § 47:1B-1 et seq. (a New Jersey statute that allows certain public servants to request the redaction of their residence information from certain public-facing State, county, and municipal websites), and voters protected by court orders. These preparations and updates will require significant time, personnel, and cost.

20. New Jersey anticipates mailing ballots to approximately 900,000 voters during the 2026 general election during the period from September 19, 2026, to October 27, 2026.

21. In NJDOE's experience, implementing new election technology is highly complicated and takes time. But even if USPS's untested Ballot Portal works as intended and does not experience technical problems—which seems unlikely given the short development and implementation window—enrolling all 900,000 voters with USPS will be a massive undertaking. This task will be significantly complicated by the influx of registration updates and changes that election officials typically receive in the months, weeks, and days before any election.

22. Before election officials can even become authorized to use the Ballot Portal, election officials must be approved by the Chief Election Official of the State, which itself requires advance coordination among state and county election offices to determine which staff throughout the state will become authorized and trained to use the Ballot Portal. *See* 39 CFR Part 111, Supplementary Information at 14.[1] Once election officials become authorized users—a process that may also create delay and administrative burden—the officials cannot enroll voters with USPS in bulk. Instead, election officials must enroll voters separately for each mailing. Sometimes, a mailing contains only a single piece of ballot mail, such as when election officials mail a replacement ballot. Election officials will not only be required to process these registration updates within their own systems, but they will bear the added burden of processing registration updates in an entirely new system operated by USPS—about which officials currently have no concrete operational information.

[1] Page citations to the Rule use the numbering from the preview document. *See* https://public-inspection.federalregister.gov/2026-17238.pdf.

23. State law allows a voter to spoil an unvoted mail ballot and request a new ballot until election day. To ensure that voters receive these ballots to which they are entitled under state law, the information associated with these new ballots also would need to be provided to USPS.

24. Based on what information is available, it will take a significant amount of time for elections staff to become authorized users of the USPS Ballot Portal and enroll all voters, assuming there are no delays caused by technical or processing difficulties. The New Jersey SVRS does not currently produce or capture IMb information for individual voters, so each individual barcode would have to be added manually to a county-wide Mail-In Ballot request list. Further, including that IMb information for individual voters in the SVRS would require technical updates to the system, which would require time, cost, and the work of personnel for which NJDOE has not budgeted, and would require numerous new and updated entries as voters request mail-in ballots. Counties will have to obtain a USPS Mailer ID Number and an Intelligent Mail Barcode Generator, and train employees in their use for the generation of the IMbs unique to each voter for inclusion on the Mail-In and Absentee Participation list required to be provided to USPS. Alternatively, counties may have to acquire the services of a Commercial Mailer with an existing USPS Mailer ID and access to the USPS Postal Pro Encoder/Decoder Tool. Such costs could be in addition to any address imprint and mailing services provided. Additionally, technical and processing delays are common, especially with implementing a new, untested technology and process. Given the scale of the effort, any unexpected technological and processing difficulties could increase the practical and financial burden on New Jersey exponentially. If the system fails, New Jersey may be unable to mail ballots to voters at all.

25. In New Jersey, USPS is the only way in which a significant number of voters receive a ballot. Access to mail-in voting is especially important for low-income, rural, and

vulnerable populations, including voters with disabilities, who may lack access to transportation to either vote in-person or to receive and return their ballot through some other means.

26. There are particular concerns that USPS is only preparing for a seamless transition and that it has not prepared contingency plans if the Ballot Portal does not work as intended or other errors impede the process. For example, USPS has not provided any information about how it will help election administrators facing technical difficulties in uploading information to the Ballot Portal. Nor has it provided any information about how errors by USPS will be corrected. USPS states only that it will inform Authorized Ballot Mailers of "escalation procedures" if they decide to challenge USPS's rejection of ballot mail. *See* 39 CFR Part 111, Supplementary Information at 58. USPS also says it will not develop any new appeal procedures for election mail, but USPS's standard processes won't work in the election context, where time is of the essence, and any errors must be resolved quickly to prevent voters from losing the fundamental right to vote.

