**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br>*Plaintiffs,*<br>v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>*Defendants.* | Case No. _______________ |

# DECLARATION OF MANDY VIGIL

I, Mandy Vigil, declare as follows:

1. I am a resident of the State of New Mexico. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with New Mexico Secretary of State Office staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the State Election Director in New Mexico. I work for the Secretary of State and support her in her official capacity as the Chief Election Officer for the State of New Mexico. In my role, I assist her in the execution and enforcement of all state and federal laws relating to elections.

3. I have served as a public servant for over twenty years. Most recently, I have served as an election administrator in the Office of the Secretary of State since 2011. Currently, I serve as the State Election Director. I have served in this role for eight years. Prior to my role as the State Elections Director, I served as the Deputy Election Director, Ethics Division Manager,

and as a Compliance Officer. In addition, I serve as an election subject matter expert and representative of New Mexico for several election related organizations. I am a former President of the National Association of State Election Directors, an Executive Board Member of the Electronic Registration Information Center, a Representative on the Election Assistance Commission Standards Board, a member of the Bipartisan Policy Center's Taskforce on elections, a member of the Election Workforce Advisory Council, and I represent the Standards Board on the Technical Guidelines Development Committee (TGDC).

4. The Office of the New Mexico Secretary of State and the thirty-three county clerks are responsible for administering elections in New Mexico. This responsibility encompasses voter registration, maintaining and updating voter rolls, issuing ballots to registered voters, tabulating votes, and validating election returns prior to certification all elections for federal office, among numerous other tasks.

5. The Secretary of State is the state's Chief Officer of Elections, responsible for executing and enforcing all state and federal law relating to election administration within the state. *See* N.M. Stat. Ann. §1-2-1 (2023). The Elections Bureau is responsible for implementing the Secretary of State's responsibilities with regard to elections, including the adoption and dissemination and training of election-related rules, procedures and guidance to all other election officials, and election related entities within the state. New Mexico law charges our office with preventing disenfranchisement and ensuring that all eligible voters who want to vote are able to do so. N.M. Stat. Ann. §1-4-2 (2019).

6. The Secretary's Office is responsible for the managing the systems related to the printing and distribution of the ballots, generally oversees all elections administered under the code, advising and training New Mexico's 33 county clerks regarding the uniform application of

the state's Election Code, and reporting violations of the code to district attorneys or the state's attorney general. N.M. Stat. Ann. § 1-2-2 (2011). The state's county clerks are responsible for administering elections pursuant to the state's Election Code within the counties they represent. Among many statutory duties, New Mexico's county clerks are responsible for the processing of voter registrations, establishment of polling locations, appointment of election board members, processing of mailed ballot applications, training of election board members, tabulation of votes, post-election canvassing and the mailing and processing of mailed ballots.

7. The Secretary of State's Office provides infrastructure support to the county clerks in the administration of elections, for example, the Secretary maintains an official electronic voter registration database and election management system called State Elections Registration and Voting Integrity System (SERVIS), which the county clerks utilize extensively to keep the consistently changing voter lists up to date. New Mexico's voter lists are not static due to new registrations being added, current registrations being modified, and existing registrations canceled as the result of the registrant's voluntary request, evidence of an out-of-state change of address, or notice of the registrant's death. As such, any "point-in-time" eligible list provided by the federal government agencies will not match New Mexico's dynamic voter list. In the November 2024 general election, 923,403 total votes were cast in the presidential race, of which 113,350 (12.3%) were by mailed ballot. Having inconsistent eligible voter lists will cause confusion, disenfranchise large numbers of New Mexico voters, and create chaos for the election administrators.

8. In my role as State Elections Director, I am responsible for overseeing all programs related to election administration within the state. This includes election related systems, and compliance. I am responsible for ensuring the correct and legal administration of

election processes like list maintenance, including a program required to comply with the National Voter Registration Act ("NVRA"), developing election guidance, providing training and implementing new and improved processes and technology in support of election related stakeholders. I work directly with internal and external partners to develop all systems and procedures related to the administration of statewide elections. As the agency's subject matter expert and Election Director, I have extensive knowledge of the daily operations, legal requirements, and stakeholders involved. I oversee and provide direction on all system and process implementations, including all voter registration activities. I oversee the development and ongoing maintenance of our voter registration database and ballot management system, voter list maintenance, the statewide voter registration database, and mail-in voting.

9. My office and county clerks statewide are currently preparing to administer the November 2026 general election. Federal, state, and local races will be on the ballot. Our office has already begun multiple parallel efforts in preparation for the November 2026 general election. Most notably, we have published the general election proclamation, which establishes the date for general election and the filing deadlines for the stated offices to be filled in the upcoming general election. We have also prepared guidance, filed candidates, conducted training, issued voter notifications, and prepared certified ballots. We are currently accepting mail ballot applications for all eligible voters. We will begin issuing ballots to military and overseas voters 45 days before the November election and to domestic voters 28 days before the election. Additionally, we are finalizing the budget submission for the New Mexico Department of Finance to authorize spending for the November election. In tandem with that effort, we are finalizing memorandums of understanding with all 33 county clerk offices regarding local election budgets for reimbursable expenses, such as supplies, postage for mail ballots, and other

related voting material, including systems such as e-pollbooks, ballot on demand printers, on-site support, and election workers costs. All candidate declarations have been received and processed, providing for final candidate ballot content to be entered into SERVIS. My office and county clerk offices are actively working to complete multiple tasks in preparation for the upcoming election.

