**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br>*Plaintiffs,*<br>v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>*Defendants.* | Case No. _______________ |

# DECLARATION OF SARAH COPELAND HANZAS

I, Sarah Copeland Hanzas, declare as follows:

1. I am a resident of the State of Vermont. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with Secretary of State staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Secretary of State in Vermont. In my role, I am responsible for the execution and enforcement of all state and federal laws relating to elections.

3. I have served as the Secretary of State since January 2023. Before my role, I served as a House Representative for eighteen years. I served as the chair of the House Government Operations Committee from 2019 to 2022. This committee reviews all election-related legislation in the State of Vermont.

4. My office is responsible for administering state and federal elections in Vermont. This responsibility encompasses voter registration, maintaining and updating voter rolls, issuing

ballots to registered voters, tabulating votes, and certifying results in all elections for federal office, among numerous other tasks. Vermont elections are run at the local level, with ultimate responsibility residing with the town clerk and the board of civil authority of each municipality. The Vermont Secretary of State is responsible for managing a centralized election management system, supporting local officials in using the system, and providing training, guidance, and access to information in accordance with state and federal law.

5. The Secretary of State is the state's Chief Officer of Elections, responsible for executing and enforcing all state and federal law relating to elections within the state. *See* 17 V.S.A. § 2103(40). The office is responsible for implementing the Secretary of State's election responsibilities, including enforcing laws and providing technical information to the public and other parties. Vermont law charges my office with preventing disenfranchisement and ensuring that all eligible voters who want to vote are able to do so.

6. Municipal elections in Vermont are administered at the local level. My office's Elections Division works closely with town, city, and county clerks across the state to ensure smooth administration. For biennial state and federal elections, the Elections Division plays a central role. We administer state and federal election law. We offer guidance to parties, aspiring candidates, and clerks. We promote voter registration and spearhead efforts to increase participation. We train clerks on election procedures and connect them with data to use as they maintain voter checklists. We provide systems, equipment, and supplies that are fundamental to the administration of elections. We receive many candidate filings directly and coordinate with clerks on others. We manage the ballot design and printing process as well as the statewide mailing of General Election ballots. We facilitate the statewide canvass of results and the post-election audit. We serve as an intermediary to federal partners and security professionals. We

help election officials deal with routine questions and emergencies that arise before, during, and after Election Day. The Elections Division does not have jurisdiction over municipal elections. We do serve as a resource to election officials for local elections.

7. In my role as Secretary of State, I am responsible for overseeing the correct and legal administration of election processes like NVRA, developing election guidance, providing the statewide voter registration database, ballot production for all statewide and general elections, overseeing voter registration, and maintaining partnerships with voter registration agencies and third parties who register voters. My office has vast responsibilities to prepare for an election. This preparation includes training and supporting town clerks as they conduct voter checklist maintenance, ensuring our new election management system is ready to be used in its first election, coordinating and preparing for the primary and general election ballots to be printed and mailed, and answering countless questions from the parties, candidates, and the public. We have also been engaged in an extensive outreach and public education campaign to reassure voters that the election will be run effectively, fairly, and impartially.

8. My office and 247 Town Clerks statewide are currently preparing to administer the November 2026 general election. My office has been preparing for the 2026 election since the middle of 2025. Federal, state, and local races will be on the ballot.

9. Vermont provides a mail ballot to all active registered voters. Vermont is a universal vote-by-mail state. See 17 V.S.A. § 2537a. Vermont sends these ballots to voters through the United States Postal Service ("USPS").

10. In Vermont, ballots are mailed by our printing vendor. Mail ballot envelopes are designed by the Secretary of State and must conform with state law. See 17 V.S.A. § 2537a. Mail ballots are not required by Vermont law to include Intelligent Mail barcodes; however,

Vermont uses Intelligent Mail barcodes. Our print vendor begins to mail ballots to eligible voters no later than 43 days before the election and must complete the mailing by October 1.

11. Town Clerks continue to send mail ballots as additional voters register to vote or request an absentee ballot. In 2024, more than 22,000 Vermonters – or about 5% of active registered voters – registered between the initial ballot mailing and Election Day.

