**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

STATE OF CALIFORNIA, *et al.*,

*Plaintiffs*,

v.

UNITED STATES POSTAL SERVICE, *et al.*,

*Defendants*,

STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF SOUTH DAKOTA, and STATE OF TEXAS ,

*Intervener Defendants*.

Case No. 1:26-cv-13917-IT

**MEMORANDUM IN SUPPORT OF INTERVENER STATES' UNCONTESTED MOTION FOR PERMISSIVE INTERVENTION AND CONTESTED MOTION FOR INTERVENTION AS OF RIGHT**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ 3

**INTRODUCTION** ........ 6

**ARGUMENT** ........ 7

I. The Intervener States are entitled to intervention as of right under Rule 24(a). ........ 7

A. The Intervener States' motion to intervene is timely. ........ 8

B. The Intervener States have cognizable interests in this case. ........ 8

C. Disposition of this action may impair the Intervener States' ability to protect their interests. ........ 10

D. The existing parties do not adequately represent the Intervener States' interests. ........ 11

II. Alternatively, the States are entitled to permissive intervention under Rule 24(b). ........ 14

**CONCLUSION** ........ 16

## TABLE OF AUTHORITIES

### Cases

*Banco Popular de Puerto Rico v. Greenblatt*,
964 F.2d 1227 (1st Cir. 1992) .................................................... 8

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022).................................................... 13

*Builders Ass'n of Greater Chicago v. Chicago*,
170 F.R.D. 435 (N.D. Ill. 1996) .................................................... 15

*Conservation L. Found. of New. Eng., Inc. v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992) .................................................... 14

*Cotter v. Mass. Ass'n of Minority Law Enf't Officers*,
219 F.3d 31 (1st Cir. 2000) .................................................... 13

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008).................................................... 9

*Daggett v. Comm'n on Governmental Ethics & Election, Pracs.*, 172 F.3d 104 (1st Cir. 1999) .................................................... 13

*Fund For Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003).................................................... 13

*Int'l Paper Co. v. Inhabitants of Town of Jay, Me.*,
887 F.2d 338 (1st Cir. 1989) .................................................... 10

*Jacobson v. Detzner*,
2018 WL 10509488 (N.D. Fla. July 1, 2018) .................................................... 15

*Lucas Cnty. Bd. of Comm'rs v. U.S. Env't Prot. Agency*,
169 F.4th 689 (6th Cir. 2026)....................................................11, 12

*Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*,
197 F.3d 560 (1st Cir. 1999) .................................................... 13

*McCulloch v. Maryland*,
17 U.S. 316 (1819)....................................................11

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977).................................................... 10

*Nat'l Ass'n for Advancement of Colored People v. New York,*
413 U.S. 345 (1973).................................................... 14

*Pub. Serv. Co. of N.H. v. Patch*,
136 F.3d 197 (1st Cir. 1998) .......... 13

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 9, 10, 14

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
584 F.3d 1 (1st Cir. 2009) .......... 8

*Sierra Club v. Glickman*,
82 F.3d 106 (5th Cir. 1996) .......... 12

*State v. U.S. Fish & Wildlife Serv.*,
262 F.3d 13 (1st Cir. 2001) .......... 13

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
308 F.R.D. 39 (D. Mass.) .......... 8

*Thomas v. Andino*,
335 F.R.D. 364 (D.S.C. 2020) .......... 15

*T-Mobile Ne. LLC v. Town of Barnstable*,
969 F.3d 33 (1st Cir. 2020) .......... 13

*Town of Chester v. Laroe,*
*Ests.*, 581 U.S. 433 (2017) .......... 9

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .......... 11, 12, 13

*Ungar v. Arafat*,
634 F.3d 46 (1st Cir. 2011) .......... 15

*Victim Rts. L. Ctr. v. Rosenfelt*,
988 F.3d 556 (1st Cir. 2021) .......... 13

*W. Watersheds Project v. Interior Bd. of Land Appeals*,
No. 1:19-CV-95-TS-PMW, 2019 WL 5191244 (D. Utah Oct. 15, 2019) .......... 12

