**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br>*Plaintiffs,*<br>v.<br>UNITED STATES POSTAL SERVICE, et al.,<br>*Defendants.* | Case No. 1:26-cv-13917-IT |

**DECLARATION OF DON MILLIS**

I, Don Millis, declare as follows:

1. I am a resident of the State of Wisconsin. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with staff at the Wisconsin Elections Commission, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

## I. Background.

2. I am the Chair of the Wisconsin Elections Commission (the "Commission"), a state agency responsible for carrying out a wide range of functions related to statewide elections administration, including ensuring compliance with state and federal election laws.

3. By statute, the Commission is governed by six Commissioners, with three Commissioners representing the Democratic Party and three representing the Republican Party. I was appointed to the Commission by the Speaker of the Wisconsin Assembly who is a member of the Republican Party. I have served as a Commissioner since June of 2022 and have twice

served as Chair of the Commission, first from June 2022 through June 2024 and again from June 2026 to the present day. I previously served on the Commission from June of 2016 to March of 2017 and served as a member of a predecessor agency, the Wisconsin State Elections Board, from May of 1997 to May of 2001.

4. Wisconsin has one of the most decentralized systems of election administration in the nation. Elections are primarily administered at the local level by 1,850 municipal clerks, though the Commission serves as a resource and fulfills several statewide election responsibilities. Municipal clerks in Wisconsin are independent of the Commission and have an independent duty to follow the law. Many, if not most, municipal clerks hold these positions part-time, have other full-time jobs, and, especially in rural areas, have little to no administrative support.

5. While many of these 1,850 jurisdictions have only one person who is authorized to add, subtract and modify voter records on the Statewide Voter Registration System ("SVRS") list—typically the municipal clerk—more than 2,500 municipal employees are authorized to make changes to voter records on the SVRS list.

6. Wisconsin's 72 county clerks are responsible for printing ballots, which they then distribute to the municipal clerks in their jurisdiction.

## II. Absentee (Mail-In) Voting in Wisconsin.

7. In Wisconsin, any qualified elector may vote absentee without providing a reason, including by voting absentee in person during the in-person absentee voting period established by Wisconsin law or by voting absentee by mail. *See* Wis. Stat. §§ 6.20, 6.85, 6.86(1)(a).

8. Most voters in Wisconsin may request an absentee ballot until 5:00 p.m. on the Thursday before the election. *See* Wis. Stat. § 6.86(1)(b).

9. Municipal clerks are responsible for mailing out absentee ballots using the United States Postal Service ("USPS"). *See* Wis. Stat. § 6.87(3). State law requires municipal clerks to send out absentee ballots to any voter with an absentee request on file no later than 47 days before the election. Wis. Stat. § 7.15(1)(cm). However, clerks can begin mailing ballots as soon as the results of the Partisan Primary are certified. As Chair of the Commission, I certified the results of the August 11, 2026, Partisan Primary on August 25, 2026.

10. Clerks continue to mail absentee ballots as additional voters request them until 5:00 p.m. on the Thursday before the election for most voters, which is 5 days before the election. *See* Wis. Stat. § 6.86(1)(b).

11. In recent years, many municipal clerks have opted to mail out absentee ballots in their jurisdictions as early as possible to account for USPS mail delays and give their absentee voters sufficient time to receive, complete, and return their ballot. This means that many clerks in Wisconsin began the process for printing, proofing, testing, and mailing their absentee ballots as soon as the August 11, 2026, Partisan Primary Election was certified on August 25, 2026.

12. Absentee ballots in Wisconsin must be returned through the mail, delivered in person to the municipal clerk, deposited in a designated drop box, or delivered in person to the polling place on Election Day. Wis. Stat. § 6.87(4)(b)1.

**III. The November 2026 General Election is Already Underway in Wisconsin.**

13. Many county clerks in Wisconsin have already printed ballots for the November 3, 2026, election.

14. I am aware that at least some municipal clerks in Wisconsin plan to mail out their absentee ballots as early as <u>September 1, 2026</u>.

