**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br>*Plaintiffs,*<br>v.<br>DONALD J. TRUMP, in his official capacity as President of the United States; et al.,<br>*Defendants.* | Case No. 1:26-cv-11581 |

**SUPPLEMENTAL DECLARATION OF ROB ROCK**

I, Rob Rock, declare as follows:

1. I am a resident of the State of Rhode Island. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with Rhode Island Department of State staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Deputy Secretary of State/Director of Administration for the State of Rhode Island. I work for Secretary of State Gregg M. Amore and support him in his official capacity as the Chief State Election Official for the State of Rhode Island. In my role, I assist Secretary Amore in the execution and enforcement of all state and federal laws relating to elections.

3. I submit this supplement to my declaration dated August 25, 2026 to update the Court on my office's ongoing efforts to ensure the fairness and integrity of elections in Rhode

Island, notwithstanding the uncertainty and confusion resulting from the USPS's recent regulation entitled "Ballot Mail for Federal Elections" ("Rule").

4. I remain concerned that the Rule will prevent eligible voters in Rhode Island from voting, including in the November 2026 general election. Since I submitted my earlier declaration, my office has continued its efforts to find ways in which the state might mitigate the disenfranchisement that would result from the Rule's requirement to use Intelligent Mail barcodes on return ballot mail envelopes for the 2026 general election. Rhode Island law requires a two-envelope system for return of mail ballots, wherein an internal certifying envelope that contains the marked ballot must be sealed, signed by oath, and enclosed within an external envelope addressed to the board of elections. *See* R.I. Gen. Laws §§ 17-20-19; 17-20-21. For data and process integrity reasons, the state's return ballot ID barcode must appear on the inner certifying envelope containing the ballot and would need to be matched with any return intelligent mail barcode affixed to the external envelope. As noted in my earlier declaration, Rhode Island's contracted vendor cannot do this through the regular printing process and relayed to the state that the task is impossible to complete without data integrity and process issues.

5. To overcome the formidable obstacle presented by the Rule's required redesign of the state's return ballot envelope so that Rhode Island voters would not be effectively barred from using USPS for election mail, my office has engaged in extensive contingency planning with its ballot printing vendor to ensure that eligible voters may continue to timely cast their votes by mail.

6. On August 31, 2026, Rhode Island's contracted vendor advised that it can print a variable Intelligent Mail barcode on both the external envelope and the inner certifying envelope using separate machines and then compile the ballot mail package by matching the two

envelopes. The vendor will endeavor to implement additional quality assurance processes to assure a perfect match: that the voter-specific inner ballot envelope is placed within the corresponding external envelope with the voter-specific Intelligent Mail barcode. But, this process is outside the vendor's established procedure and creates significant logistical challenges given that these modifications have been introduced at an advanced stage of the printing process. Such last-minute modifications, less than 70 days before a general election, create unnecessary risks for Rhode Island in its election administration—with the rights of duly registered Rhode Islanders who vote by mail unnecessarily jeopardized.

7. Despite our contingency planning efforts, I remain concerned about Rhode Island's ability to otherwise mitigate the uncertainty and chaos implementation of the Rule would require. As of today, USPS has not released its Ballot Portal, nor issued instructions on how to use the Portal. The void of any such information at this juncture escalates the uncertainty about how—and whether—the Portal might work.

8. My concern that USPS is not prepared or positioned to implement the Rule for the 2026 midterm without disenfranchising Rhode Island voters was further heightened by the troubling whistleblower disclosure, published on August 30, 2026, identifying several issues with "the USPS's secretive, rushed, chaotic, and fundamentally flawed process for the creation and implementation of an entire new and untested set of IT systems including the "Federal Ballot Mail Portal."" *See* https://www.blumenthal.senate.gov/newsroom/press/release/following-new-whistleblower-disclosure-blumenthal-demands-usps-provide-documents-answers-about-shit-show-process-to-screen-ballots-and-potentially-catastrophic-impact-on-mail-in-voting.

9. Reviewing the whistleblower's disclosure increases my concerns about the

implementation of a new untested system less than 70 days before an election. It has also raised significant new questions about how USPS plans to verify ballots in implementing the Rule, including the notification of deficient mail ballots and the reliability of the Portal.

10. Based on my 20 years of experience in elections administration in Rhode Island, I am particularly concerned with the Rule's description of the two-part verification process and the zero percent failure rate requirement during the secondary verification phase. When submitting a large batch of mail ballots, my experience suggests that requiring a zero percent failure rate nearly guarantees that the entire batch will be rejected and sent back to the state with little to no explanation. One simple printing error on a barcode on one ballot out of 400 sampled ballots would result in the rejection of a batch of upwards of 20,000 ballots if applying a zero percent failure rate. If true, the Rule will significantly delay voters from receiving their mail ballots, further increasing the risk of disenfranchisement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 2, 2026, at Providence, R.I.

Rob Rock
Deputy Secretary of State/Director of Administration
Rhode Island Department of State