27. The risks of error are heightened here because USPS has not committed to providing any training to election administrators regarding the Ballot Portal or any other aspect of the process changes. While the Rule contemplates that States and local election offices will soon begin registering tens of millions of voters into the Ballot Portal, USPS has provided virtually no information on what the Ballot Portal will look like, how it will operate, how users become authorized to use it, or how long it will take to upload voter information into the Ballot Portal. In fact, USPS explicitly "declines to conduct, publish, or otherwise disclose any additional analysis or information concerning the rule or Portal." *See* 39 CFR Part 111, Supplementary Information at 81. And while USPS indicates that it is still developing training for internal Postal Service employees on such topics as mail ballot design and verification of ballot mail, it has not committed

to providing any training to state and local election officials. Nor does USPS indicate when the Ballot Portal will become accessible for authorized users so that they can begin learning the system before they are required to start adding registered voters into the Ballot Portal under the pressure of election deadlines.

28. USPS claims that the changes imposed by the Rule are modest and have been issued as "best practices" guidance in the past. But that is wrong. The Rule imposes changes with sweeping impacts. USPS has never required the Chief Election Official of each state to authorize individual election workers to handle election mail, to require ballot design review before election mail can be sent, or to register each voter into a Ballot Portal before the voter can be mailed a ballot. Nor has it ever transmitted information about every mail-in voter in the country to unspecified law enforcement officials for vague and unsubstantiated reasons. The threat of disclosing such information to law enforcement officials itself could suppress voter participation. And each of the process changes create delay and administrative burden at each step, creating dangerous bottlenecks in the short time before elections that increase the risks of cascading impacts and disenfranchisement at an alarming scale. USPS claims it will make further guidance documents available to explain in detail how to use the Portal "shortly," 39 CFR Part 111, Supplementary Information at 55, but election officials must begin work now.

29. It is far too late in the election cycle to introduce such changes. USPS itself encourages the Chief Election Official in each State to provide USPS 90 days advance notice if the State plans to send federal election ballots, claiming such notice is "logistically beneficial" so that USPS can "conduct outreach on mail preparation, provide resources related to IMbs, and offer guidance on how [to] access and use the Federal Mail Ballot Portal." *See* 39 CFR Part 111, Supplementary Information at 45. But that 90-day window has already passed, and there is

virtually no time for either USPS or States to prepare for such a change in election mailing. And USPS has done no advance work with States to begin educating election officials about any of these changes.

30. These risks are compounded by USPS's lack of prior experience in the type of election administration duties it will assume under the Rule, and uncertainty over whether USPS will devote sufficient resources to process the massive amount of data it will receive from all 50 states in a condensed timeframe. USPS has confirmed that it does not expect "to require additional staff" or for implementation of the Rule to impose "a significant burden on employees." *See* 39 CFR Part 111, Supplementary Information at 74. This suggests that USPS is not adequately preparing for all possible contingencies and will not have adequate staffing to address technical failures in the Ballot Portal or to timely address appeals related to rejected election mail. The stakes are incredibly high, with any systemic errors, technological difficulties, or improper staffing threatening to disenfranchise voters at a massive scale.

31. As a result of the Rule and to mitigate the impact of all this uncertainty, New Jersey will also have to devote significant time, personnel, and money to update training materials for local election officials and their staff. Election staff would need to be trained on the USPS processes and technology. Training materials would have to specifically detail what steps they must take to access the USPS Ballot Portal, enroll voters in the Portal, and to process election mail. This is yet another aspect of the Rule that will necessarily divert more than half of our small team's resources from other important election administration tasks.

32. It is my understanding that the Rule requires that any mail containing a mail-in or absentee ballot for a federal election sent to or from voters must include the official Election Mail

logo, be automation compatible, bear a unique IMb with the Delivery Point ZIP Code embedded and a Federal Ballot Mail Service Type Identifier, and have undergone USPS review.