10. Our public information campaign is already underway to provide New Mexico voters with information on how to participate in this year's elections. We will launch a new public information campaign in September focusing on the November elections. We have a contract in place, have had a kick-off meeting with the vendor and will have concept review and approval in the next 30 days. Additionally, we will soon coordinate preparation and printing with a third-party vendor for the statutorily required voter notifications that must be sent out at least forty-two days prior to every statewide election. We send these voter notifications to all registered voters of the upcoming election. The notifications include the deadlines to submit a mail ballot application and to return a mail ballot to the county clerk for it to be counted, plus a recommended deadline to deposit the voted mailed ballot with the United States Postal Service ("USPS") for it to be received by the deadline.

11. New Mexico provides a mail ballot to all voters who submit an official form application, or its online equivalent accessed through a website approved by the Secretary of State, provided that the voter has a current or expired New Mexico driver's license or state identification card issued by the motor vehicle division of the taxation and revenue department. *See* N.M. Stat. Ann. §1-6-4 (2025). For registrants who registered for the first time in this state by mail and at that time did not provide acceptable documentary identification as required by federal law, New Mexico law provides that they shall be informed of the need to comply with

federal identification requirements when returning the requested ballot. Such a registrant is also notified that if the registrant votes for the first time in New Mexico by mail and does not follow the instructions for returning the required documentary identification, the registrant waives the right to secrecy in that mailed ballot. *see* N.M. Stat. Ann. § 1-6-4 (F) (2025). New Mexico sends these ballots to voters through the United States Postal Service.

12. In New Mexico, ballots are mailed by the county clerks or certified vendors under the direction of the county clerks. Mail ballot envelopes are designed by the New Mexico Secretary of State and must conform with state law. N.M. Stat. Ann. § 1-6-8 (2023). Mail ballots are required by New Mexico law to include Intelligent Mail barcodes. N.M. Stat. Ann. § 1-6-9 (B) (2023). County clerks or the state's certified vendor begin mailing ballots to overseas voters 45 days before the election for military and overseas voters, on September 19, 2026, and to domestic voters 28 days before the election, or on October 6, 2026.

13. Mailed ballots are sent to domestic applicants beginning 28 days before the election, or on October 6, 2026. The deadline to submit an absentee application is 14 days prior to election day, or October 20, 2026. The county clerk will reject any mailed ballot application received after October 20, 2026, as being untimely, and the county clerk, within twenty-four hours of receipt of the late application, will send a rejection notice to the voter. The notice includes a list of the early voting locations and election day polling places in the county.

14. I am familiar with the Notice of Proposed Rulemaking issued by the United States Postal Service that was published in the Federal Register on June 2, 2026. My office submitted a comment on the Proposed Rule expressing opposition and identifying specific concerns, including that the Proposed Rule would disenfranchise the State's numerous rural Native American voters, voters who applied for a mailed ballot but did not timely receive one, and

voters enrolled in New Mexico's Intimate Partner Violence Survivor Suffrage program. A true and correct copy of that comment letter is attached to this declaration as Exhibit A.

15. I am also familiar with USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule"), which was made available for public preview at https://public-inspection.federalregister.gov/2026-17238.pdf prior to its scheduled publication in the Federal Register on August 26, 2026. That Rule has already and will imminently cause significant harm, confusion, and disruption in New Mexico election administration, and will impose unrecoverable costs on New Mexico. Among many other harms common to other States, the Rule would particularly harm New Mexico. Specifically, the Rule disenfranchise the State's numerous rural Native American voters, voters who applied for a mailed ballot but did not timely receive one, and voters enrolled in New Mexico's Intimate Partner Violence Survivor Suffrage program.

16. Mail delivery to individual Native American voters is challenging due to the remoteness of residences. New Mexico is home to 23 Indian tribes, comprised of 19 pueblos, three Apache tribes and part of the Navajo Nation, covering approximately 12,000 square miles. To addresses this difficulty, New Mexico's Native American Voting Rights Act allows members of the Indian nation, tribe, or pueblo to request delivery of mailed ballots to a specified "government and official buildings on Indian nation, tribal and pueblo land where members of the Indian nation, tribe or pueblo may request delivery of mailed ballots." N.M. Stat. Ann. § 1-21A-8 (2023). The Rule would result in the ineligibility of these voters because the name and unique barcode applied to the outbound and return ballot mail envelope for such individuals will presumably be the residential address of the voter and thus not align with an official building address that they may choose to utilize under New Mexico law.

17. New Mexico law also allows a voter who has applied for a mailed ballot but who has not timely one to go to a voting convenience center, and, after executing an affidavit stating that the person wishes to void any previous mailed ballot, the voter may be issued a replacement ballot to be filled out and fed by the voter into the electronic vote tabulator or be issued a provisional ballot. N.M. Stat. Ann. § 1-6-16.1 (2023). The Rule is at odds with this provision of the New Mexico Election Code because a voter who invokes this statute upon not receiving a requested mail ballot will be allowed to cast a ballot but may be put at risk of violating the Rule.