12. I am familiar with the Notice of Proposed Rulemaking issued by the United States Postal Service (USPS) that was published in the Federal Register on June 2, 2026. My office submitted a comment on the Proposed Rule expressing opposition and identifying specific concerns, including: state sovereignty, rushed implementation, financial burden, federal interference in state and local elections, voter confusion, impact on a strained USPS system, voter privacy, and lack of necessity for the federal government to interject itself into state-run elections. A true and correct copy of that comment letter is attached to this declaration as Exhibit A.

13. I am also familiar with USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule"), which was made available for public preview at https://public-inspection.federalregister.gov/2026-17238.pdf before its scheduled publication in the Federal Register on August 26, 2026. That Rule will imminently cause significant harm, confusion, and disruption in Vermont election administration while also imposing unrecoverable costs for Vermont.

14. For the reasons discussed throughout this declaration, I must act now to align Vermont's administration of mail voting with the requirements of the Rule. Given the very short time available and the untested technology that the Rule relies on, I have profound concerns that the Rule will prevent eligible voters from voting, including in the November 2026 general

election. My office will strive to ensure that voters have an opportunity to vote, and the Rule imposes significant costs on doing so.

15. As the Chief Election Official for Vermont, I have already needed to respond to the Proposed Rule. My office has been in close communication with Vermont's city and town clerks who administer local, state, and federal elections. This outreach has focused on the complications of adding a federal layer to the state's universal vote-by-mail system, which has been operating smoothly since 2020. Additionally, my office has heard from a significant number of Vermonters who are already concerned about the USPS's mail service before the rule's implementation and are alarmed that they will not receive their ballot promptly as a result of this Rule.

16. It is my understanding that the Rule requires that every voter who receives an absentee or mail-in ballot must be enrolled with USPS. To enroll voters, election officials or other authorized personnel must access the USPS Ballot Portal to enter each voter's name, address, unique Intelligent Mail barcode from the outbound ballot envelope, unique Intelligent Mail barcode from the return ballot envelope, and the originating election office state. The information would have to be provided at least 30 days before the date of the federal election or by the date by which ballots may begin to be mailed to voters under state law, although supplemental submissions can be made until the last day that ballots may be mailed out to voters under state law. And *before* election officials can even begin enrolling voters in the process above, they must certify that they have submitted outbound/return envelopes for Mailpiece Design Analyst review and received feedback from USPS. This sequencing provides additional time pressure, especially given how many jurisdictions will be simultaneously submitting for review. In Vermont, we would have to provide that information by October 1, 2026, and we

would thereafter have to update the information on a near-daily basis to include eligible voters who registered after that date or requested a mail ballot after that date. The Rule requires "[a] separate submission . . . in connection with each Outbound Federal Ballot mailing." The Rule provides that USPS "will provide a state-specific Mail-In and Absentee Participant List" ("US Mail Ballot List") to States' chief election officials "[o]n or about the date of the federal election." I further understand that if a voter is not enrolled with USPS, USPS will not accept the outbound mail ballot envelope for mailing.

17. These requirements impose significant financial costs on my office and threaten to disenfranchise voters in Vermont.

18. I have concerns about the feasibility of USPS implementing this system in a timely and accurate fashion in the limited time remaining before the November 2026 general election. Technological or implementation failure may lead to the inability of Vermont to deliver mail ballots to voters and conduct the election in accordance with state and federal law. It is currently less than a week from when we need to provide our mailing list to our print and mail vendor. My staff, the city and town clerks, and the vendor have not seen or been trained on the new USPS system. We are not alone in this lack of knowledge. Election officials across the country are in the same awkward and difficult position. The deadlines for the General Election are static and not movable to accommodate the rushed implementation of a new federal IT system. It is unclear to me if any election official has been involved in the development and testing of the new system. Without frontline input, it is difficult to imagine how the USPS understands the impact these new requirements will have on election officials in Vermont or nationally. The 2026 election will be Vermont's 4th election using universal vote-by-mail. Vermonters are accustomed to this system, and they vote early with mailed ballots in a large

majority. Universal vote-by-mail has increased our voter participation. We have not heard broad concerns about mailing and returning our ballots. The Proposed Rule creates administrative hassle, overhead, and complication to a system that has functioned well.