**Rules**

Federal Rule of Civil Procedure 24(a) .......... 7, 10, 14

Federal Rule of Civil Procedure 24(b) .......... 14

**Regulations**

Ballot Mail for Federal Elections,
Rule. 91 Fed. Reg. 54,966 (Aug. 26, 2026) .......... 6, 9

**Other Authorities**

7C Wright & Miller, *Federal Practice and Procedure* § 1908, at 301)....................................... 10

## INTRODUCTION

The State of Missouri and eleven other States,[1] collectively "the Intervener States," seek intervention as Defendants in this action to defend the recently finalized Ballot Mail for Federal Elections Rule. 91 Fed. Reg. 54,966 (Aug. 26, 2026) (to be codified at 39 C.F.R. pt. 111) ("Final Rule"). No party opposes permissive intervention,[2] and this makes sense. This Court has previously granted Intervener States permissive intervention to defend the President's Executive Order—including in the case brought by the same Plaintiff State Coalition[3] against the same USPS Defendants, *see* Minute Order, *California v. Trump*, No. 1:26-cv-11581-IT, (D. Mass. June 4, 2026), ECF 179—and Intervener States have also been granted intervention in the other related cases, *see* Minute Order, *League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT (D. Mass. May 1, 2026), ECF 106; Minute Order, *DSCC v. Trump*, No. 1:26-cv-01114-CJN (D.D.C. Apr. 30, 2026) (and consolidated cases). As the Executive Order "mandate[ed]" this Rule, Compl. ¶ 5, it follows that this Court should again allow Intervener States to intervene, either as of right or permissively, to defend the Final Rule.[4]

Intervener States respectfully request that this Court grant the motion as soon as possible—and preferably before or at the Court's September 3 hearing.[5] That would allow Intervener States to fully participate in this case. In the meantime, when Intervener States file their brief that is

---

[1] The other Intervener States include: Alabama, Florida, Indiana, Kansas, Louisiana, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, and Texas.

[2] Only the federal Defendants oppose intervention as of right.

[3] With the addition of the State of Hawai'i. Compl. ¶ 24.

[4] The other plaintiffs challenging the EO have filed supplemental complaints to renew their challenges against the finalized USPS Ballot Mail for Federal Elections Rule, *see, e.g.*, Suppl. Compl., *League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT (D. Mass., filed Aug. 26, 2026), ECF 207; Suppl. Compl., *DSCC v. Trump*, No. 1:26-cv-01114-CJN (D.D.C., filed Aug. 25, 2026), ECF 162-1, so Intervener States did not have to again move for intervention in those cases.

[5] Intervener States thank the Court for accommodating their request not to schedule the hearing on September 2 due to the undersigned's argument conflict.

already due on August 29 in the *League of Women Voters* case, they will address Plaintiff States' unique arguments as well. If any party wishes to file a brief opposing intervention, Intervener States request that the Court order a response by Monday, August 31.

**ARGUMENT**

As before, Intervener States satisfy all four requirements of Federal Rule of Civil Procedure 24(a) for intervention as of right. This litigation will undoubtedly affect the Intervener States' election procedures related to mail-in and absentee voting, and it could deprive Intervener States of an important opportunity to benefit from the reforms contained in the Final Rule. At a minimum, the Court should grant permissive intervention under Rule 24(b). Like in the Executive Order litigation, Intervener States are prepared to make "distinct[]" arguments in defense of the Rule. *See* Hr'g Tr. 7:23–8:10, *California v. Trump*, No. 1:26-cv-11581-IT, (D. Mass. June 2, 2026), ECF 181. Among other things, if the Court grants a preliminary injunction, Intervener States will argue that the Court should at least limit any such injunction to give States the *option* to comply with the Final Rule. And more generally, the Court will benefit from hearing the viewpoint of more States during this fast-moving litigation.[6]

**I. The Intervener States are entitled to intervention as of right under Rule 24(a).**

A movant is entitled to intervene as of right if the movant (1) files a "timely motion," (2) "claims an interest" in the litigation, (3) "may as a practical matter" be "impair[ed]" or impede[d]" by the disposition of the suit, and (4) is not "adequately represent[ed]" by the parties in the case. Fed. R. Civ. P. 24(a). The Intervener States meet all four requirements, and thus have a right to intervene.