15. Municipal clerks are mandated by Wisconsin law to mail out absentee ballots for all requests on file no later than September 17, 2026. Wis. Stat. § 7.15(1)(cm).

16. In Wisconsin, many voters vote an absentee ballot by mail. During the General Election of 2022, 427,246 non-UOCAVA voters voted an absentee ballot by mail, and in 2024, 572,424 non-UOCAVA voters voted an absentee ballot by mail.

17. As of the morning of August 31, 2026, 270,964 non-UOVAVA by-mail absentee ballots have already been requested by Wisconsin voters for the November 3, 2026, General Election. Clerks were permitted to begin fulfilling these requests as soon as the August 11, 2026, Partisan Primary was certified, meaning that clerks are currently working to fulfill these requests.

**IV. Impact of the USPS Rule.**

18. I am aware of USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule"), which was made available for public preview at https://public-inspection.federalregister.gov/2026-17238.pdf prior to its scheduled publication in the Federal Register on August 26, 2026.

19. On June 29, 2026, my predecessor as Commission chair, current Commissioner Ann Jacobs, and I submitted comment on this rule identifying some of the problems with the Rule. A true and correct copy of this comment is attached as Exhibit A to this Declaration and incorporated herein.

20. Supplementing the problems identified in our comment, I am extremely concerned about the effects of this Rule on the November election, if the Rule is not enjoined.

21. It would be virtually impossible for Wisconsin to comply with the Rule, for several reasons.

***Entry of voter information into the "Ballot Portal."***

22. It is my understanding that the Rule requires every non-UOCAVA voter who will receive an absentee or mail-in ballot to be enrolled with USPS. To enroll voters, election officials or other authorized personnel must access the USPS Ballot Portal to enter each voter's name, address, unique Intelligent Mail barcode from the outbound ballot envelope, unique Intelligent Mail barcode associated with the return Federal Ballot Mail envelope, and the originating election office state. This requirement creates two separate and distinct burdens on state and local election officials.

23. First, before the 2,500-plus municipal employees authorized to access the SVRS list may upload data to the Ballot Portal under the Rule, Wisconsin's chief election official, the Commission Administrator, would have to individually authorize them to use the Ballot Portal at least two business days before mailing a ballot.

24. Second, once the 2,500-plus authorized SVRS users are authorized to access the Ballot Portal by the Commission Administrator, they would have to upload the required SVRS information at least 30 days before the date of the federal election, or by the date ballots may begin to be mailed to voters under state law which in Wisconsin was August 25, 2026, after I certified the final results of the August 11, 2026, Partisan Primary Election. However, it appears that supplemental submissions can be made until the last day that ballots may be mailed out to voters under state law. If a voter is not enrolled with the USPS Ballot Portal, my understanding is that USPS will not accept the outbound mail ballot envelope for mailing, meaning USPS would refuse to mail the absentee ballot to the voter who had requested it.

25. As of today's date, USPS has not released its Ballot Portal, nor has USPS issued instructions on how to use the Portal or how the Chief Election official may authorize an individual as a user. I am not aware of USPS announcing the date by which it will be available.

26. Even if the Ballot Portal were available today, and working as intended, it would be virtually impossible to ensure that each absentee voter in Wisconsin is enrolled. Municipal clerks would likely be responsible for enrolling their absentee voters. These 2,500-plus SVRS users would need to be trained in how to use the new technology, become authorized users, and then enter the data—all within the next two weeks. Because so many municipal clerks and authorized SVRS users hold these positions on a part-time basis, have other full-time jobs, and, especially in rural areas, have little to no administrative support, full and accurate compliance is extremely unlikely.

27. The Commission has no budget available to hire extra administrative support to ensure that all absentee voters are entered into the portal.