33. These requirements of the Rule necessitate immediate action from NJDOE.

34. NJDOE anticipates county mailing of approximately 900,000 ballots to voters during the 2026 general election.

35. NJDOE and county election officials have consistently relied upon election mail guidance from USPS to design and mail ballots, and relied on that guidance in preparations that have already been taken for the November 2026 general election.

36. Most of New Jersey's twenty-one counties use IMbs on ballot Return Mail Envelopes. The County Clerks order these envelopes themselves, and they are often preprinted and ordered in bulk to ensure an adequate supply for multiple elections in a cycle. For 2026, those orders pre-date the Rule and any remaining stock not used already will not be usable in the November 2026 Federal General Elections. USPS confirms that states or localities that have already printed their ballots cannot use those envelopes under the Rule and will need to order new envelopes and submit them for design review. *See* 39 CFR Part 111, Supplementary Information at 71. USPS suggests that small businesses can create IMbs for free on USPS's website, but that tool is only available for mailings with fewer than 50,000 pieces of mail.[2] The largest counties in the State would not be able to use that tool for election mail. And USPS itself acknowledges that the current tool has technical impediments that would prevent creation of IMbs for certain voters, such as when the voter's address cannot be verified using Delivery Point Verification. *See* 39 CFR Part 111, Supplementary Information at 48. While USPS says it anticipates modifying this tool, it

[2] *See* Intelligent Mail® for Small Business (IMsb) Fact Sheet (June 1, 2023), https://postalpro.usps.com/mailing/imsb/fact_sheet.

has not committed to doing so before the November 2026 general election, or at any specific time. Thus, election officials' concern about the feasibility of applying IMbs to all outbound and return envelopes do not simply reflect "confus[ion]" as USPS asserts. *See* 39 CFR Part 111, Supplementary Information at 47.

37. In New Jersey ballot envelopes vary by county. There is concern about the length of time it would take for USPS to conduct ballot design review for thousands of jurisdictions. While USPS indicates that Mail Design Analysts generally aim to provide feedback to mailers within two business days, this estimate was before implementation of the Rule, and USPS does not indicate that final approval of all election mail envelope designs will occur in similar timeframes. In fact, USPS has disclaimed the need for additional staffing, even though thousands of jurisdictions nationwide are newly required to submit their outbound and return mail ballot envelopes for USPS inspection and approval. Nor does USPS specify how disputes regarding the design review process will be resolved. All of this creates a potential chokepoint in the entire mailing process because the ballot envelope design must be approved by USPS before any information can even begin to be uploaded into the Ballot Portal. *See* 39 CFR Part 111, Supplementary Information at 47, 49-51, 74. Waiting on USPS to approve ballot design has the potential to seriously disrupt and delay carefully timed steps necessary to deliver mail ballots to New Jersey voters. Indeed, delays in the approval process will literally prevent enrollment of voters on the USPS Mail Ballot List, foreclosing delivery of ballots. Managing the fallout from such a delay would force NJDOE and local election officials to divert critical time and money from other elections administration duties to expedite other steps in the mail ballot process, educate the public about the status of mail ballots, and otherwise mitigate the harm from delays to the process.

38. There are also concerns about the Rule's statement that ballot mailings that do not comply with the Rule "will not be accepted and will be returned." This means that USPS will refuse to deliver ballots to citizens who are properly registered to vote and entitled to vote by absentee or mail-in ballot under state law.

39. Sending mail ballots in a timely fashion is not only required by state and federal law, but is critical to ensuring that as many eligible New Jersey citizens as possible can exercise their right to vote. In the 2024 general election, 1,114,175 New Jersey citizens requested to vote by mail. This method of voting is particularly important for the many New Jersey citizens who live in more remote areas where their polling place may be further away.