18. New Mexico law also provides for special mailed ballot voting to protect those who have survived violence from an intimate partner by utilizing a confidential address program. N.M. Stat. Ann. § 1-6C-1, et seq. (2019). Qualified participants in the Intimate Partner Violence Survivor Suffrage Act program vote exclusively by mailed absentee ballot and are assigned a random identifier and a verification code for each election. The administrator of the program requests from each appropriate county clerk a ballot to be used by the voter-participant registered to vote in that county. The request does not reveal the name or the address of the voter-participant, but rather, only the random identifier and verification code associated with the voter-participant. The Rule does not accommodate such a vital and necessary mailed ballot voting scheme for this population of voters because it would standardize envelope design and create a Mail-In and Absentee Participation List with the names and addresses of all individuals.

19. For the reasons discussed throughout this declaration, I must act now to align New Mexico's administration of mail voting with the requirements of the Rule. Given the very short time available and the untested technology that the Rule relies on, I have profound concerns that the Rule will prevent eligible voters from voting, including in the November 2026

general election. My office will strive to ensure that voters have an opportunity to vote, and the Rule imposes significant costs on doing so.

20. Should the USPS Rule be finalized and issued, immediate action from me and the team in the Secretary of State's Office would be required to implement its provisions and to coordinate with other state and local agencies across New Mexico. The Rule provisions require drastic changes to the current procedures and workflow, require significant legal analysis that will translate to critical training and outreach to all local election officials, state voter registration agencies, as well as current and future registered voters. We have already received many voter questions about the potential changes and expect to receive many more now that the Rule is finalized. We do not have any resources to dedicate to this effort. This would require a shift of 100% of our elections staff to these efforts and will dramatically interfere with our ability to prepare for the upcoming general election resulting in the need for additional staff and extended work hours.

21. It is my understanding that the Rule requires that every voter who will receive an absentee or mail-in ballot must be enrolled with USPS. To enroll voters, elections officials or other authorized personnel must access the USPS Ballot Portal to enter each voter's name, address, unique Intelligent Mail barcode from the outbound ballot envelope, unique Intelligent Mail barcode from the return ballot envelope, and the originating election office state. The information would have to be provided at least 30 days before the date of the federal election or by the date by which ballots may begin to be mailed to voters under state law, although supplemental submissions can be made until the last day that ballots may be mailed out to voters under state law. And *before* election officials can even begin enrolling voters in the process above, they must certify that they have submitted outbound/return envelopes for Mailpiece

Design Analyst review and received feedback from USPS. This sequencing provides additional time pressure, especially given how many jurisdictions will be simultaneously submitting for review. In New Mexico, we would have to provide that information by October 4, 2026 (30 days before the election) or by October 6, 2026, the date New Mexico county clerks begin sending out mail ballots, and we would thereafter have to update the information on a near-daily basis to include eligible voters who registered after that date or requested a mail ballot after that date. The Rule requires "[a] separate submission . . . in connection with each Outbound Federal Ballot mailing." The Rule provides that USPS "will provide a state-specific Mail-In and Absentee Participant List" ("USPS Mail Ballot List") to States' chief election officials "[o]n or about the date of the federal election." I further understand that if a voter is not enrolled with USPS, USPS will not accept the outbound mail ballot envelope for mailing.

22. These requirements impose significant financial costs on my office and threaten to disenfranchise voters in New Mexico.

23. Implementation of the provisions within the Rule would create a significant hardship on the election community within the state of New Mexico. The provisions make drastic changes to the current procedures and workflow, require significant legal analysis that will translate to critical training and outreach to all local election officials, state voter registration agencies, as well as current and future registered voters. Furthermore, the Rule will require significant enhancements to our statewide voter registration database and ballot management systems that will require significant time and effort working in partnership with several vendors, and significant costs for which we do not currently have funds appropriated to support. Any technology or implementation failure may lead to mail ballot delivery failures and a compromised election. We do not have any resources to dedicate to this effort. This would

require a shift of 100% of our elections staff to these efforts and will dramatically interfere with our ability to prepare for the upcoming elections resulting in the need for additional staff and extended work hours.

24. As a result of the Rule, my office must immediately prepare and update guidance for local elections offices to ensure a consistent approach across New Mexico's 33 counties. This guidance would have to address topics such as using the USPS portal, ensuring timely enrollment of mail voters as voter rolls change leading up to the election, cybersecurity protection, and specific advice on how the Rule applies to New Mexico's election laws and practices, specifically, the Native American Voting Rights Act, voters that request but do not receive a mail ballot before election day, and the Intimate Partner Suffrage Program. These preparations and updates will require significant time, personnel, and money.

25. Based on 2024 general election figures, New Mexico anticipates mailing ballots to approximately 111,403 voters during the 2026 general election during the period from October 6, 2026, to October 20, 2026.

26. In my experience, implementing new election technology is highly complicated and takes time to get right. But even if USPS's untested Ballot Portal works as intended and does not experience technical problems—which seems unlikely given the short development and implementation window—enrolling all 1,444,511 registered voters with USPS will be a massive undertaking. While we only anticipate mailing 111,403 ballots to voters this election, we do not know which voters will request to vote by mail; therefore, we will need to enroll all 1,444,511 registered voters so that if they request a mail ballot, we will be able to send one. This task will be significantly complicated by the influx of registration updates and changes that elections officials typically receive in the months, weeks, and days before any election. My office

processes replacement absentee ballots on a regular basis, including in the lead up to election day. In the 30 days before the 2024 election, the office processed 37,697 address changes. We expect to process a similar number this year.