19. As a result of the Rule, my office must immediately prepare and update guidance for local elections offices to ensure a consistent approach across Vermont's 247 cities and towns. This guidance would need to address topics such as using the USPS portal, ensuring timely enrollment of mail voters as voter rolls change leading up to the election, cybersecurity protection, and any voter privacy concerns. The USPS has not addressed any implications for our voter confidentiality program. These preparations and updates will require significant time, personnel, and money.

20. Vermont anticipates mailing ballots to approximately 460,000 voters during the 2026 general election during the period from September 19 to October 1.

21. In my experience, implementing new election technology is highly complicated and takes time to get right. But even if USPS's untested Ballot Portal works as intended and does not experience technical problems—which seems unlikely given the short development and implementation window—enrolling all 460,000 voters with USPS will be a massive undertaking. This task will be significantly complicated by the influx of registration updates and changes that election officials typically receive in the months, weeks, and days before any election. As previously noted, Vermont town clerks continue to send mail ballots as additional voters register to vote and request absentee ballots. In 2024, more than 22,000 Vermonters – or about 5% of active registered voters – registered between the initial ballot mailing and Election Day.

22. Before election officials can even become authorized to use the Ballot Portal, they must be approved by the Chief Election Official of the State, which itself requires advance

coordination among state and county election offices to determine which staff throughout the state will become authorized and trained to use the Ballot Portal. *See* 39 CFR Part 111, Supplementary Information at 14.[1] Once election officials become authorized users—a process that may also create delay and administrative burden—the officials cannot enroll voters with USPS in bulk. Instead, election officials must enroll voters separately for each mailing. Sometimes, a mailing contains only a single piece of ballot mail, such as when election officials mail a replacement ballot. Election officials will not only be required to process these registration updates within their own systems, but they will bear the added burden of processing registration updates in an entirely new system operated by USPS—about which officials currently have no concrete operational information.

23. Based on what information is available, I cannot accurately estimate how long it will take elections staff to become authorized users of the USPS Ballot Portal and enroll all voters, even assuming there are no delays caused by technical or processing difficulties. But technical and processing delays are common, especially with implementing a new, untested technology and process. Given the scale of the effort, any unexpected technological or processing difficulties could increase the practical and financial burden on Vermont exponentially. And if the system fails, Vermont may be unable to mail ballots to voters at all.

24. Of course, it is not just Secretary of State staff that would need to become capable in the system. It will additionally be our city and town clerks who will need to mail ballots and update the voter checklist. These updates are ongoing all the way up to Election Day.

---

[1] Page citations to the Rule use the numbering from the preview document. *See* https://public-inspection.federalregister.gov/2026-17238.pdf.

25. In Vermont, USPS is how the vast majority of voters receive a ballot. In 2024, more than 237,000 Vermont citizens, or 64% of voters, voted early, largely by returning the ballot by mail. Vermont successfully implemented universal vote-by-mail in 2020 without federal oversight or micromanagement. Our mailing and tracking system is efficient and works for Vermonters. If we could not meet the requirements of USPS and had to pursue alternate shipping companies, we would add significant delay, confusion, and cost. Across our rural state, access to mail-in voting is especially important for low-income and other vulnerable populations, including voters with disabilities, who may lack access to transportation to either vote in-person or to receive and return their ballot through some other means.

26. I am particularly concerned that USPS is only preparing for a seamless transition and that it has not prepared contingency plans if the Ballot Portal does not work as intended or other errors impede the process. For example, USPS has not provided any information about how it will help election administrators facing technical difficulties in uploading information to the Ballot Portal. Nor has it provided any information about how errors by USPS will be corrected. USPS states only that it will inform Authorized Ballot Mailers of "escalation procedures" if they decide to challenge USPS's rejection of ballot mail. *See* 39 CFR Part 111, Supplementary Information at 58. USPS also says it will not develop any new appeal procedures for election mail, but USPS's standard processes won't work in the election context, where time is of the essence, and any errors must be resolved quickly to prevent voters from losing the fundamental right to vote.