[6] Given the fast moving nature of this litigation, and the partly uncontested nature of this motion, Intervener States are filing this motion without a responsive pleading. The Intervener States will file their opposition to the Preliminary Injunction on schedule and will promptly move to dismiss.

**A. The Intervener States' motion to intervene is timely.**

The Intervener States are moving to intervene at the outset of the case, which makes their motion indisputably timely. The test of timeliness requires consideration of

> (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 46 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015). In evaluating the timeliness of a motion to intervene, "the status of the litigation at the time of the request for intervention is 'highly relevant.'" *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009) (quoting *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992)).

All these factors support the timeliness of the Intervener States' motion. The Intervener States served their Motion to Intervene within one day of Plaintiff States filing their complaint. Moreover, the Intervener States are already Intervener Defendants in the associated case and have timely filed their opposition to a temporary restraining order. *See* Opp'n to TRO, *LWVM v. Trump*, No. 1:26-cv-11549-IT (D. Mass., filed Aug. 27, 2026), ECF 215. So there is zero delay, and no existing party could even conceivably claim that any delay by the Intervener States caused it "prejudice." *See Students for Fair Admissions*, 308 F.R.D. at 46 (holding that a motion to intervene filed more than five months after litigation commenced was not untimely or prejudicial when it was filed "before an initial scheduling conference had taken place, and before the Court had issued the Scheduling Order").

**B. The Intervener States have cognizable interests in this case.**

The Intervener States have a "compelling" interest in the subject matter of this action: defending the USPS Ballot Mail for Federal Elections Rule to help "preserv[e] the integrity of [the

State] election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). This interest is "indisputabl[e]." *Id.*

Intervener States, just like Plaintiff States, have a "sovereign interest[] in in conducting elections in accordance with duly enacted state and federal law." Compl. ¶ 128. Although Plaintiff States allege that this Rule threatens their "ability to guarantee the fair and lawful administration of their mail voting programs," *id.*, Intervener States believe the Rule is *necessary* to guarantee the fair and lawful administration of their mail voting programs. Thus, to the extent that Plaintiff States have standing to bring this suit, Intervener States seek to defend against the "same relief" and thus have a reciprocal interest to intervene as of right. *See Town of Chester v. Laroe Ests.*, 581 U.S. 433, 439–40 (2017) (holding that "an intervenor of right must demonstrate Article III standing when it seeks *additional* relief beyond that which the plaintiff requests" (emphasis added)).

Nonetheless, Intervener States have a concrete interest in this action. The Ballot Mail for Federal Elections Rule helps ensure that mail ballots cast by voters are securely transmitted, and Intervener States have a concrete interest in the secure delivery of ballots to their mail-in and absentee voters. The Rule enhances election integrity in three key ways: all federal ballot mail must (1) be marked with "the official Election Mail Logo"; (2) "bear[] the voter's unique [Intelligent Mail barcode]"; and (3) only be sent to voters who "have been enrolled with the Postal Service for the inclusion on the state's Main-In and Absentee Participation List" by their respective States. 91 Fed. Reg. 54,990–91 (to be codified at 39 C.F.R. pt. 111). These are all useful and important security measures that will help "prevent[] voter fraud" in mail ballots cast by Intervener States' voters, of which "[t]here is no question about the legitimacy or importance of the State's interest" even if the "method" is "debatable." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196–97 (2008).