***Intelligent Mail Barcodes.***

28. The requirements related to the Intelligent Mail Barcodes (IMbs) pose an even bigger problem. It is my understanding that the Rule requires one unique IMb for each outbound ballot envelope (containing the blank ballot) and a second unique IMb for each return ballot envelope (containing the completed ballot).

29. Ballot envelopes are already printed. There is neither time nor money available to reprint the envelopes. Accordingly, Wisconsin's municipal clerks would need to print and hand-affix stickers with the Rule-compliant IMb codes on two envelopes for each voter: the outbound envelope and the return envelope, which is provided to the voter along with the blank ballot.

30. For outbound ballot mail, the Commission may currently have the capability to generate Rule-compliant outgoing IMbs. But from there, we can only *ask* that Wisconsin's 1,850 municipal clerks to print and place the stickers on the ballot envelopes. Moreover, Wisconsin's 1,850 municipalities are not equally capable of compliance. Hundreds of small, rural Wisconsin towns and villages rely on their County Clerks to access and enter data in SVRS, Wisconsin's electronic voter registration system, and hundreds more likely do not have the required label printing capability. Moreover, these same small jurisdictions often have a single employee performing all elections-related work. The time required to create and place a sticker on each individual outbound ballot envelope makes completion of the task within the next two weeks an impossibility for many jurisdictions. Wisconsin's rural municipalities are thus at a significant disadvantage compared to Wisconsin's biggest cities.

31. For inbound ballot mail/return envelopes, the Commission does *not* currently have the capability to generate IMbs. Developing the capability would be a complex task, because Wisconsin's SVRS software would have to be modified to create a return IMb generation and label printing capability. IMbs consist of 65 bars representing 31 characters, further subdivided into five components. The data contained in each component is unique to the mailer and recipient. A single incorrect character can cause a mail piece to be rejected or mis-routed. New code would have to be written, extensively tested, and deployed. Even if a return IMb generation capability existed today, hundreds of Wisconsin's small, rural municipalities would still face the same challenges they have with outgoing IMbs: they do not have access to SVRS and they do not have label printing equipment or supplies.

32. Further, affixing IMb stickers to millions of ballot envelopes on an impossibly rushed timeline invites error at several junctures. For instance, a clerk could easily place the sticker on the wrong envelope by mistake, or mix-up which stickers belong to which voter.

33. Finally, any time stickers are affixed to envelopes or ballots, there is risk that the sticker may come unaffixed, peeled off, damaged, or jammed in electronic mail sorting equipment. Even if election officials were to complete all the steps required to comply with the rule, if the IMb sticker peels off, the ballot will not be delivered to the voter.

34. Any error creates a risk of disenfranchisement for an eligible voter, especially on populations that are particularly dependent on absentee voting, such as voters in rural areas, voters with disabilities, and voters that lack reliable means of transportation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 31, 2026, at Madison, Wisconsin.

Don M. Millis
Chair
Wisconsin Elections Commission

# EXHIBIT A

June 29, 2026

David P. Steiner
United States Postmaster General
c/o Director, Product Classification
U.S. Postal Service
475 L'Enfant Plaza SW, Room 4446
Washington, DC 20260-5015

Re: Comment on Proposed Rule for Ballot Mail for Federal Elections Submitted by Wisconsin Elections Commission Chair Don Millis and Immediate Past Chair Ann S. Jacobs

Dear Postmaster General Steiner:

We write as the current chair and the immediate past-chair of the Wisconsin Elections Commission (WEC). The WEC is a bipartisan organization made up of three Republican and three Democratic appointees, and is the state-wide body entrusted with policymaking and administration of various election laws in Wisconsin. Don Millis is a Republican appointee and current chair; Ann Jacobs is a Democratic appointee and the immediate past chair of the WEC. These comments are submitted by us individually, and not on behalf of the WEC.