40. The Rule creates a substantial risk that at least some ballot mailings will be delayed or not be transmitted at all. For example, the USPS Ballot Portal does not currently exist and has not faced the test of election officials across the country attempting to concurrently enter tens of millions of voters' names and other information in a short window of time. If the Ballot Portal fails, the Rule would prevent voters from receiving ballots. Moreover, if there are typographical or inadvertent administrative errors by USPS, eligible voters will not timely receive mail ballots to which they are entitled under state law. And if USPS does not complete the review of ballot mail envelopes required by the Rule, that would also prevent voters from receiving absentee or mail-in ballots.

41. Even if the USPS Ballot Portal and enrollment system works as intended, the Rule still risks voter confusion and disenfranchisement. In my experience administering elections, changes to election procedures in the time immediately preceding an election can cause significant voter confusion. The Rule's complicated requirements may lead some eligible voters to misunderstand whether they are able to use a mail ballot. Some eligible voters may determine that

the added requirements make voting too confusing to be worthwhile. The result of this confusion may be that fewer eligible voters decide to cast a ballot.

42. The Rule also requires the expenditure of considerable resources to address voter concerns and proactively engage in public education about the Rule's changes. Following the Proposed Rule, NJDOE received multiple inquiries from voters/county election officials asking whether USPS would deliver ballots to and from voters. NJDOE anticipates more inquiries from voters as a result of the Rule. Fielding these questions requires resources that would otherwise be spent preparing for the 2026 general election.

43. In addition, the Rule will require a wide-ranging public education campaign to ensure that eligible voters understand the Rule's requirements, and how the Rule may impact a citizen's ability to vote by mail. This is particularly the case for New Jersey residents, who are accustomed to automatically receiving mail ballots and being able to vote by mail under existing state law with no impediments.

44. Finally, confusion stemming from the Rule and any issues with its implementation that compromise the timely delivery of mail ballots are likely to harm the reputation of NJDOE. Voters may blame state and local election officials for administrative issues, resulting in reduced trust in our electoral system and causing reputational harms that are difficult to reverse.

45. The harms that stem from the Rule are particularly acute because the requirements take effect while NJDOE is preparing for the 2026 general election.

46. County Clerks must begin mailing ballots for the 2026 general election in the coming weeks. Consistent with federal law, County Clerks mail ballots to military and overseas voters by September 19, 2026, 45 days before the general election. 52 U.S.C. § 20302(a)(1)-(3), (8)(A). In addition, state law requires that County Clerks begin mailing mail-in ballots to all other

eligible voters no later than September 19, 2026. N.J. Stat. Ann. § 19:63-9. County Clerks will continue mailing ballots through October 27, 2026, consistent with state law. *See* N.J. Stat. Ann. § 19:63-3(b)(1).

47. Additionally, County and Municipal election officials will need to continue to register those who are eligible to vote in New Jersey. New Jersey allows qualified individuals to register up to twenty-one days before Election Day. N.J. Stat. Ann. § 19:31-6; 52 U.S.C. § 20507(a)(1) (requiring states to permit registration up to 30 days before a federal election). New Jersey citizens can register to vote online, at their county Superintendent of Elections or Commissioner of Registration's office, at various state social service agencies, and through New Jersey's Motor Vehicle Commission when they submit required information of their voter qualifications (including attesting to citizenship) through their transaction. During the weeks and months leading up to an election, NJDOE observes a high volume of voters registering or updating their registration, resulting in flux in voter rolls and requiring time from election officials.

48. In compliance with the NVRA "quiet period" for voter registration, New Jersey does not systematically remove voters from the rolls during the 90 days prior to a federal election unless a statutory exception applies. *See* 52 U.S.C. § 20507(c)(2)(A), (3)(A)-(B), (4)(A). New Jersey does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests that his or her registration be canceled.

49. In sum, county election officials must continue to process voter registration list changes up to and on Election Day, and NJDOE will need to be available to devote time and resources to assist with those functions where necessary. Registrants are constantly being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the 2026 election.