27. Before election officials can even become authorized to use the Ballot Portal, they must be approved by the Chief Election Official of the State, which itself requires advance coordination among state and county election offices to determine which staff throughout the state will become authorized and trained to use the Ballot Portal. *See* 39 CFR Part 111, Supplementary Information at 14.[1] Once election officials become authorized users—a process that may also create delay and administrative burden—the officials cannot enroll voters with USPS in bulk. Instead, elections officials must enroll voters separately for each mailing. Sometimes, a mailing contains only a single piece of ballot mail, such as when elections officials mail a replacement ballot. Elections officials will not only be required to process these registration updates within their own systems, but they will bear the added burden of processing registration updates in an entirely new system operated by USPS—about which officials currently have no concrete operational information.

28. New Mexico law allows a voter to spoil an unvoted mail ballot and request a new ballot up to election day. N.M. Stat. Ann. § 1-6-16.1 (2023) To ensure that voters receive these ballots to which they are entitled under state law, the information associated with these new ballots also would need to be provided to USPS.

29. Based on what information is available, I estimate that it will take thousands of hours for elections staff to become authorized users of the USPS Ballot Portal and enroll all voters, assuming there are no delays caused by technical or processing difficulties. There would

[1] Page citations to the Rule use the numbering from the preview document. *See* https://public-inspection.federalregister.gov/2026-17238.pdf.

be a need for USPS to provide training that will then need to extend to all users in New Mexico. I know that each task we have completed through prior USPS processes has always been complex and burdensome, usually requiring outreach to move forward or resolve technical issues. Given that technical and processing delays are common, especially with implementing new, untested technology and the scale of the effort, any unexpected technological and processing difficulties could increase the practical and financial burden on New Mexico exponentially. And if the system fails, New Mexico may be unable to mail ballots to voters at all.

30. Local election officials receive and process voter registrations and mail ballot applications on an ongoing basis. Each application results in an update to SERVIS, which serves as the primary source of voter data for all other systems and processes critical to the administration of the current election. Data is updated in real time and exchanged with other systems regularly. The file is dynamic and changing regularly throughout the day; therefore, it is impossible to maintain a separate static file maintained by the USPS. It will not be current or accurate.

31. In New Mexico, USPS is the only way in which many voters receive a ballot. Since I began working in the office eleven years ago, USPS is the only way we have mailed ballots to voters. All of our administrative processes and systems have been developed with the use of USPS. It is not realistic to use any other option based on the amount of time and lack of resources, including staff, vendor staff, and budget. It is also critical that we have sufficient time and resources to train internally and all county clerk offices. There may also be security risks in the use of private mail carriers.

32. Access to mail-in voting is especially important for low-income, rural, and vulnerable populations, including voters with disabilities, who may lack access to transportation to either vote in-person or receive and return their ballot through some other means.

33. I am particularly concerned that USPS is only preparing for a seamless transition and that it has not prepared contingency plans if the Ballot Portal does not work as intended or other errors impede the process. For example, USPS has not provided any information about how it will help election administrators facing technical difficulties in uploading information to the Ballot Portal. Nor has it provided any information about how errors by USPS will be corrected. USPS states only that it will inform Authorized Ballot Mailers of "escalation procedures" if they decide to challenge USPS's rejection of ballot mail. *See* 39 CFR Part 111, Supplementary Information at 58. USPS also says it will not develop any new appeal procedures for election mail, but USPS's standard processes won't work in the election context, where time is of the essence, and any errors must be resolved quickly to prevent voters from losing the fundamental right to vote.

34. The risks of error are heightened here because USPS has not committed to providing any training to election administrators regarding the Ballot Portal or any other aspect of the process changes. While the Rule contemplates that States and local election offices will soon begin registering tens of millions of voters into the Ballot Portal, USPS has provided virtually no information on what the Ballot Portal will look like, how it will operate, how users become authorized to use it, or how long it will take to upload voter information into the Ballot Portal. In fact, USPS explicitly "declines to conduct, publish, or otherwise disclose any additional analysis or information concerning the rule or Portal." *See* 39 CFR Part 111, Supplementary Information at 81. And while USPS indicates that it is still developing training

for internal Postal Service employees on such topics as mail ballot design and verification of ballot mail, it has not committed to providing any training to state and local election officials. Nor does USPS indicate when the Ballot Portal will become accessible for authorized users so that they can begin learning the system before they are required to start adding registered voters into the Ballot Portal under the pressure of election deadlines.

35. USPS claims that the changes imposed by the Rule are modest and have been issued as "best practices" guidance in the past. But that is wrong. The Rule imposes dramatic changes with sweeping impacts. USPS has never required the Chief Election Officer of each state to authorize individual election workers to handle election mail, to require ballot design review before election mail can be sent, or to register each voter into a Ballot Portal before the voter can be mailed a ballot. Nor has it ever transmitted information about every mail-in voter in the country to unspecified law enforcement officials for vague and unsubstantiated reasons. The threat of disclosing such information to law enforcement officials itself could suppress voter participation. And each of the process changes create delay and administrative burden at each step, creating dangerous bottlenecks in the short time before elections that increase the risks of cascading impacts and disenfranchisement at an alarming scale. USPS claims it will make further guidance documents available to explain in detail how to use the Portal "shortly," 39 CFR Part 111, Supplementary Information at 55, but election officials must begin work now.