27. The risks of error are heightened here because USPS has not committed to providing any training to election administrators regarding the Ballot Portal or any other aspect of the process changes. While the Rule contemplates that States and local election offices will

soon begin registering tens of millions of voters into the Ballot Portal, USPS has provided virtually no information on what the Ballot Portal will look like, how it will operate, how users become authorized to use it, or how long it will take to upload voter information into the Ballot Portal. In fact, USPS explicitly “declines to conduct, publish, or otherwise disclose any additional analysis or information concerning the rule or Portal.” *See* 39 CFR Part 111, Supplementary Information at 81. And while USPS indicates that it is still developing training for internal Postal Service employees on such topics as mail ballot design and verification of ballot mail, it has not committed to providing any training to state and local election officials. Nor does USPS indicate when the Ballot Portal will become accessible for authorized users so that they can begin learning the system before they are required to start adding registered voters into the Ballot Portal under the pressure of election deadlines.

28. USPS claims that the changes imposed by the Rule are modest and have been issued as “best practices” guidance in the past. But that is wrong. The Rule imposes dramatic changes with sweeping impacts. USPS has never required the Chief Election Officer of each state to authorize individual election workers to handle election mail, to require ballot design review before election mail can be sent, or to register each voter into a Ballot Portal before the voter can be mailed a ballot. Nor has it ever transmitted information about every mail-in voter in the country to unspecified law enforcement officials for vague and unsubstantiated reasons. The threat of disclosing such information to law enforcement officials itself could suppress voter participation. And each of the process changes creates delays and administrative burdens at each step, creating dangerous bottlenecks in the short time before elections that increase the risks of cascading impacts and disenfranchisement at an alarming scale. USPS claims it will make further

guidance documents available to explain in detail how to use the Portal "shortly," 39 CFR Part 111, Supplementary Information at 55, but election officials must begin work now.

29. It is far too late in the election cycle to introduce such dramatic changes. USPS itself encourages the Chief Election Official in each State to provide USPS 90 days advance notice if the State plans to send federal election ballots, claiming such notice is "logistically beneficial" so that USPS can "conduct outreach on mail preparation, provide resources related to IMbs, and offer guidance on how [to] access and use the Federal Mail Ballot Portal." *See* 39 CFR Part 111, Supplementary Information at 45. But that 90-day window has already passed, and there is virtually no time for either USPS or States to prepare for such a dramatic change in election mailing. And USPS has done no advance work with States to begin educating election officials about any of these changes.

30. These risks are compounded by USPS's lack of prior experience in the type of election administration duties it will assume under the Rule, and uncertainty over whether USPS will devote sufficient resources to process the massive amount of data it will receive from all 50 states in a condensed timeframe. USPS has confirmed that it does not expect "to require additional staff" or for implementation of the Rule to impose "a significant burden on employees." *See* 39 CFR Part 111, Supplementary Information at 74. This does not inspire confidence. It suggests that USPS is not adequately preparing for all possible contingencies and will not have adequate staffing to address technical failures in the Ballot Portal or to timely address appeals related to rejected election mail. The stakes are incredibly high, with any systemic errors, technological difficulties, or improper staffing threatening to disenfranchise voters at a massive scale.

31. As a result of the Rule and to mitigate the impact of all this uncertainty and turmoil, Vermont will have to devote significant time, personnel, and money to update training materials for local elections officials and their staff. Elections staff would need to be trained on the USPS processes and technology. Training materials would have to specifically detail what steps they must take to access the USPS Ballot Portal, enroll voters in the Portal, and process election mail. This is yet another aspect of the Rule that will necessarily divert from a very small team who is has no capacity for these changes. This work would guarantee that our team would need to spend at least half of their time on the new system and on other important election administration tasks.

32. It is my understanding that the Rule requires that any mail containing a mail-in or absentee ballot for a federal election sent to or from voters must include the official Election Mail logo, be automation-compatible, bear a unique Intelligent Mail barcode with the Delivery Point ZIP Code embedded and a Federal Ballot Mail Service Type Identifier, and have undergone USPS review.