Moreover, the regulations imposed by the Final Rule are somewhat unique because *only* USPS can impose them. Intervener States cannot—by themselves—implement reforms to USPS. Therefore, the Intervener States have a clear interest in seeing the USPS Ballot Mail for Federal Elections Rule take effect. All of these interests warrant intervention as of right in this case.

**C. Disposition of this action may impair the Intervener States' ability to protect their interests.**

Next, Plaintiffs' action could impair the Intervener States' interests. Rule 24(a)'s impairment inquiry is not demanding, and the Intervener States easily clear this hurdle here in light of their "compelling" interest. *Purcell*, 549 U.S. at 4.

"[I]n determining whether disposition of the action will impede or impair the applicant's ability to protect his interest the question must be put in practical terms rather than in legal terms." *Int'l Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 344 (1st Cir. 1989) (quoting 7C Wright & Miller, *Federal Practice and Procedure* § 1908, at 301); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910–11 (D.C. Cir. 1977) (same). The requirement is satisfied whenever disposition of the present action would put the applicant at a practical disadvantage in protecting his interest. 7C Wright & Miller, *Federal Practice and Procedure* § 1908 at 302 (2d ed. 1986). This practical approach reflects the understanding that intervention should be available when real-world consequences threaten an applicant's ability to protect their interests, regardless of whether formal legal barriers exist. *See id.*

Here, the inquiry is straightforward. If Plaintiffs succeed in enjoining enforcement of the Ballot Mail for Federal Elections Rule, the USPS will be blocked from providing increased ballot mail security to States, like Intervener States, that want increased ballot mail security. This lawsuit could thus prevent the USPS from helping Intervener States ensure the integrity of their elections. *See Purcell*, 549 U.S. at 4. The Intervener States lack authority—on their own—to implement the

procedural safeguards of the Ballot Mail for Federal Elections Rule. The Intervener States cannot regulate the USPS because it is a federal agency and States cannot regulate the federal government. *See McCulloch v. Maryland*, 17 U.S. 316 (1819). States also possess limited authority to regulate and supervise absentee ballots completed by out-of-state voters and sent through interstate mail. Even so, despite the limits on State authority, a State's interest in election integrity is still endangered by fraudulent absentee voting or mail ballots being lost in transit. Therefore, the Intervener States have an interest in seeing the envisioned postal reforms implemented, and Plaintiffs' attempt to block those reforms jeopardizes the Intervener States' interests.

**D. The existing parties do not adequately represent the Intervener States' interests.**

Rule 24(a)'s final requirement, inadequacy of representation, imposes a "minimal" burden on prospective interveners. Movants need only show that that representation of their interests "'may be' inadequate" and "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972) (quotation omitted). Even where litigants share the same ultimate outcome in the case, "they may not always dictate precisely the same approach to the conduct of the litigation," causing a party's adequacy to be inadequate. *Id.* at 539; *see also Lucas Cnty. Bd. of Comm'rs v. U.S. Env't Prot. Agency*, 169 F.4th 689, 698 (6th Cir. 2026) ("[A] movant who seeks the same litigation outcome as an existing party may nevertheless be inadequately represented if it can demonstrate the parties are 'animated by different, and possibly conflicting, concerns.'" (citation omitted)).

Here, the Intervener States' interests are distinct from those of the federal government, making it quite likely they would not take "precisely the same approach to the conduct of the litigation." *Trbovich*, 404 U.S. at 528. As this Court has previously noted, Intervener States have taken "distinct[]" positions from the federal government in defending the Rule's precursor EO, Hr'g Tr. 7:23–8:10, *California v. Trump*, No. 1:26-cv-11581-IT, (D. Mass. June 2, 2026), ECF 181,