We are providing these comments to underscore our serious concerns about the impact of the proposed postal rule specifically on Wisconsin voters.

Wisconsin is very unusual in how it administers elections. Rather than a statewide effort, or a county-by-county effort, elections are administered at the municipal level. This means approximately1,850 municipal clerks throughout the state are entrusted with adding or removing voters from the voting rolls, processing absentee ballot requests, and sending absentee ballots to voters who have requested them, as well as administering elections on Election Day.

Wisconsin is a geographically large state, with a comparatively small population of voters of about 3.6 million. Of those voters, approximately 2/3 reside in urban or suburban areas of the state, largely to the south, and 1/3 reside in the more rural north part of the state. It is those rural voters most likely to be impacted by these proposed rules.

As proposed, the rule creates significant timing and logistical hurdles for Wisconsin voters. The proposed rule does not impose any time limits on the USPS's review of absentee ballots. Section 24.5.1 states that the service will "review mailings identified as Outbound Federal Ballot Mail prior to acceptance to evaluate whether the mailing meets the standards in 24.3.1 and is being sent to [persons on the Absentee Voting List]."[1] This review does not have a

[1] We understand other commenters have explained significant concerns regarding the Absentee Voting List itself, so we do not address those concerns here.

time limit on how long the government may take to make such an assessment, which is apparently necessary before ballot may even enter the mail stream to head to voters.

Once ballots are permitted to enter the mail stream, because of their intelligent mail barcode (IMB), they must go to a sorting center for processing. Wisconsin has only three sorting centers available for its mail: Milwaukee, Green Bay, and Minneapolis. Thus, a ballot from the northern half of the state must travel a significant distance, simply to be scanned and transported back to the voter. This likely adds days to the travel time of a ballot.

On the ballot's return from the voter to the clerk, it must *again* travel from the voter to a sorting center, and back to the clerk. Currently, local post offices can receive a ballot from a voter and deliver it directly to the municipal clerk without sending it hundreds of miles away, making delivery very prompt. This would no longer be the case.

As proposed, this rule adds at a minimum several days to the mailing process, and likely longer. The WEC recently surveyed our clerks regarding the timeliness of receipt of mailed ballots in the 2026 April election, and learned that there were a significant number of late-arriving ballots that were mailed a week before Election Day. If the current system cannot timely deliver ballots, adding days to the process will ensure that many voters are disenfranchised.

There is no reason to require the use of the IMB for ballots, particularly on the return journey to the clerk. Voters are permitted to drop off their ballots, either to the clerk's office directly or to dropboxes approved by their municipality. Use of the barcodes will therefore not provide any information as to who has, or has not, returned their ballots. There is a notable partisan divide in Wisconsin between municipalities using dropboxes and those who have elected not to. Voters in the more urban areas, which are seen as generally "blue" areas, are much more likely to have access to a 24-hour dropbox, thereby not having to worry about the mail. Moreover, clerks in blue areas are more likely to have extended hours during which voters can return ballots in person to the clerk or vote in-person absentee. As noted above, blue areas also have sorting centers nearby, making mail processing and delivery much faster. In contrast, voters in more rural ("red") areas are less likely to have access to a dropbox or extended hours during which they can return ballots in person or cast ballots via in-person absentee. As such, voters in red areas are much more reliant upon the mail, making it more likely that their ballots run the risk of arriving late.

Wisconsin voters throughout the state – urban/rural, red/blue, small/large municipalities – all have the right to have their timely-mailed ballots arrive on time to be counted. As proposed, the rule will cause significant delays in ballot delivery and likely disenfranchise a significant swath of Wisconsin voters.

We jointly, and in a bipartisan spirit, request that this rule be rejected so that mailed ballots may be timely sent and received by Wisconsin voters.

Respectfully submitted:

Don Millis
Chair
Wisconsin Elections Commission

Ann S. Jacobs
Immediate Past Chair
Wisconsin Elections Commission