50. The steps necessary to comply with the Rule will divert time and attention from these other critical election preparations. For example, depositing the election mail at the post office will become a more time-consuming task. Before election mail is brought to the post office, election staff "must segregate Outbound Federal Ballot Mail from other types of ballot mail, such as primary ballots, UOCAVA ballots, or ballots for state or local elections only." *See* 39 CFR Part 111, Supplementary Information at 56. Once at the post office, each piece of election mail will need to be individually scanned and processed by a postal service agent to "confirm the presence of scanned barcodes in the Federal Mail Ballot Portal." USPS estimates that such scanning alone could take at least one minute per piece of mail and that election staff will have to "remain at the postal retail location during the verification process." The amount of resources spent processing election mail will increase exponentially. *See* 39 CFR Part 111, Supplementary Information at 57-58. If these preparations are delayed or not completed, the result could be significant impacts on the conduct of the election and opportunities for voters.

51. There are also concerns about harms to the morale of election officials resulting from the implementation of the Rule. USPS dismisses serious concerns about implementation and compliance with state law by stating, "States can easily avoid any effects on their state elections by either complying with the rule's requirements or by separating their federal ballots to exclude any non-federal elections." 39 C.F.R. Part 111, Supp. Info. at 78. This ignores both the serious concerns with the practical ability for USPS to carry out the requirements of the rule, and the fact that separating federal and non-federal elections, which are printed on the same ballot, is functionally impossible. USPS then asserts, despite the extensive evidence of compliance challenges provided in comments on the Proposed Rule, that implementation and compliance are completely feasible so long as states "make a good faith effort to comply with the rule." 39 C.F.R.

Part 111, Supp. Info. at 70. As demonstrated above, this is not the case at all. NJDOE is aware that the Rule's requirements to enable tracking of mail ballots sent to and returned by voters comes in the context of an Executive Order that directed federal agencies to prioritize the investigation and prosecution "of State and local officials . . . who issue Federal ballots to individuals not eligible to vote in a Federal election." Ex. Order 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17125, § 2(b) (March 31, 2026); *see also id.* § 5 (providing that "State or local election officials . . . [and] individuals involved in the administration of Federal elections; or public [] entities engaged in the printing, production, shipment, or distribution of ballots may be referred to the Department of Justice for consideration of investigation or charges under" various federal criminal laws). The Executive Order also requires USPS to coordinate with its own Office of Inspector General and the Department of Justice "for investigation of suspected unlawful use of the mail involving Federal election materials." *Id.* § 3(c). USPS made clear the primary purpose of the Portal Data and the Lists is "to provide valuable insight" to law enforcement, specifically though disclosing "a list of individuals to whom states planned to mail a ballot (and who may potentially use the mail to vote), along with the associated barcode data," which in turn can purportedly "identify potentially anomalous incidents that may merit further investigation." *See* 39 C.F.R. Part 111, Supp. Info. at 60, 61.

52. In NJDOE's experience, widespread voter fraud is extremely rare and unsupported by evidence.

53. As a result of the Rule's mail ballot tracking system, election officials may be targeted for federal investigation or prosecution if the federal government believes, even incorrectly, that any of New Jersey's registered voters are not citizens.

54. In conclusion, NJDOE estimates that the requirements of the Rule will require a significant increase to the NJDOE budget. Given recent economic pressures across the state and country, NJDOE has been working to keep budgetary needs as low as possible.

55. Any resources expended on implementing the Rule would divert time and attention from other critical election preparation in the days leading up to the election, NJDOE's busiest time. NJDOE is already at capacity and dedicated to routine tasks and special projects that ensure New Jersey's elections run smoothly and every eligible New Jersey citizen can exercise their right to vote. This work becomes more voluminous, significant, and urgent in the months leading up to the election, when NJDOE must answer an increasing volume of questions and handle tasks related to, for example, campaign finance reporting, logic and accuracy testing, and voter challenges.

56. Each of these tasks and costs will divert scarce resources from other important election administration needs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2026, at Trenton, New Jersey.

Donna Barber
Executive Director
New Jersey Division of Elections
New Jersey Department of State