36. It is far too late in the election cycle to introduce such dramatic changes. USPS itself encourages the Chief Election Official in each State to provide USPS 90 days advance notice if the State plans to send federal election ballots, claiming such notice is "logistically beneficial" so that USPS can "conduct outreach on mail preparation, provide resources related to IMbs, and offer guidance on how [to] access and use the Federal Mail Ballot Portal." *See* 39

CFR Part 111, Supplementary Information at 45. But that 90-day window has already passed, and there is virtually no time for either USPS or States to prepare for such a dramatic change in election mailing. And USPS has done no advance work with States to begin educating election officials about any of these changes.

37. These risks are compounded by USPS's lack of prior experience in the type of election administration duties it will assume under the Rule, and uncertainty over whether USPS will devote sufficient resources to process the massive amount of data it will receive from all 50 states in a condensed timeframe. USPS has confirmed that it does not expect "to require additional staff" or for implementation of the Rule to impose "a significant burden on employees." *See* 39 CFR Part 111, Supplementary Information at 74. This does not inspire confidence. It suggests that USPS is not adequately preparing for all possible contingencies and will not have adequate staffing to address technical failures in the Ballot Portal or to timely address appeals related to rejected election mail. The stakes are incredibly high, with any systemic errors, technological difficulties, or improper staffing threatening to disenfranchise voters at a massive scale.

38. As a result of the Rule and to mitigate the impact of all this uncertainty and turmoil, New Mexico will have to devote significant time, personnel, and money to update training materials for local elections officials and their staff. Elections staff would need to be trained on the USPS processes and technology. Training materials would have to specifically detail what steps they must take to access the USPS Ballot Portal, enroll voters in the Portal, and to process election mail. This is yet another aspect of the Rule that will necessarily divert a significant majority of our team's resources from other important election administration tasks.

39. I am particularly concerned about the Rule's statement that ballot mailings that do not comply with the Rule "will not be accepted and will be returned." This means that USPS will refuse to deliver ballots to citizens who are properly registered to vote and entitled to vote by absentee or mail-in ballot under state law.

40. Sending mail ballots in a timely fashion is not only required by state and federal law, but is critical to ensuring that as many eligible New Mexicans as possible can exercise their right to vote. In the 2024 general election, 111,403 eligible New Mexico voters, or 12% of the voter turnout, voted by mail. This method of voting is particularly important for the many New Mexicans who live in extremely remote areas, have suffered intimate partner violence, or have mobility limitations.

41. The Rule creates a very substantial risk that at least some ballot mailings will be delayed or not be transmitted at all. For example, the USPS Ballot Portal does not currently exist and has not faced the test of elections officials across the country attempting to concurrently enter tens of millions of voters' names and other information in a short window of time. If the Ballot Portal fails, the Rule would prevent **any** voters from receiving ballots. Moreover, if there are typographical or inadvertent administrative errors by USPS or elections officials, eligible voters will not timely receive mail ballots to which they are entitled under state law. And if USPS does not complete the review of ballot mail envelopes required by the Rule, that would also prevent voters from receiving absentee or mail-in ballots.

42. Even if the USPS Ballot Portal and enrollment system works as intended, the Rule still risks voter confusion and disenfranchisement. In my experience administering elections, changes to election procedures in the time immediately preceding an election can cause significant voter confusion. The Rule's complicated requirements will likely lead some eligible

voters to misunderstand whether they are able to use a mail ballot. Some eligible voters will determine that the added requirements make voting too confusing to be worthwhile. The result of this confusion will be that fewer eligible voters decide to cast a ballot.

43. The Rule also requires the expenditure of considerable staff time to address voter concerns and proactively engage in public education about the Rule's changes. Following the Proposed Rule, my office received nearly 100 inquiries from voters asking whether USPS would deliver ballots to and from voters. I anticipate considerably more inquiries from voters as a result of the Final Rule. Fielding these questions requires staff time that would otherwise be spent preparing for the 2026 general election.

44. In addition, the Rule will require a wide-ranging public education campaign to ensure that eligible voters understand the Rule's requirements, and how they may impact a citizen's ability to vote by mail.

45. I estimate that such a public education effort would likely cost $1,000,000 to $1,500,000. The campaign itself would likely cost $100,000 to $150,000 and require a time-consuming Request for Purchase process to initiate. A single statewide mailer costs $800,000 and other forms of information dissemination will have additional costs.

46. Finally, confusion stemming from the Rule and any issues with its implementation that compromise the timely delivery of mail ballots are likely to severely harm the reputation of my office. In my experience, voters tend to blame state and local elections officials for administrative issues, even if fault may belong to a third party like USPS. This can reduce trust in our electoral system and cause difficult-to-reverse reputational harms.

47. The harms that stem from the Rule are particularly acute because the requirements take effect while my office is busy taking other steps to prepare for the 2026 general election.