33. These requirements of the Rule necessitate immediate action from me and my team at the Vermont Secretary of State.

34. Our agency anticipates mailing approximately 460,000 ballots to voters during the 2026 general election.

35. Our agency/local election officials have consistently relied upon election mail guidance from USPS to design and mail ballots. We have relied on USPS guidance to prepare for the November 2026 general election. We started working on our ballot design and ballot tracking system in January 2026.

36. Vermont has already ordered mail ballots and envelopes for the 2026 federal election cycle, at a cost of 1.5 million. If the USPS rejected Vermont's ballot styles, that would certainly add high costs to our office. Particularly because this would be a rushed job and likely have an associated cost for the expedited printing. In public documents, USPS has confirmed that States or localities that have already printed their ballots cannot use those envelopes under the Rule and will need to order new envelopes and submit them for design review. *See* 39 CFR Part 111, Supplementary Information at 71.

37. In Vermont, as in much of the country, ballot envelopes vary by city and town. In Vermont, we have 494 different envelope styles. I am deeply concerned about the length of time it would take for USPS to conduct ballot design review for thousands of jurisdictions. For Vermont, with 494 different ballot styles and corresponding ballot envelope styles, the approval of our ballot envelope styles took approximately 3 months. After all of that work, the USPS has requested changes for 247 envelope styles. My team is still working through those changes. It is not clear from the rule whether the previous approval from USPS will be retracted, and that approval would need to be done again. While USPS indicates that Mail Design Analysts generally aim to provide feedback to mailers within two business days, this has not been the experience of our office. And USPS provided that estimate was before implementation of the Rule, and USPS does not indicate that final approval of all election mail envelope designs will occur in similar timeframes. In fact, USPS has disclaimed the need for additional staffing, even though thousands of jurisdictions nationwide are newly required to submit their outbound and return mail ballot envelopes for USPS inspection and approval. Nor does USPS specify how disputes regarding the design review process will be resolved. All of this creates a potential chokepoint in the entire mailing process because the ballot envelope design must be approved by

USPS before any information can even begin to be uploaded into the Ballot Portal. See 39 CFR Part 111, Supplementary Information at 47, 49-51, 74. Waiting on USPS to approve ballot design has the potential to seriously disrupt and delay carefully timed steps necessary to deliver mail ballots to Vermont voters. Indeed, delays in the approval process will prevent enrollment of voters on the USPS Mail Ballot List, foreclosing delivery of ballots. Managing the fallout from such a delay would force my office and local election officials to divert critical time and money from other election administration duties to expedite other steps in the mail ballot process. This includes needing to educate the public about the status of mail ballots and otherwise mitigate the harm from delays to the process.

38. I am particularly concerned about the Rule's statement that ballot mailings that do not comply with the Rule "will not be accepted and will be returned." This means that USPS will refuse to deliver ballots to citizens who are properly registered to vote and entitled to vote by absentee or mail-in ballot under state law.

39. Sending mail ballots in a timely fashion is not only required by state and federal law, but is critical to ensuring that as many eligible Vermont citizens as possible can exercise their right to vote. In the 2024 general election, more than 237,000 Vermont citizens, or 64% of voters, voted early, largely by mail. This method of voting is particularly important for the many Vermonters who live in rural communities and frequently work a considerable distance from their voting location.

40. The Rule creates a very substantial risk that at least some ballot mailings will be delayed or not be transmitted at all. For example, the USPS Ballot Portal does not currently exist and has not faced the test of elections officials across the country attempting to concurrently enter tens of millions of voters' names and other information in a short window of time. If the

Ballot Portal fails, the Rule would prevent any voters from receiving ballots. Moreover, if there are typographical or inadvertent administrative errors by USPS or election officials, eligible voters will not timely receive mail ballots to which they are entitled under state law. And if USPS does not complete the review of ballot mail envelopes required by the Rule, that would also prevent voters from receiving absentee or mail-in ballots.