and these distinctions will likely continue in this case. In particular, the Intervener States have a stronger interest in ensuring the procedural safeguards of the Ballot Mail for Federal Elections Rule move forward in their States during the upcoming General Election whereas the USPS is likely more interested in uniformly defending the Rule. As such, Intervener States are prepared to argue that, if this Court does grant a preliminary injunction against the Rule, that the preliminary injunction should be limited only to Plaintiff States, *i.e.*, the States that do not want the Rule. Plaintiff States will argue that this Court should give States the option to try out the Rule's reforms. Thus the parties are "animated by different, and possibly conflicting, concerns" in this case. *Lucas Cnty Bd. of Comm'rs*, 169 F.4th at 689. In similar situations, "the public interest the federal government is obligated to represent may differ from the state government's interest," courts have permitted intervention. *See W. Watersheds Project v. Interior Bd. of Land Appeals*, No. 1:19-CV-95-TS-PMW, 2019 WL 5191244, at *3 (D. Utah Oct. 15, 2019); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (reversing district court's denial of Texas's motion to intervene in litigation against the federal government, reasoning that "[t]he State of Texas has a narrower but independently vital interest in representing its residents").

The U.S. Supreme Court's decision in *Trbovich* confirms that intervention is appropriate here. *See* 404 U.S. at 538 n.10. *Trbovich* involved a motion to intervene by a voting union member in a suit filed by the Secretary of Labor to set aside a union election in which the rights of voting members had allegedly not been respected. *Id.* at 529–30. Even though the Secretary sought the same goal as the intervener, the Court held the Secretary's representation was inadequate given his "duty to serve two distinct interests": to vindicate the "rights" of "individual union members" *and* "assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* at 538–39. These two functions "may not always dictate

precisely the same approach to the conduct of the litigation." So "[e]ven if the Secretary is performing his duties, broadly conceived, as well as can be expected, the union member may have a valid complaint about [his] performance," which is "sufficient to warrant … intervention" as of right. *Id.* at 539.

So too here. The federal government has duties relating to its defense of the Rule which differ from the interest of the States in preserving their sovereignty and election integrity. This gives the States sufficient grounds to intervene in this case. *Id.*

Lastly, any "rebuttable presumption that the government will adequately defend its action[s]," *Cotter v. Mass. Ass'n of Minority Law Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000), does not apply here.[7] The presumption applies when "a governmental entity defending official acts adequately represents the interests of *its* citizens," *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 38 (1st Cir. 2020) (emphasis added), or "all citizens who support the statute," *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 111 (1st Cir. 1999), not when one sovereign attempts to intervene to defend another sovereign, *see Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736–37 (D.C. Cir. 2003).[8] Therefore, this rebuttable presumption does not

[7] This presumption is wrong, *see Trbovich*, 404 U.S. at 538–39, and may no longer be good law, *see Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (reserving the question of "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance").

[8] To the Intervener States' knowledge, this presumption has only been applied where a private entity has attempted to intervene on behalf of the government. *See, e.g.*, *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561–63 (1st Cir. 2021) (public interest groups on behalf of federal government); *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205–10 (1st Cir. 1998) (corporations, non-profits, an agency of the same state, and a city on behalf of state utility); *T-Mobile*, 969 F.3d at 38 (two local residents on behalf of town); *State v. U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001) (conservation groups on behalf of federal agency); *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) (trade association and wholesalers on behalf of state commission); *Daggett*, 172 F.3d at 112–13 (candidates and office holders on behalf of state commission); *Cotter*, 219 F.3d at 35 (association on behalf of city);

apply, and certainly not in a case related to the regulation of federal election ballot mail, over which States "indisputably ha[ve] a compelling interest." *Purcell*, 549 U.S. at 4.

For all these reasons, the Court should grant intervention as of right.

## II. Alternatively, the States are entitled to permissive intervention under Rule 24(b).

Even if the Court disagrees on intervention as of right, the Court should still grant permissive intervention under Rule 24(b). No party contests permissive intervention—and the Court could easily resolve this motion by granting permissive intervention and not ruling on intervention as of right.