48. County clerks and third-party vendors must begin mailing ballots for the 2026 general election in the coming weeks. Consistent with federal law, agencies mail ballots to military and overseas voters by September 19, 2026, 45 days before the general election. 52 U.S.C. § 20302(a)(1)-(3), (8)(A). In addition, state law requires that county clerks begin mailing absentee ballots to all other eligible voters no later than October 6, 2026. N.M. Stat. Ann.§ 1-6-22.1 (C). County clerks and third-party vendors will continue mailing ballots through October 27, 2026, consistent with state law. N.M. Stat. Ann. § 1-6-16 (C).

49. Additionally, my office will need to continue to register those who are eligible to vote in New Mexico. New Mexico allows qualified individuals to register up to 28 days before Election Day, *see* N.M. Stat. Ann. §1-4-8 (B) (2023), and in person during early voting and on Election Day, *see* N.M. Stat. Ann. §1-4-5.7 (2023); 52 U.S.C. § 20507(a)(1) (requiring states to permit registration up to 30 days before a federal election). New Mexicans can register to vote online, at their county clerk's office, at various state social service agencies, and through New Mexico's Department of Motor Vehicles when they submit sufficient information of their voter qualifications (including citizenship) through their transaction. Individuals must verify their eligibility by providing a driver's license, state identification number issued by the motor vehicle division, or partial social security number. N.M. Stat. Ann. §1-4-5.4 (B) (2019). During the weeks and months leading up to an election, we see a high volume of voters registering or updating their registrations, resulting in flux in voter rolls and requiring time from election officials.

50. In compliance with the NVRA "quiet period" for voter registration, New Mexico does not systematically remove voters from the rolls during the 90 days prior to a federal election unless a statutory exception applies. *See* 52 U.S.C. § 20507(c)(2)(A), 3(A)-(B), 4(A). New

Mexico does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests that his or her registration be canceled.

51. In sum, staff in our office must continue to process voter registration list changes up to and on Election Day. Registrants are constantly being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the 2026 election.

52. The steps necessary to comply with the Rule will divert time and attention from these other critical election preparations. For example, just depositing the election mail at the post office will become an exorbitantly time-consuming task. Before election mail is even brought to the post office, election staff "must segregate Outbound Federal Ballot Mail from other types of ballot mail, such as primary ballots, UOCAVA ballots, or ballots for state or local elections only." *See* 39 CFR Part 111, Supplementary Information at 56. And once at the post office, each piece of election mail will need to be individually scanned and processed by a postal service agent to "confirm the presence of scanned barcodes in the Federal Mail Ballot Portal." USPS estimates that such scanning alone could take a minute per piece of mail and that election staff will have to "remain at the postal retail location during the verification process." The amount of staff time spent processing election mail will increase exponentially. *See* 39 CFR Part 111, Supplementary Information at 57-58. If these preparations are delayed or not completed, that can have significant impacts on the conduct of the election and opportunities for voters. Compliance with the Rule will necessarily divert close to 100% of our understaffed team's resources from other important election administration tasks. The systematic and administrative changes required within the timeline involve drastic changes to the current procedure and workflow, which were not planned for from a budget perspective. These types of changes require several months of effort for development, programming, implementation, and testing, and

appropriated funds. We simply do not have the time or budgetary resources required for an effort of this type.

53. I am also deeply concerned about harms to the morale of election officials in my office and statewide resulting from the implementation of the Rule. I am also deeply concerned about harms to the morale of election officials in my office and statewide resulting from the implementation of the Rule. USPS waves away serious concerns about implementation and compliance with state law by stating, "States can easily avoid any effects on their state elections by either complying with the rule's requirements or by separating their federal ballots to exclude any non-federal elections." 39 C.F.R. Part 111, Supp. Info. at 78. This ignores both the serious concerns with the practical ability for USPS to carry out the requirements of the rule, and the fact that separating federal and non-federal elections, which are printed on the same ballot, is functionally impossible. USPS then asserts, despite the extensive evidence of compliance challenges provided in comments on the Proposed Rule, that implementation and compliance are completely feasible so long as states "make a good faith effort to comply with the rule." 39 C.F.R. Part 111, Supp. Info. at 70. As demonstrated above, this is not the case at all. My colleagues and I are acutely aware that the Rule's requirements to enable tracking of mail ballots sent to and returned by voters comes in the context of an Executive Order that directed federal agencies to prioritize the investigation and prosecution "of State and local officials . . . who issue Federal ballots to individuals not eligible to vote in a Federal election." Ex. Order 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17125, § 2(b) (March 31, 2026); *see also id.* § 5 (providing that "State or local election officials . . . [and] individuals involved in the administration of Federal elections; or public [] entities engaged in the printing, production, shipment, or distribution of ballots may be referred to the Department of

Justice for consideration of investigation or charges under" various federal criminal laws). The Executive Order also requires USPS to coordinate with its own Office of Inspector General and the Department of Justice "for investigation of suspected unlawful use of the mail involving Federal election materials." *Id.* § 3(c). USPS made clear the primary purpose of the Portal Data and the Lists is "to provide valuable insight" to law enforcement, specifically though disclosing "a list of individuals to whom states planned to mail a ballot (and who may potentially use the mail to vote), along with the associated barcode data," which in turn can purportedly "identify potentially anomalous incidents that may merit further investigation." *See* 39 C.F.R. Part 111, Supp. Info. at 60, 61. In a letter to Secretary Maggie Toulouse Oliver dated July 7, 2026, U.S. DOJ specifically threatened to prosecute election officials if noncitizens cast any ballots.