41. Even if the USPS Ballot Portal and enrollment system works as intended, the Rule still risks voter confusion and disenfranchisement. In my experience administering elections, changes to election procedures in the time immediately preceding an election can cause significant voter confusion. The Rule's complicated requirements will likely lead some eligible voters to misunderstand whether they are able to use a mail ballot. Some eligible voters will determine that the added requirements make voting too confusing to be worthwhile. The result of this confusion will be that fewer eligible voters decide to cast a ballot.

42. The Rule also requires the expenditure of considerable staff time to address voter concerns and proactively engage in public education about the Rule's changes. When USPS announced the Proposed Rule, my office was inundated by public inquiries about the impact on Vermont elections if this rule is implemented. I anticipate thousands of additional inquiries from voters as a result of the Rule. Fielding these questions requires staff time that would otherwise be spent preparing for the 2026 general election.

43. In addition, the Rule will require a wide-ranging public education campaign to ensure that eligible voters understand the Rule's requirements and how they may impact a citizen's ability to vote by mail. This is particularly the case for Vermont residents, who are used to automatically receiving mail ballots and voting by mail under existing state law with no impediments.

44. I estimate that such a public education effort would likely cost at least a quarter of a million dollars. This is money that the office has not been appropriated or allocated for public outreach.

45. Finally, confusion stemming from the Rule and any issues with its implementation that compromise the timely delivery of mail ballots are likely to severely harm the reputation of my office. In my experience, voters tend to blame state and local election officials for administrative issues, even if fault may belong to a third party like USPS. This can reduce trust in our electoral system and cause reputational harms that are difficult to reverse.

46. The harms that stem from the Rule are particularly acute because the requirements take effect while my office is busy taking other steps to prepare for the 2026 general election.

47. Vermont must begin mailing ballots for the 2026 general election in the coming weeks. Consistent with federal law, agencies mail ballots to military and overseas voters by September 19, 2026, 45 days before the general election. 52 U.S.C. §§ 20302(a)(1)-(3), (8)(A). In addition, state law requires that the Secretary of State begin mailing ballots to all other eligible voters no later than October 1. See 17 V.S.A. § 2537a.

48. Additionally, my office will need to continue to register those who are eligible to vote. Vermont allows qualified individuals to register in days before Election Day and in person during early voting and on Election Day. See 17 V.S.A. § 2144a; 52 U.S.C. § 20507(a)(1) (requiring states to permit registration up to 30 days before a federal election). Vermonters can register to vote online, at their clerk's office, at various state social service agencies, and through Vermont's Department of Motor Vehicles. During the weeks and months leading up to an election, we see a high volume of voters registering or updating their registration, resulting in flux in voter rolls and requiring time from election officials.

49. In compliance with the NVRA "quiet period" for voter registration, Vermont does not systematically remove voters from the rolls during the 90 days prior to a federal election unless a statutory exception applies. See 52 U.S.C. §§ 20507(c)(2)(A), 3(A)-(B), 4(A). Vermont does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests his or her registration be canceled.

50. In sum, staff in our office must continue to process voter registration list changes up to and on Election Day. Registrants are constantly being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the 2026 election.

51. The steps necessary to comply with the Rule will divert time and attention from these other critical election preparations.

52. Although Vermont already used the Intelligent Bar Code, the reapproval of our ballot envelope style will introduce significant delay to the administration of Vermont's elections. This is further complicated by the fact that Vermont does not have adequate staff or financial resources to implement the changes while simultaneously reassuring Vermonters that elections will continue to be smoothly run, fair and impartial.

53. I am also deeply concerned about harms to the morale of election officials in my office and statewide resulting from the implementation of the Rule. USPS waves away serious concerns about implementation and compliance with state law by stating, "States can easily avoid any effects on their state elections by either complying with the rule's requirements or by separating their federal ballots to exclude any non-federal elections." 39 C.F.R. Part 111, Supp. Info. at 78. This ignores both the serious concerns for USPS's practical ability to carry out the Rule's requirements, and the fact that separating federal and non-federal elections, which are printed on the same ballot, is functionally impossible. USPS then asserts, despite the extensive