The Court may grant permissive intervention "[o]n timely motion" when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Moreover, in exercising its discretion under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* These factors all point in favor of permissive intervention here.

First, the States' motion is timely. Courts consider the same factors when assessing timeliness under Rule 24(b) as under Rule 24(a). *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. New York,* 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.'"). As noted above, the States moved to intervene within one day and will comply with this Court's scheduling order for all upcoming briefing. Thus, no party will suffer prejudice due to the States' intervention.

---

*Conservation L. Found. of New. Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (regulated entity on behalf of agency).

Second, the States will raise defenses that share many common questions with the claims and defenses of the parties. Plaintiffs allege that the USPS lacks constitutional and statutory authority to promulgate the Ballot Mail for Federal Elections Rule and that the Rule violates the Privacy Act and the Voting Rights Act. The Intervener States reject those allegations and intend to defend the rule. Indeed, the "applicants' interest in the litigation is the mirror-image" of the Plaintiffs—strongly suggesting permissive intervention is warranted. *See Builders Ass'n of Greater Chicago v. Chicago*, 170 F.R.D. 435, 441 (N.D. Ill. 1996). Moreover, Intervener States have a particular interest in having the Rule operate in their States for the upcoming election and will argue that any preliminary injunction must only prevent the Rule from operating in Plaintiff States.

Third, allowing the States to intervene will neither delay this litigation nor prejudice anyone. To start, it is hard to see how any party could be prejudiced when no existing party objects to permissive intervention. In any event, Intervener States have already been granted intervention in both the previous case brought by Plaintiff States and associated case being brief and argued in tandem with this case, so the States' participation in it cannot prejudice any existing party or cause any delay. And to avoid any doubt, the States pledge to adhere to any briefing deadlines the Court chooses to set. *See Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020) (finding no prejudice or delay based on such a commitment). Moreover, granting intervention will further the adversarial process and promote judicial economy by avoiding piecemeal, protracted litigation, and the possibility of conflicting legal decisions. *See Jacobson v. Detzner*, 2018 WL 10509488, at *1 (N.D. Fla. July 1, 2018) ("[D]enying Proposed Intervenors' motion opens the door to delaying the adjudication of this case's merits for months—if not longer"); *Ungar v. Arafat*, 634 F.3d 46, 50

(1st Cir. 2011) ("An order denying a motion to intervene as of right is immediately appealable as a collateral order.").

## CONCLUSION

The Court should grant the Intervener States' motion to intervene.

Date: August 27, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre*
*Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, DC Bar No. 90018764*
*Solicitor General*
J. Michael Patton*
*Deputy Solicitor General*
Benjamin S. Gilberg*
*Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Michael.Patton@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst*
*Solicitor General*
Jason J. Muehlhoff*
*Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
James. A Barta, DC Bar No. 1032613*
*Solicitor General*
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez*
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**ELIZABETH B. MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
*Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan*
*Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett*
*Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
*Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate*
*Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn*
*Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

s/ *David Bryant*
David Bryant*
*Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

/s/ *Ian D. Prior*
Ian D. Prior (Bar No. 655704)
America First Legal Foundation
611 Pennsylvania Ave S.E. No. 231
Washington, D.C. 20003
(410) 205-9681
ian.prior@aflegal.org

* *Pro hac vice forthcoming*

**CERTIFICATE OF SERVICE**

I certify that on August 27, 2026, the above was filed electronically through the Court's electronic filing system to be serve electronically on counsel for the parties.

/s/ *Louis J. Capozzi III*

**CERTIFICATE OF CONFERRAL**

I certify that I conferred in good faith with the parties' counsel about the States' motion to intervene. After conferral, Plaintiffs States "take no position" on this motion. The United States provided the following position: "The United States opposes the request for intervention as of right, and takes no position on the request for permissive intervention. The United States would also consent to the filing of a timely amicus brief."

/s/ *Louis J. Capozzi III*