54. My colleagues and I are also acutely aware that President Trump has repeatedly claimed that there is widespread fraud allowing noncitizens to vote, even though in our experience as election officials noncitizen registration and voting are both extraordinarily rare.

55. I am worried that myself and other election officials could be targeted for federal investigation and even prosecution as a result of the Rule's mail ballot tracking system if the federal government believes, even incorrectly, that any of New Mexico's registered voters are not citizens. Threats of federal interference and threats of prosecution of election officials have generated an amount of uncertainty that election administrators now have to respond to and prepare for in addition to the regular planning associated with an election. The state hears from local administrators who are concerned about their ability to navigate scenarios of federal interference and how to communicate confidently with voters. Overall, the impact of these threats is costly disruption to the smooth and careful preparation for the general election.

56. In conclusion, the requirements of the Rule would impose significant and unbudgeted costs on the Secretary of State's Office and local election officials throughout New Mexico. The Office's FY2027 budget and the appropriation for the 2026 general election were developed before these requirements were known and do not include dedicated funding for the system modifications, vendor programming and testing, additional staffing and overtime, statewide training, voter outreach, or changes to ballot-mail materials that may be required. Historical expenditures demonstrate the substantial cost of these activities. In FY2025 alone, the Office incurred approximately $2.6 million in Election Fund expenditures for election-related postage, printing, technology agreements, and advertising. This amount represents existing election-administration costs and does not include any additional costs resulting from the Rule. The full financial impact of the Rule cannot yet be reasonably determined because USPS has not provided sufficient technical and operational information for the Office, its vendors, and county clerks to identify all required changes and obtain reliable estimates. Because the Rule was not anticipated during the budget process, the Office may need to seek additional funding from the Legislature or redirect limited resources from other planned and necessary election-administration activities. Additional legislative funding is not assured, and redirecting existing resources could compromise other responsibilities associated with administering the 2026 general election.

57. Any time spent by current staff on implementing the Rule would divert time and attention from other critical election preparation in the days leading up to the election, my office's busiest time. Our staff is already at capacity and dedicated to routine tasks and special projects that ensure New Mexico's elections run smoothly and every eligible New Mexican can exercise their right to vote. This work becomes more voluminous, significant, and urgent in the

months leading up to the election, when we must answer an increasing volume of questions and handle tasks related to, for example, campaign finance reporting, logic and accuracy testing, and voter challenges.

58. Each of these tasks and costs will divert scarce resources from other important election administration needs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 24, 2026, at Santa Fe, NM.

Mandy Vigil
State Elections Director
Office of the New Mexico Secretary of State

# Exhibit A

STATE OF NEW MEXICO
**MAGGIE TOULOUSE OLIVER**
SECRETARY OF STATE

July 2, 2026

By attachment to electronic mail only to:
PCFederalRegister@usps.gov

Mr. David Steiner
Director, Product Classification
United States Postal Service
475 L' Enfant Plaza SW, Room 4446
Washington, DC 20260-5015

Dear Director Steiner:

The Office of the Secretary of State of New Mexico (NM SOS) submits this letter in opposition to the United States Postal Service's (USPS) proposed rule "Ballot Mail for Federal Elections, 91 Fed. Reg. 32915" (proposed June 2, 2026, to be codified at 39 C.F.R. part 111) ("Proposed Rule").

The Notice of Proposed Rulemaking should be withdrawn to comply with the district courts' orders in *California v. Trump*, No. 1:26-cv-11581, Dkt. No. 191 (D. Mass. June 25, 2026), *available at* 2026 WL 1826490 (enjoining the USPS from implementing Section 3 of Executive Order 14399 and completing rulemaking) and *NAACP v. USPS*, No. 1:20-cv-02295, Dkt. No. 181 (D.D.C. July 1, 2026) (ordering that the "Postal Service is enjoined from implementing the standards and procedures described in the Proposed Rule").

Further, the Proposed Rule clearly is contrary to long-established federal law, not the least of which is the United States Constitution's unambiguous grant of authority to the States and Congress over the "Times, Places, and Manner of holding elections." U.S. Const. art. I, § 4.

Implementation of the Proposed Rule would constitute unlawful interference with New Mexico's election laws and also violate the USPS's own governing statutes by the exercise of authority that has not been conferred by Congress to the USPS. The USPS has no authority to impose restrictions on the administration of elections by altering and restricting access to postal delivery of mail ballots, as the Proposed



325 DON GASPAR, SUITE 300 | SANTA FE, NEW MEXICO 87501
PHONE: (505) 827-3600 OR (800) 477-3632 | FAX: (505) 827-8081
WWW.SOS.NM.GOV

STATE OF NEW MEXICO
**MAGGIE TOULOUSE OLIVER**
SECRETARY OF STATE

Rule purports to do. In addition to the myriad of legal arguments against the implementation of the Proposed Rule that has been advanced by numerous groups across the country, many of which the NM SOS fully endorses, I submit the following bases for opposition that are specific to New Mexico:

The Mail-In and Absentee Participation List procedures outlined in the Proposed Rule, to be codified at DMM 705.24.4 and DMM 705.24.5, do not consider the special circumstances surrounding New Mexico's large population of Native American voters. New Mexico is home to 23 Indian tribes, comprised of 19 pueblos, three Apache tribes and part of the Navajo Nation, covering approximately 12,000 square miles. Mail delivery to individual Native American voters is challenging due to the remoteness of residences. To addresses this difficulty, New Mexico's Native American Voting Rights Act allows members of the Indian nation, tribe or pueblo to request delivery of mailed ballots to a specified "government and official buildings on Indian nation, tribal and pueblo land where members of the Indian nation, tribe or pueblo may request delivery of mailed ballots." NMSA 1978 § 1-21A-8 (2023).