evidence of compliance challenges provided in comments on the Proposed Rule, that implementation and compliance are completely feasible so long as states "make a good faith effort to comply with the rule." 39 C.F.R. Part 111, Supp. Info. at 70. As demonstrated above, this is not the case at all. My colleagues and I are acutely aware that the Rule's requirements to enable tracking of mail ballots sent to and returned by voters come in the context of an Executive Order that directed federal agencies to prioritize the investigation and prosecution "of State and local officials . . . who issue Federal ballots to individuals not eligible to vote in a Federal election." Ex. Order 14399, Ensuring Citizenship Verification and Integrity in Federal Elections, 91 Fed. Reg. 17125, EO § 2(b) (March 31, 2026). USPS made clear the primary purpose of the Portal Data and the Lists is "to provide valuable insight" to law enforcement, specifically though disclosing "a list of individuals to whom states planned to mail a ballot (and who may potentially use the mail to vote), along with the associated barcode data," which in turn can purportedly "identify potentially anomalous incidents that may merit further investigation." See 39 C.F.R. Part 111, Supp. Info. at 60, 61. In a letter to me dated July 7, 2026, U.S. DOJ specifically threatened to prosecute election officials if noncitizens cast any ballots.

54. My colleagues and I are also acutely aware that President Trump has repeatedly claimed that there is widespread fraud allowing noncitizens to vote, even though in our experience as election officials, noncitizen registration and voting are both extraordinarily rare.

55. I am worried that I, and other election officials, could be targeted for federal investigation and even prosecution as a result of the Rule's mail ballot tracking system if the federal government believes, even incorrectly, that any of Vermont's registered voters are not citizens. I have heard directly from city and town clerks who are concerned about federal prosecutions for simply administering their duties under the law.

56. In conclusion, I estimate that the requirements of the Rule will require an increase of at least half a million dollars to the Secretary of State's budget. Given recent economic pressures across the state and country, I have been trying to keep my office's budgetary needs as low as possible. This pressure is in part due to the reduced federal funding and resources for elections. This Rule will increase financial strain on my office and necessitate a higher budget. I will either need to go back to the Legislature and ask for additional funds, which are not guaranteed, or will need to identify equivalent cuts elsewhere in my office. I have already needed to realign my office's priorities to cover budget gaps, and that process will be significantly more difficult if required to implement this rule.

57. Any time spent by current staff on implementing the Rule would divert time and attention from other critical election preparation in the days leading up to the election, my office's busiest time. Our staff is already at capacity and dedicated to routine tasks and special projects that ensure Vermont's elections run smoothly and every eligible Vermonter can exercise their right to vote. This work becomes more voluminous, significant, and urgent in the months leading up to the election, when we must answer an increasing volume of questions and handle tasks related to, for example, campaign finance reporting, logic and accuracy testing, and voter challenges.

58. Each of these tasks and costs will divert scarce resources from other important election administration needs. These tasks include voter outreach, civic health work, and refining our newly built election management system.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2026, at Montpelier, Vermont.

Sarah Copeland Hanzas
Secretary of State
Vermont Secretary of State

# Exhibit A

**State of Vermont**
**Office of the Secretary of State**
128 State Street
Montpelier, VT 05633-1101
(802) 828-2363

**Sarah Copeland Hanzas, Secretary of State**
**S. Lauren Hibbert, Deputy Secretary**

July 2, 2026

To: Director, Product Classification, U.S. Postal Service

From: Secretary of State Sarah Copeland Hanzas, State of Vermont

Re: Ballot Mail; 91 FR 32915

---

Dear Director,

As Secretary of State for the State of Vermont, I submit the following comments in response to the United States Postal Service proposal titled Ballot Mail for Federal Elections as noticed on May 29, 2026.

The Vermont Secretary of State is committed to Vermonters' right to participate in our democracy. It is my role to assist our city and town clerks in administering elections in a free, fair, and accessible manner.

I oppose USPS's proposed rule addressing mailed ballots in federal elections. There are several reasons the proposed rule is unconstitutional, burdensome, unnecessary, and harmful to democracy.