The Proposed Rule is certain to result in the ineligibility of these voters because the name and unique barcode applied to the outbound and return ballot mail envelope for such individuals will presumably be the residential address of the voter and thus not align with an official building address that they may choose to utilize under New Mexico law.

Next, New Mexico law also allows a voter who has applied for a mailed ballot but who has not timely received a ballot to go to a voting convenience center, and, after executing an affidavit stating that the person wishes to void any previous mailed ballot, the voter may be issued a replacement ballot to be filled out and fed by the voter into the electronic vote tabulator or be issued a provisional ballot. NMSA 1978 § 1-6-16.1 (2023). The Proposed Rule is at odds with this provision of the New Mexico Election Code because a voter who invokes this statute upon not receiving a requested mail ballot will be allowed to cast a ballot but may be put at risk of violating the Proposed Rule. As such, the process set forth in the Rule interferes with our state's authority to legislate the Times, Places, and Manner of holding elections.

The New Mexico legislature has established by law procedures for absentee voting that carefully protect the security and integrity of its elections. NMSA 1978 § § 1-6-1, et seq. (2018). The Absentee Voter Act grants a voter the right to vote absentee in all candidate



325 DON GASPAR, SUITE 300 | SANTA FE, NEW MEXICO 87501
PHONE: (505) 827-3600 OR (800) 477-3632 | FAX: (505) 827-8081
WWW.SOS.NM.GOV

STATE OF NEW MEXICO
**MAGGIE TOULOUSE OLIVER**
SECRETARY OF STATE

contests and on all ballot questions; it establishes a voluntary permanent absentee voter list; sets forth procedures for mail ballot applications; allows third-party registration agents to collect applications for mailed ballots; requires each of the thirty-three county clerks to maintain an "absentee ballot register" and a "mailed ballot register"; prescribes the form of official inner envelopes for use in sealing the completed mailed ballot and the official mailing envelopes for use in returning the inner envelope; and a detailed procedure for the handling of mailed ballots by an absentee voter election board. All these duly enacted laws are improperly, indeed, unlawfully threatened to be upended by the Proposed Rule.

New Mexico law also provides for special mailed ballot voting to protect those who have survived violence from an intimate partner by utilizing a confidential address program. NMSA 1978 § 1-6C-1, et seq. (2019). Qualified participants in the Intimate Partner Violence Survivor Suffrage Act program vote exclusively by mailed absentee ballot and are assigned a random identifier and a verification code for each election. The administrator of the program requests from each appropriate county clerk a ballot to be used by the voter-participant registered to vote in that county. The request does not reveal the name or the address of the voter-participant, but rather, only the random identifier and verification code associated with the voter-participant. Clearly, the Proposed Rule does not accommodate such a vital and necessary mailed ballot voting scheme for this population of voters because it would standardize envelope design (to be codified at DMM 705.24.3.1-2) and create a Mail-In and Absentee Participation List with the names and addresses of all individuals (to be codified at DMM 705.24.4).

And finally, while the issues of voter confusion and significant financial burdens caused by the Proposed Rule are not unique to New Mexico, they warrant mention here. Having new, different rules apply to federal elections regarding the use of mailed ballots will cause confusion and aggravation, particularly to voters who may be left off the Participation List despite having previously voted by mail without being denied that right. Moreover, the cost of reprogramming election systems to accommodate different rules for mailed ballots in federal and state/local elections, and training election workers to handle the distinction, will be prohibitively high.

New Mexico elections have been ranked seventh in the nation by the prestigious Massachusetts Institute of Technology's (MIT) 2024 Elections Performance Index, in recognition of the state's high performance in election administration. One of the



325 DON GASPAR, SUITE 300 | SANTA FE, NEW MEXICO 87501
PHONE: (505) 827-3600 OR (800) 477-3632 | FAX: (505) 827-8081
WWW.SOS.NM.GOV

STATE OF NEW MEXICO
**MAGGIE TOULOUSE OLIVER**
SECRETARY OF STATE

categories that is considered in MIT's measure of safe, secure, and accurate elections is the administration of absentee voting by mail. The Proposed Rule amounts to the proverbial wrench being thrown into the works of highly performing machinery that will jam the gears and send the entire operation into disorder. New Mexico's elections must not be upended by the provisions of the Proposed Rule, and I urge you to withdraw it.

Respectfully submitted,

Maggie Toulouse Oliver

Maggie Toulouse Oliver
New Mexico Secretary of State



325 DON GASPAR, SUITE 300 | SANTA FE, NEW MEXICO 87501
PHONE: (505) 827-3600 OR (800) 477-3632 | FAX: (505) 827-8081
WWW.SOS.NM.GOV