1. The USPS is undergoing rulemaking as ordered by Executive Order 14399. A federal court recently concluded that the Executive Order is an ultra vires act that violates the separation of powers set out in the United States Constitution. The court has enjoined the federal government from implementing the Executive Order. State of California v. Trump, 1:26-cv-11581, (D. Mass.). The Constitution is clear that authority over federal elections rests with states and Congress (U.S. Const. art. I, § 4, cl. 1). Federal statutes repeatedly emphasize the States' authority to administer elections is written in the Title 52 of the US Code, the National Voter Registration Act of 1993, the Help America Vote Act of 2002, and the Military and Overseas Voter Empowerment Act of 2009. Vermont law also recognizes the State's primary role in election administration, including in the Vermont State Constitution, Vermont

Statutes Annotated Title 17, and the State's administrative code. The USPS should immediately cease proceeding with the rule.

2. This rule's timing would not allow States sufficient time to implement its directives while also complying with federal and state law. The next general election is being held on November 3, 2026. Ballots need to be sent to military voters by September 18 to comply with state law and September 19 to comply with Federal law. Ballots need to be mailed to all the remaining voters beginning on September 21. The timelines for elections are always tight; this proposed rule makes that timeline unworkable.

3. The proposed rule would place a financial burden on the election system that already is operating with reduced resources from the federal government. This rule does not have funding attached to it for state implementation, making it an unfunded mandate. That the proposed rule would be issued with insufficient implementation time exacerbates the significant costs for state and local governments.

4. Vermont has a consolidated ballot, meaning that federal elections are on the same ballot as state and local elections. The rule states that it "only applies to federal elections," but it will have an immediate effect on state and local ballots. In its proposed rule, USPS states it would be empowered to hold the delivery of a ballot to an individual under this "federal election" rule. This is a decision that would not only impact that voter's right to vote in the federal election but also their right to vote in state and local elections.

5. The condensed timeframe for implementing the proposed rule is also likely to result in significant voter confusion about the federal list and its implications for mail-in voting. To mitigate confusion, my office will need to spend time and resources creating, coordinating, and distributing a public education campaign for Vermont voters.

6. Vermonters already have experienced reduced capabilities of the USPS. Mail is frequently delayed. My office has significant concerns that the USPS lacks the resources and operational knowledge to implement the proposed rule on this tight timeframe. I am further concerned that implementation of this rule will require

cross-checking and processing efforts leading to further delays and inconsistent deliveries for Vermonters.

7. I am equally concerned about voter privacy. The proposed rule does not address voter privacy and fails to identify a harm in the current system that would justify the impact on voter privacy. Importantly, the proposed rule fails to outline how the USPS will secure the voter list. The USPS rule also does not limit its use of the voter list. If my office were to provide the voter list to the USPS, we would need affirmation that the list would not be used for any other purpose.

8. The proposed rule does not address an exception for voters in Vermont's Safe-at-Home program, which is our address confidentiality program. Under Vermont law, my office is not permitted to release a participant's address to any entity, including state and federal agencies, unless a specific process is followed. That process is not contemplated or addressed in the proposed rule.

9. Further, there is no evidence that this rule solves a problem. Unauthorized voting, while frequently weaponized, is not a rampant problem in Vermont or elsewhere. Therefore, unauthorized voting does not impact the outcome of elections. Vermont maintains its voter checklist at the local level through our two hundred and forty-seven municipal clerks and boards of civil authority in accordance with state and federal law. This diligent work ensures that Vermont's elections are secure.

10. In Vermont, we follow a principle that election laws, rules, and procedures should not be changed in the midst of an election season. The rationale is simple. If elections are to be free, fair, and accessible, it follows that the rules are known, all involved play by the same rules, and there must be consistent application of the rules. Given reported inconsistencies in longstanding USPS practices, it is Pollyannaish to think that this rushed rule could be implemented consistently in less than three months.

This rushed and unconstitutional rule would create confusion, burden, and complication to the democratic process. A process that has operated with ease and without fraud. This rule does not enhance the security of our elections in Vermont. And, I agree with the court's recent conclusion that the federal government, through the Executive Order and this USPS rule, is operating far outside its authority. Therefore, I recommend that USPS not finalize this rule.

Sincerely,



Sarah Copeland Hanzas

Vermont Secretary of State